# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOWNSHIP OF HOWELL, MONMOUTH COUNTY, NEW JERSEY, Individually and Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br> vs.<br><br>AXON ENTERPRISE, INC.; and SAFARILAND, LLC,<br><br>       Defendants. | Case No. 3:23-cv-7182-RK-RLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REVISED MOTION FOR ORDER APPOINTING KELLIE LERNER, HEIDI SILTON, AND SHARON ROBERTSON AS INTERIM CO-LEAD COUNSEL AND MICHAEL D. FITZGERALD AS INTERIM LIAISON COUNSEL, AND FOR CONSOLIDATION**<br><br>**Motion hearing date: _____, 2023 at _____** |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................2

BACKGROUND ........................................................................................................5

ARGUMENT ............................................................................................................6

I.      THE COURT SHOULD APPOINT MS. LERNER, MS. SILTON,
AND MS. ROBERTSON AS INTERIM CO-LEAD CLASS COUNSEL,
AND APPOINT MR. FITZGERALD AS INTERIM LIAISON COUNSEL. .........6

    A.      Standards for Appointing Interim Co-Lead Class Counsel. ................6

    B.      Appointment of Ms. Lerner, Ms. Silton, and Ms. Robertson as
    Interim Co-Lead Counsel Is Warranted. ............................................8

        1.      The Proposed Leadership Structure Is the Product of Private
        Ordering. ................................................................................ 8

        2.      Proposed Duties and Responsibilities for Lead Counsel. ....... 10

        3.      Proposed Interim Co-Lead Counsel Have Expended Significant
        Time and Resources to Investigate Plaintiffs' Claims and
        Advance This Litigation. ....................................................... 11

        4.      Proposed Interim Co-Lead Counsel Have Extensive Experience
        in Class Actions and Antitrust Litigation, and Know the
        Applicable Law. .................................................................... 12

    C.      Proposed Interim Co-Lead Counsel Have the Resources
    Necessary to Effectively Prosecute This Litigation. ..........................23

    D.      Proposed Interim Co-Lead Counsel Will Continue to Work
    Cooperatively with All Counsel. ........................................................24

    E.      The Court Should Also Appoint Michael D. Fitzgerald as
    Interim Liaison Counsel. ....................................................................24

II.     THE COURT SHOULD CONSOLIDATE THIS ACTION WITH
THE RELATED CASES. ........................................................................................25

III.    CONCLUSION.............................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adedipe v. U.S. Bank, Nat'l Ass'n*,
   No. 13-cv-2687-JNE-JJK, 2014 WL 835174
   (D. Minn. Mar. 4, 2014)........................................................................7

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ...........................................................7

*A.F.I.K. Holdings SPRL v. Fass*,
   216 F.R.D. 567 (D.N.J. 2003)..............................................................26

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   No. 16-cv-0220, 2016 WL 4028974 (N.D.N.Y. July 27, 2016)........................24

*DIK Drug Co. v. Altana Pharma AG*,
   No. 07-cv-5849, 2008 WL 320528 (D.N.J. Jan. 31, 2008) ...............................26

*Durso v. Samsung Elecs. Am., Inc.*,
   No. 12-cv-5352, 2013 WL 4084640 (D.N.J. Aug. 7, 2013) ...............................9

*Ehler v. IPEX, Inc.*,
   No. 08-cv-02220-CMA-BNB, 2009 WL 1392075
   (D. Colo. May 15, 2009)........................................................................9

*Garbaccio v. St. Joseph's Hosp. & Med. Ctr.*,
   No. 16-cv-2740-JMV, 2017 WL 1196458 (D.N.J. Mar. 13, 2017) ...................11

*In re Insulin Pricing Litig.*,
   No. 17-cv-0699-BRM-LHG, 2017 WL 4122437
   (D.N.J. Sept. 18, 2017) ........................................................................7

*In re Insulin Pricing Litig.*,
   No. 17-cv-0699-BRM-LHG, 2020 WL 5642002
   (D.N.J. Sept. 22, 2020) ........................................................................26

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2017 WL 679367
   (N.D. Cal. Feb. 21, 2017) .....................................................................9

ii

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ................................................................9

*In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*,
    No. 15-ml-02668-BRO, 2016 WL 6693146 (C.D. Cal. May 23, 2016) ............9

*Lusk v. Life Time Fitness, Inc.*,
    No. 15-cv-1911-JRT-JJK, 2015 WL 9858177
    (D. Minn. July 10, 2015).....................................................................7

*Santos v. Carrington Mortg. Servs., LLC*,
    No. 15-cv-864, 2017 WL 215969 (D.N.J. Jan. 18, 2017) ....................................6

*Yaeger v. Subaru of Am., Inc.*,
    No. 14-cv-4490-JBS-KMW, 2014 WL 7883689 (D.N.J. Oct. 8,
    2014) ......................................................................................7

**Other Authorities**

CHARLES ALAN WRIGHT ET AL.,
    FEDERAL PRACTICE AND PROCEDURE § 1802.3 (3d ed. 2005) ..............................7

Fed. R. Civ. P. 23(g) ...........................................................................*passim*

Fed. R. Civ. P. 42(a)(2)........................................................................*passim*

Manual for Complex Litigation (Fourth) § 21.11 (2004) ................................2, 8, 10

MOORE'S FEDERAL PRACTICE § 23.120[3][a] (2007)...............................................11

THIRD CIRCUIT TASK FORCE REPORT ON SELECTION OF CLASS
    COUNSEL, 208 F.R.D. 340 (3d Cir. 2002).......................................................8, 9

76815056.1

Pursuant to Rule 23(g)(3) of the Federal Rules of Civil Procedure, and to preserve time and resources and ensure the effective prosecution of this litigation, Plaintiffs Township of Howell, Monmouth County, New Jersey ("Howell") and the Mayor and City Council of Baltimore ("Baltimore") (collectively, "Plaintiffs"), respectfully request that the Court appoint Kellie Lerner of Robins Kaplan LLP, Heidi Silton of Lockridge Grindal Nauen P.L.L.P., and Sharon Robertson of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Interim Co-Lead Class Counsel (together, "Proposed Interim-Co-Lead Counsel"), and Michael D. Fitzgerald of the Law Office of Michael D. Fitzgerald as Interim Liaison Counsel for the proposed Class. In addition, pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure and Local Rule 42.1, Plaintiffs respectfully request that the Court consolidate this case with the two other related cases pending before this Court (*Mayor and City Council of Baltimore v. Axon Enterprise, Inc.*, No. 23-cv-21156; *City of Augusta, Kennebec County, Maine v. Axon Enterprise, Inc.*, No. 23-cv-20897) and any other similar cases that may be filed in this District in the future (together, the "Related Cases"). Counsel for the City of Augusta has informed Plaintiffs that the City of Augusta supports Plaintiffs' motion for leadership and request for consolidation. Defendants have informed Plaintiffs that they take no position on Plaintiffs' motion for appointment of Interim Co-Lead Counsel and consent to consolidation for all purposes.

## INTRODUCTION

Fed. R. Civ. P. 23(g)(3) permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Designating interim class counsel is essential because it "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation (Fourth) ("Manual") § 21.11 (2004).

This Court should appoint interim co-lead class counsel. Doing so will allow counsel to coordinate discovery, depositions, and motion practice, employ experts, meet deadlines, and otherwise efficiently prosecute this litigation.

Plaintiff Howell previously moved for appointment of Ms. Lerner and Ms. Silton as interim co-lead class counsel. ECF No. 17. At the time, the *Howell* Complaint was the only civil complaint to have been filed against Defendants in connection with their alleged anticompetitive conduct. Since then, however, two additional complaints have been filed in this District against Defendants in connection with this same conduct. One of these complaints was filed by Plaintiff Baltimore, represented by Ms. Robertson and Cohen Milstein. For a number of reasons, as explained below, all Plaintiffs agree it would be in the best interests of the Proposed Class for Baltimore to join Howell as a proposed class representative,

2

and for Ms. Robertson to join Ms. Lerner and Ms. Silton as interim co-lead class counsel, in this litigation. Accordingly, Plaintiff Howell is amending its motion to request that Ms. Robertson also be appointed as interim co-lead class counsel, along with Ms. Lerner and Ms. Silton. Plaintiff Baltimore joins in that amended motion. Plaintiffs jointly submit this amended memorandum of law in support of their motion.

Ms. Lerner, Ms. Silton, and Ms. Robertson are eminently qualified to serve as interim co-lead class counsel in this case. Each has a solid record of experience, knowledge, and commitment of resources to similar litigation, including some of the largest and most complex antitrust class actions in recent years. Ms. Lerner, Ms. Silton, and Ms. Robertson, along with their respective teams, have dedicated significant time and resources to this case, and will continue to do so. Ms. Lerner and Ms. Silton drafted the *Howell* Complaint and filed the first case against Defendants for conspiracy and monopolization claims in the long-range conducted energy weapons ("CEWs") and body-worn camera ("BWC") systems markets. Ms. Robertson and Cohen Milstein drafted Baltimore's Complaint, which features powerful price data showing how Defendants' anticompetitive conduct has dramatically inflated the prices they charge. Both Complaints include information gathered as a result of Proposed Interim-Co-Lead Counsel's extensive and detailed investigation. As a proposed class representative, the City of Baltimore also brings

3

the weight and resources of a large municipality with a strong interest in the effective prosecution and oversight of this litigation, including because of its substantial purchases of the products at issue.

Ms. Lerner, Ms. Silton, and Ms. Robertson respectfully submit their approach is most effective for the class members, and their firms have been very successful in representing class members in comparable litigation nationwide. If appointed, Ms. Lerner, Ms. Silton, and Ms. Robertson will work tirelessly to secure an outstanding result for the class. As detailed below, the proposed class would be best served by this appointment based on proposed Interim Co-Lead Counsel's knowledge and expertise in complex antitrust litigation and their successful track record of obtaining substantial recoveries for class members.

In addition, Plaintiffs have retained the Law Office of Michael D. Fitzgerald, based in New Jersey, as interim liaison counsel. Mr. Fitzgerald has substantial experience in complex litigation, has successfully represented New Jersey government entities in antitrust class actions, and has appeared before this Court numerous times.

The undersigned counsel have effected service of the complaint and conferred with defense counsel in this action to coordinate a case schedule. They have also communicated with defense counsel on the substance of this motion. Given their qualifications, extensive pre-filing investigation, and efforts to efficiently and

diligently organize and prepare this case for prosecution, and the agreement of all Plaintiffs with their leadership proposal, Plaintiffs respectfully submit that the Court should appoint Ms. Lerner, Ms. Silton, and Ms. Robertson as Interim Co-Lead Class Counsel, and Mr. Fitzgerald as Interim Liaison Counsel.

To further serve judicial economy, the Court should also consolidate this action with the Related Cases under Rule 42(a)(2), which permits consolidation when actions "involve a common question of law or fact." Consolidating these cases would serve judicial economy without creating any risk of confusion or prejudice.

## BACKGROUND

Plaintiffs allege that Defendants Axon and Safariland entered into a market-allocation agreement and conspired to monopolize the CEW and BWC systems markets, and Defendant Axon attempted to, and did, monopolize both markets. *See* Declaration of Heidi M. Silton in Support of Motion to Appoint Interim Co-Lead Class Counsel and Interim Liaison Counsel ("Silton Decl.") at ¶ 2, filed herewith. Plaintiffs' claims arise under Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act.

Plaintiff Howell is a township located in Monmouth County, New Jersey. Howell filed its antitrust class action against Axon and Safariland on August 22, 2023. Plaintiff Baltimore filed its complaint against Defendants on October 13, 2023. *See* Compl., *Mayor and City Council of Baltimore v. Axon Enter., Inc.*, No.

23-cv-21156 (Oct. 13, 2023). Plaintiffs brought their claims on behalf of all direct purchasers of Axon-produced Taser-branded CEWs or Axon BWC systems, and all purchasers of components of Taser-branded CEWs sold by either Defendant. *Id.* Plaintiffs allege that Defendants' conduct harmed competition in the United States for long-range CEWs, BWC systems, and long-range CEW components and injured Plaintiffs and Class members by creating higher prices for purchasers than there would have been in a competitive market.

## ARGUMENT

### I.  THE COURT SHOULD APPOINT MS. LERNER, MS. SILTON, AND MS. ROBERTSON AS INTERIM CO-LEAD CLASS COUNSEL, AND APPOINT MR. FITZGERALD AS INTERIM LIAISON COUNSEL.

#### A.  <u>Standards for Appointing Interim Co-Lead Class Counsel.</u>

Federal Rule of Civil Procedure 23(g)(3) allows the court to designate "interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); *see also Santos v. Carrington Mortg. Servs., LLC*, No. 15-cv-864-WHW-CLW, 2017 WL 215969, at *1 (D.N.J. Jan. 18, 2017).

Interim lead counsel must represent the interests of the class. Fed. R. Civ. P. 23(g)(2). In selecting interim lead counsel, this Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigations, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law;

and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition to the four "must" factors in Rule 23(g)(1)(A), a court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).[1]

Courts have found that proposed lead counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See Lusk v. Life Time Fitness, Inc.*, No. 15-cv-1911-JRT-JJK, 2015 WL 9858177, at *2 (D. Minn. July 10, 2015). Courts also look at the resources counsel expended to investigate the suit before filing. *See Adedipe v. U.S. Bank, Nat'l Ass'n*, No. 13-cv-2687-JNE-JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014). No single factor is determinative and a court should appoint counsel after evaluating all relevant considerations. *See In re Insulin Pricing Litig.*, No. 17-cv-0699-BRM-LHG, 2017 WL 4122437, at *1 (D.N.J. Sept. 18, 2017); *see also* Fed. R. Civ. P. 23(g)(1)(A-B); 7B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1802.3 (3d ed. 2005).

---

[1] Though these Rule 23(g)(1) factors pertain to the selection of class counsel upon the certification of a class, courts appointing interim class counsel under Rule 23(g)(3) before a class is certified apply these same factors. *See Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490-JBS-KMW, 2014 WL 7883689, at *1 (D.N.J. Oct. 8, 2014) ("[I]t appears to be generally accepted that the considerations set out in Rule 23(g)(1)(c), which govern the appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification.") (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)).

7

### B.     Appointment of Ms. Lerner, Ms. Silton, and Ms. Robertson as Interim Co-Lead Counsel Is Warranted.

#### 1.     The Proposed Leadership Structure Is the Product of Private Ordering.

The proposed interim leadership structure is the product of private ordering, *i.e.* the arrangements agreed upon by competing counsel. In appointing interim class counsel, courts typically rely on private ordering absent "substantial questions about the way that private ordering has worked out in a particular case." Third Circuit Task Force Report on Selection of Class Counsel ("Task Force Report"), 208 F.R.D. 340, 356 (3d Cir. 2002); *see also* Manual § 21.272 ("The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests"); *id.* § 10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.").

This motion reflects the considered consensus of Plaintiffs' counsel in the Related Cases.[2] Howell's original motion to appoint Ms. Lerner and Ms. Silton as co-lead counsel was made when the Howell complaint was the only one to have been filed against Defendants. But, as noted above and as described more fully below, Ms. Robertson and Cohen Milstein add significant value with their extensive

---

[2] Counsel for the City of Augusta has represented that it supports the proposed leadership structure.

experience and expertise in prosecuting complex antitrust class actions such as this one, and the City of Baltimore adds substantial value as a named plaintiff given its size and resources. Moreover, Defendants have retained experienced and capable antitrust counsel from top defense firms who will vigorously defend the case at every stage. Given these factors, to best represent the interest of the proposed class, all Plaintiffs and their counsel agree that a three-firm leadership structure is warranted. It is common to appoint three (or more) firms as co-lead counsel in complex antitrust class actions, particularly where the firms have engaged in private ordering. *See Durso v. Samsung Elecs. Am., Inc.*, No. 2:12-cv-5352 DMC JAD, 2013 WL 4084640, at *4-5 (D.N.J. Aug. 7, 2013) (appointing three law firms as interim co-lead counsel in consolidated case); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (three co-lead counsel, liaison counsel, and five-firm executive committee); *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. 15-ml-02668-BRO, 2016 WL 6693146, at *4 (C.D. Cal. May 23, 2016) (four co-lead counsel, five committee members); *Ehler v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB, 2009 WL 1392075, at *2 (D. Colo. May 15, 2009) (five co-lead counsel); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 & n.4 (3d Cir. 2005) ("lead plaintiffs may retain multiple firms as co-lead counsel"); Task Force Report, 208 F.R.D. at 417 (in deciding whether to appoint multiple lead counsel, the "court should be cognizant of the possibility that the class

could benefit from the combined resources and expertise of a number of counsel, especially in a complex case where the defendants are represented by a number of large and highly qualified law firms"). Thus, the proposed leadership structure is appropriate for this litigation.

2.      <u>Proposed Duties and Responsibilities for Lead Counsel.</u>

If appointed, Proposed Interim Co-Lead Counsel will execute all duties and responsibilities of lead counsel to effectively and efficiently resolve this litigation. These comport with the standards in the Manual for Complex Litigation and include presenting written and oral arguments to the court; communicating with other parties; organizing discovery requests and responses; examining deponents; delegating specific tasks to other counsel; seeing that schedules are met; and undertaking other pretrial duties to coordinate pretrial activities or as authorized by the Court. *See* Manual § 10.221.

Proposed Interim Co-Lead Counsel would also ensure that this matter is adjudicated in an efficient manner, including establishing a time and expense reporting protocol for all counsel, which will be contained in a letter substantially in the form attached as Exhibit 1 to the Silton Declaration. Silton Decl. ¶ 3.

10

### 3. Proposed Interim Co-Lead Counsel Have Expended Significant Time and Resources to Investigate Plaintiffs' Claims and Advance This Litigation.

Proposed Interim Co-Lead Counsel have already taken significant steps to identify and investigate Plaintiffs' claims and to advance this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A)(i). One factor a court may consider is whether an attorney has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort." MOORE'S FEDERAL PRACTICE § 23.120[3][a] (2007); *see also Garbaccio v. St. Joseph's Hosp. & Med. Ctr.*, No. 16-cv-2740-JMV, 2017 WL 1196458, *3 (D.N.J. Mar. 13, 2017) (finding that this factor weighed in favor of the movant who had spent time conducting research on potential claims and was among the first to file a complaint in related cases). Proposed Interim Co-Lead Counsel have done just that.

Proposed Interim Co-Lead Counsel undertook multi-year investigations, as evidenced by the depth and detail of the Complaints' allegations. Their investigations commenced not long after the U.S. Federal Trade Commission ("FTC") filed an administrative complaint on January 3, 2020 against Axon and Safariland based on the acquisition of VieVu and the associated non-competition agreements between Defendants. The news alerted the world to the possibility of a claim. However, Proposed Interim Co-Lead Counsel were the first to conduct the rigorous research necessary to compose detailed and in-depth complaints. Their

research took place over more than a year and included conducting economic analysis and extensive review of academic scholarship, industry reports, government reports, and other publicly available data, and consulting industry experts. It also included a unique economic analysis of pricing data showing how Defendants' anticompetitive conduct has dramatically inflated the prices they charge.

      4.    <u>Proposed Interim Co-Lead Counsel Have Extensive Experience in Class Actions and Antitrust Litigation, and Know the Applicable Law.</u>

Proposed Interim Co-Lead Counsel have extensive experience prosecuting antitrust class actions and other complex litigation and have demonstrated their deep knowledge of antitrust and other applicable law. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii). Below is a summary of their experience.

      a)    *Kellie Lerner of Robins Kaplan LLP*

Robins Kaplan brings 85 years of litigation experience to its representation of corporate, government, and individual parties on both sides of the courtroom and has obtained over $15 billion in recoveries for its antitrust clients in the past several years alone. Robins Kaplan is a firm of more than 225 attorneys in seven major cities nationwide. Members of the firm hail from diverse backgrounds and include some of the nation's leading practitioners.[3]

---

[3] Information about Robins Kaplan's diversity, trial experience, and antitrust practice is included in the firm's Antitrust Practice Group Resume (Lerner Decl. Ex. 1) and at www.robinskaplan.com.

Robins Kaplan has litigated numerous major cases on behalf of victims of international conspiracies to fix prices, including *In re Automotive Parts Antitrust Litigation*, No. 12-md-2311 (E.D. Mich.), a sprawling multidistrict litigation involving more than 40 separate component part class actions and over 150 defendants, many of whom are located abroad. In this case alone, which was initiated by Ms. Lerner, Robins Kaplan has obtained in excess of $1.2 billion in settlements for the classes, the largest indirect purchaser recovery in U.S. history. In *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-cv-5944 (N.D. Cal.), the firm obtained settlements on behalf of Best Buy against television parts manufacturers Chunghwa Picture Tubes, Samsung, and others in multidistrict litigation alleging a conspiracy to fix the prices of TV and computer monitor components. *See* Decl. of Kellie Lerner in Support of Mot. to Appoint Interim Co-Lead Class Counsel and Interim Liaison Counsel ("Lerner Decl.") Ex. 1 at 6.

Robins Kaplan has successfully litigated other complex antitrust class actions. In *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-md-1720 (E.D.N.Y.), Robins Kaplan pursued an innovative theory that Visa's and Mastercard's interchange fee structure and rules are anticompetitive, resulting in overcharges to 10 million merchants. Recently, the United States Court of Appeals for the Second Circuit unanimously upheld the district court's order giving final approval of a $5.6 billion settlement on behalf of U.S. merchants. It is

13

the largest known settlement of an antitrust class action under the Sherman Act. In October of 2022, Robins Kaplan finalized settlements in excess of $118 million on behalf of U.S. contact lens purchasers, resolving an expansive antitrust class action against the four dominant manufacturers and the largest nationwide distributor of contact lenses. *In re Disposable Contact Lens Antitrust Litig*., No. 15-md-02626 (M.D. Fla.); Lerner Decl. Ex. 1 at 6.

The quality of Robins Kaplan's legal work is reflected in its accolades as well as its results. The American Antitrust Institute honored Robins Kaplan for "Outstanding Antitrust Litigation Achievement in Private Law Practice" for its leadership of the end purchaser class in *Automotive Parts*. *Chambers USA* has ranked Robins Kaplan in the first band nationally for its plaintiffs' antitrust work each year since 2014 and stated that Robins Kaplan's Antitrust and Trade Regulation Practice Group "[r]eceives widespread praise for its capabilities in all types of antitrust matters but has achieved particularly significant success on behalf of plaintiff clients" and "[d]emonstrates considerable trial experience." Lerner Decl. Ex. 1 at 11.

**Kellie Lerner** is nationally recognized for her work over the last two decades representing clients in high-stakes antitrust disputes across the country. She has worked on a number of groundbreaking cases, including serving as a member of the trial team in *In re Abbott Labs Norvir Antitrust Litig.,* No. 04-cv-1511 (N.D. Cal.),

14

where she helped secure an eight-figure settlement that included payments to non-profit organizations serving individuals with HIV. Among other cases, Ms. Lerner led the teams to achieve settlements in *County of Monmouth, New Jersey v. Florida Cancer Specialists PL et al.*, No. 18-cv-00201 (M.D. Fla.) (secured a settlement of $7.2 million in a class action complaint against a Florida cancer treatment center and its president for alleged monopolization of oncology services in Southwest Florida) and *BCBSM, Inc. v. Vyera Pharms., LLC et al.*, No. 21-cv-01884 (S.D.N.Y.) (obtaining settlement worth up to $28 million in an antitrust class action against notorious "Pharma Bro" Martin Shkreli, two of his former companies, and a former executive for illegally monopolizing the market for Daraprim—a once-affordable, life-saving drug, which increased in price by more than 4,000 percent under Shkreli's leadership). Lerner Decl. Ex. 1 at 14. Ms. Lerner currently serves as co-lead counsel in *In re Merck Mumps Vaccine Antitrust Litigation*, No. 12-cv-03555 (E.D. Pa.), a class action alleging Merck, the sole supplier of Measles-Mumps-Rubella vaccines, unlawfully excluded potential rival manufacturers from the market.

Chambers USA recognizes Ms. Lerner as one of the country's top plaintiff's antitrust attorneys. Ranked Band 1 for the last five consecutive years, Ms. Lerner is described by her peers in Chambers as "an excellent strategist and one of the first colleagues I call to collaborate on a novel issue." Lerner Decl. Ex. 1 at 13. Ms. Lerner

15

is a "zealous advocate," and "an amazing attorney who mixes vision and skill with respect and team building. She has been a trendsetter in taking on difficult and innovative cases." Chambers similarly notes that Ms. Lerner has been praised by her peers for her ability to "get large teams of people to work effectively together," and as "a brilliant tactician and a fierce litigator. She does this while maintaining a cordial relationship both with other plaintiffs' counsel and with defense counsel." The Legal 500 USA also praised Ms. Lerner for her "superior intellect, determination and political savvy in getting the job done." *Id.*

b)     *Heidi Silton of Lockridge Grindal Nauen P.L.L.P.*

Lockridge Grindal Nauen ("LGN") is a sixty-attorney firm based in Minneapolis, Minnesota. LGN has specialized in Antitrust and other federal civil litigation for over 40 years. Silton Decl. Ex. 3.

LGN's attorneys have prosecuted major cases and class actions involving price-fixing, industry cartels, predatory pricing, and other antitrust cases in courts nationwide. In just the last decade, LGN and its colleagues have recovered billions of dollars for their clients and class members in national and international antitrust cases. LGN currently leads complex cases in federal courts across the country including: *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill.) (co-lead counsel for direct purchasers); *In re Pork Antitrust Litig.*, No. 18-cv-1776 (D. Minn.) (co-lead counsel for direct purchasers); *In re Turkey Antitrust Litig.*, No. 19-

16

cv-8318 (N.D. Ill.) (co-lead counsel for direct purchasers); *In re Cattle and Beef Antitrust Litig.*, No. 22-cv-03031 (D. Minn.) (co-lead counsel for consumer purchasers); *Wood Mountain Fish LLC, et al. v. Mowi ASA*, No. 19-cv-22128 (S.D. Fla.) (co-lead for indirect purchasers); *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573 (N.D. Cal.) (Plaintiffs' executive committee); and *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.) (Plaintiffs' steering committee). *Id.*

LGN's antitrust experts are leaders in the field and have served in a variety of national leadership positions in the antitrust legal community such as the Board of Directors and Advisory Board of the American Antitrust Institute; President of the Committee to Support the Antitrust Laws (COSAL); the Minnesota State Bar Association's Antitrust Law Section; the Antitrust Law Advisory Board of Strafford Publications; and the American Bar Association Antitrust Section's Committees. LGN's attorneys have also served as contributing authors to national and international antitrust law treatises and other publications, including the American Bar Association's Antitrust Law Developments publication. Additionally, LGN attorneys participate in the Federal Practice Committee and Merit Selection Panels for the District of Minnesota and serve as members of the Sedona Conference.

Courts have repeatedly praised LGN's antitrust team. For instance, U.S. District Judge John Gleeson (ret.) described LGN's attorneys as "highly experienced practitioners in complex litigation generally and antitrust litigation specifically."

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42-JG-VVP (E.D.N.Y.) ("The settlement amounts proposed here attest to Class Counsel's abilities."). U.S. District Chief Judge Ruben Castillo (ret.) recognized not only "the outstanding result obtained for the Class" but also "the quality of work product and quantity of work" we performed. *In re Potash Antitrust Litig. (II)*, No. 08-cv-06910 (N.D. Ill.). Heidi M. Silton will have primary responsibility over this litigation at LGN.

**Heidi M. Silton** has represented plaintiffs in nationwide antitrust class actions and clients in high-stakes complex civil litigation for more than 25 years. Ms. Silton possesses extensive experience in all aspects of multidistrict litigation and is a seasoned advocate for plaintiffs in MDLs. The vast majority of Ms. Silton's litigation career has been collaborative in nature. She, and her firm, are routinely appointed to leadership positions that require high levels of cooperation with other plaintiffs' firms.[4] Throughout her career, Ms. Silton has successfully represented

---

[4] *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md-2670-JLS (S.D. Cal.) (antitrust class action alleging price-fixing in the packaged tuna industry); *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.) (Plaintiffs' Steering Committee); *Wood Mountain Fish LLC, et al. v. Mowi ASA*, No. 19-cv-22128 (S.D. Fla.) (co-lead counsel, filed the first indirect purchaser antitrust complaint, and negotiated settlements that ultimately recovered $33 million); *In re Monosodium Glutamate Antitrust Litig.*, No. 00-md-1328 (D. Minn.) (co-lead counsel, conducted critical discovery and negotiated settlements that ultimately recovered $123 million); *In re Potash Antitrust Litig. (II)*, No. 08-cv-06910 (N.D. Ill.) (co-lead counsel, substantial discovery and settlement work that resulted in $90

clients in antitrust actions, earning her a reputation as a skilled and aggressive advocate for her clients' interests.  She is known and respected by courts nationwide and counsel across the country on both the plaintiff and defense side. Throughout her career, Ms. Silton has worked with many types of clients, and in varying market segments. She is passionate about protecting clients' economic freedom and opportunity by promoting free and fair competition in the marketplace and is dedicated to antitrust enforcement. Silton Decl. Ex. 3.

Ms. Silton's approach to litigation is rooted in thorough preparation, creative problem-solving, and a fierce commitment to achieving the best possible outcome for her clients. Ms. Silton is equally comfortable in the courtroom as in negotiations. She is known for her ability to harness large amounts of evidence into a compelling narrative for courts or juries, her ability to think on her feet, her attention to detail while balancing many balls in the air, and her never-ending ability to problem solve.

Ms. Silton is also a leader in the nationwide antitrust community and an active participant in antitrust policy discussions. She is the past President of the Committee to Support the Antitrust Laws (COSAL), an Advisory Board Member of the American Antitrust Institute (AAI), and the current chair of AAI's Private

---

million recovery); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-00042 (E.D.N.Y.) (Freight Forwarder Antitrust Litigation, one of four co-lead firms, resolving conspiracy claims against 68 defendants and recovering at least $406 million); *In re Urethane Antitrust Litig.*, No. 04-md-1616 (D. Kan.) (one of four co-lead firms, recovering $33 million for the class).

19

Enforcement Awards Committee. She is also a past chair and emeritus of the Minnesota State Bar Association Antitrust Law Section. *See* Silton Decl. ¶¶ 6-8.

        c)     *Sharon Robertson of Cohen Milstein Sellers & Toll PLLC*

Cohen Milstein is one of the oldest, largest, and most successful law firms in the nation dedicated primarily to the prosecution of class actions. Cohen Milstein's antitrust prowess has been recognized by numerous industry associations and legal publications. For instance, Cohen Milstein has been chosen: by The Legal 500 for nine straight years as one of the top antitrust class action firms in the country; by American Lawyer Media and The National Trial Lawyers as their Antitrust Law Firm of the Year; as The Legal 500's Leading Plaintiff Class Action Antitrust Firm; as the *National Law Journal*'s Elite Trial Lawyers—Antitrust; and as a Law 360 Competition Practice Group of the Year. *Forbes* has called Cohen Milstein a "class action powerhouse," while *Inside Counsel* has dubbed Cohen Milstein "[t]he most effective law firm in the United States for lawsuits with a strong social and political component." Ms. Robertson, who will lead this case for the firm, has been involved in achieving a number of the firm's precedent-setting results.

Cohen Milstein secured the largest ever price-fixing jury verdict in U.S. history, resulting in a $1.06 billion judgment—a case in which Ms. Robertson served as a member of the trial team. Remarking on Cohen Milstein's efforts, United States District Judge John W. Lungstrum wrote, "In almost 25 years of service on the

bench, this Court has not experienced a more remarkable result." *In re Urethane Antitrust Litigation*, No. 04-md-1616, Dkt. 3273 at 10-11 (D. Kan. July 29, 2018). Other notable Cohen Milstein antitrust wins include its $575 million settlement on the eve of trial in *Sutter Health Antitrust Litigation*, No. CGC-14- 538451 (San Fran. Cnty., Cal.) and its $560 million settlement in *Electronic Books Antitrust Litig.*, No. 11-md-02293 (S.D.N.Y.). *See also Iowa Pub. Emps. Ret. Sys. et al. v. Bank of Am. Corp.*, No. 17-cv-06221 (S.D.N.Y.) ($580 million in preliminarily approved settlements to date); *In re Broiler Chicken Antitrust Litig.* ("*In re Broilers*"), No. 16-cv-08637 (N.D. Ill.) ($181 million in settlements to date).

**Sharon Robertson** is well-qualified to serve as Interim Co-Lead Counsel here. Under Ms. Robertson's leadership, Cohen Milstein has served as co-lead counsel, executive committee member, and class counsel in numerous antitrust cases. Ms. Robertson served as co-lead counsel in *In re Lidoderm Antitrust Litigation*, where she helped secure nearly $105 million in settlements, which, at the time, was hailed as the largest recovery in over a decade on behalf of an end-payor class in a federal generic suppression case. Ms. Robertson also served as co-lead counsel in *In re Loestrin Antitrust Litigation*, which ended in another precedent setting settlement a day before trial. Most recently, Ms. Robertson served as counsel for the certified class in *In re Ranbaxy Generic Drug Application Antitrust*

*Litigation*, helping to secure a $340 million settlement shortly before trial was set to begin.

Ms. Robertson also brings unparalleled experience to the lead counsel role. She is among the few female litigators to secure leadership roles in multiple high-profile antitrust cases and has litigated multiple antitrust suits to a trial verdict. She was a key member of the trial team in *In re Urethane Antitrust Litigation*, which, as noted above, resulted in the largest price-fixing verdict in U.S. She has also served among the lead trial counsel in cases that settled on the eve of trial, including *Zetia*, *Lidoderm*, *Loestrin*, and *Blood Reagents*.

The quality of Cohen Milstein and Ms. Robertson's work has been recognized by the courts in which she has litigated. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *3 (N.D. Cal. Sept. 20, 2018) ("Class counsel provided their clients with diligent and skilled representation in this matter"); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472-WES-PAS, 2020 WL 4038942, at *7 (D.R.I. July 17, 2020) ("EPP Counsel have demonstrated that they are skillful and well-experienced and that they have effectively and efficiently prosecuted this complex and protracted litigation to the benefit of the EPP Class"). Ms. Robertson's litigation achievements have also earned recognition from her peers. In 2019, *The National Law Journal* named Ms. Robertson one of nine "Elite Women of the Plaintiffs Bar" who "have consistently excelled in high-stakes matters

on behalf of plaintiffs over the course of their careers." In 2020 and 2021, Chambers USA recognized her as one of its "Ranked Individuals in Antitrust: Plaintiffs – Nationwide." Ms. Robertson was also recognized as one of only twenty Rising Stars by *The New York Law Journal*. She is a frequent speaker on antitrust and class action issues, including as a Co-Chair of the Practice Law Institutes annual Class Action Conference and a member of the faculty of Duke Law School's MDL Certificate Program.

Cohen Milstein's team also includes Daniel H. Silverman and Christopher J. Bateman, each an accomplished member of the antitrust bar. Additional information regarding Ms. Robertson, Mr. Silverman and Mr. Bateman can be found in the firm's resume, *see* Decl. of Sharon K. Robertson, Ex. 1 (Cohen Milstein Firm Resume), and at www.cohenmilstein.com.

**C.   Proposed Interim Co-Lead Counsel Have the Resources Necessary to Effectively Prosecute This Litigation.**

Proposed Interim Co-Lead Counsel stand ready to dedicate the resources necessary to represent and protect the interests of the putative class through rigorous motion practice, discovery, class certification, and trial. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). They have demonstrated their dedication and commitment in the many complex cases discussed above. They will bring the same resources and commitment to ensure the successful prosecution of this case. Silton Decl. Exs. 2-3.

76815056.1

**D.      Proposed Interim Co-Lead Counsel Will Continue to Work Cooperatively with All Counsel.**

Ms. Lerner, Ms. Silton, and Ms. Robertson have an effective management style. They also have a demonstrated record of accomplishment in working professionally with defense counsel, and will continue to do so. *See Baker v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-0220-LEK-DJS, 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (interim counsel's "ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" are important considerations) (internal quotations omitted; *citing* Manual § 10.224). Together, they will make every effort to prosecute this case successfully, as they have done in many previous cases.

**E.      The Court Should Also Appoint Michael D. Fitzgerald as Interim Liaison Counsel.**

Mr. Fitzgerald brings valuable experience as liaison counsel for this litigation. In particular, he has had a decades-long career in New Jersey, and thoroughly knows the District of New Jersey's local rules and procedural nuances.

Mr. Fitzgerald graduated from the Elisabeth Haub School of Law at Pace University and has served as County Counsel for the County of Monmouth in New Jersey since 2017. Mr. Fitzgerald also operates the Law Offices of Michael D. Fitzgerald which has successfully litigated antitrust class actions as well as complex civil actions before this Court.

24

## II.   THE COURT SHOULD CONSOLIDATE THIS ACTION WITH THE RELATED CASES.

The district court may, in its discretion, consolidate separately captioned lawsuits into one case when the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2); *A.F.I.K. Holdings SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003). "[I]n deciding whether to consolidate actions under Rule 42(a), the court must balance the risk of prejudice and possible confusion against the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties and witnesses, the time required to conclude multiple lawsuits against a single one, and the relative expense to all concerned of the single-trial and multiple-trial alternatives." *Id.* "In the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate." *Id.*

Here, the Court should consolidate the Related Cases. All parties to the Related Cases, including Defendants, support consolidation. All three Related Cases filed to date arise from the same set of facts, namely, Axon's 2018 acquisition of VieVu from Safariland and its allegedly anticompetitive effects on the markets for long-range CEWs and BWCs. *See Howell* Compl. ¶¶ 1-3; *Baltimore* Compl. ¶¶ 1-4; *Augusta* Compl. ¶¶ 1-3. Plaintiffs allege similar claims in the Related Cases under the Sherman Act and the Clayton Act arising from the acquisition. *See Howell* Compl. ¶¶ 116-97; *Baltimore* Compl. ¶¶ 159-245; *Augusta* Compl. ¶¶ 116-97. All three plaintiffs seek to represent direct purchaser classes with similar characteristics

25

and identical class periods. *See Howell* Compl. ¶ 102; *Baltimore* Compl. ¶ 144; *Augusta* Compl. ¶ 102. Considering these similarities, the Related Cases filed to date "raise common questions of law [and] fact." Fed. R. Civ. P. 42(a). Consolidation would avoid the time and expense of conducting discovery and class certification separately in each of the Related Cases, which would be highly duplicative, as well as the risk of divergent results in these similar cases. *See DIK Drug Co. v. Altana Pharma AG*, No. 07-cv-5849, 2008 WL 320528, at *1 (D.N.J. Jan. 31, 2008) (consolidating cases raising similar Sherman Act claims that were "based on the same set of operative facts"). Moreover, given the substantial overlap between the three actions and their common procedural posture, there is no possibility of confusion or prejudice to the Defendants. And although the plaintiffs differ slightly in the putative classes they seek to represent and how they articulate their claims, "suits need not be identical in order to be consolidated." *In re Insulin Pricing Litig.*, No. 17-cv-699-BRM-LHG, 2020 WL 5642002, at *5 (D.N.J. Sept. 22, 2020) (consolidating several cases bringing RICO claims with a case bringing antitrust claims). Therefore, consolidation is warranted.

## III.  CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court appoint Proposed Interim Co-Lead Counsel and Proposed Liaison Counsel in this litigation, and consolidate this action with the Related Cases.

76815056.1

27

Dated: October 25, 2023       /s/ _____

Kellie Lerner (NJ #018532003)
William V. Reiss (NY #4431177)
(*pro hac vice*)
Jonathan S. Edelman (DC #1719587)
(*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
(212) 980-7400
klerner@robinskaplan.com
wreiss@robinskaplan.com
jedelman@robinskaplan.com

Heidi M. Silton (MN #025759X)
(*pro hac vice*)
Jessica N. Servais (MN #0326744)
(*pro hac vice*)
Joseph C. Bourne (MN #0389922)
(*pro hac vice*)
Eura Chang (MN #0403526)
(*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
echang@locklaw.com

Sharon K. Robertson (NJ #030642006)
Christopher J. Bateman (NY #5323837) (*pro hac vice* forthcoming)
Jared A. Dummitt (NY #5723036) (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005

76815056.1

(212) 838-7797
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com
jdummitt@cohenmilstein.com

Daniel H. Silverman (MA #704387) (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street | Suite 207
Boston, MA 02130
(617) 858-1990
dsilverman@cohenmilstein.com

Michael D. Fitzgerald (NJ #004391985)
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
(202) 349-1482
mdfitz@briellelaw.com

*Counsel for Plaintiffs and the Proposed Class*

76815056.1