March 13, 2024

**VIA ECF**
Hon. Rukhsanah L. Singh, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Bldg. & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:    *In re Axon VieVu Antitrust Litigation*, Case No. 3:23-cv-7182-RK-RLS

Dear Judge Singh:

The parties submit this joint letter pursuant to Paragraph 6 of Your Honor's Civil Case

Management Order.

## I.    The Request

Plaintiffs respectfully request that the Court set a date for the initial Rule 16 conference in this

proposed class action against Defendants Axon Enterprise, Inc. ("Axon") and Safariland, LLC

("Safariland") (together, "Defendants") so that during the pendency of the motions to dismiss,

Plaintiffs may obtain the following discovery produced to the Federal Trade Commission ("FTC")

during an investigation and administrative action against Defendants for Axon's allegedly

anticompetitive acquisition of VieVu, LLC ("VieVu") from Safariland and for related, allegedly

anticompetitive agreements between Defendants involving Body Worn Camera Systems ("BWC

Systems") and Long-Range Conducted Energy Weapons ("Long-Range CEWs") (hereinafter, "the

FTC Action"):

> All Documents [each Defendant] previously produced to the [FTC] in connection
> with the FTC Action, including but not limited to non-compete Agreements
> between Axon and Safariland relating to BWC Systems and Long-Range CEWs;
> and
>
> All transcripts of deposition or other testimony of [each Defendant's] current and
> former employees generated in connection with the FTC Action, including all
> exhibits thereto (collectively, the "FTC Discovery").

## II.     The Response

Defendants oppose Plaintiffs' premature and improper discovery requests during the pendency of their Motions to Dismiss and to Strike Class Allegations—motions that raise substantial legal challenges that may eliminate or fundamentally narrow the scope of Plaintiffs' claims.[1] Accordingly, for these and other reasons stated in Defendants' motions and position statement below, Defendants respectfully submit there is no good cause for early and improper cloned discovery from an abandoned FTC action relating to substantially different product and geographic markets.

## III.     Efforts to Resolve the Dispute

Plaintiffs first requested the FTC Discovery and an initial Rule 26(f) conference during a meet and confer with Defendants on December 8, 2023. Plaintiffs and Axon then exchanged their respective positions via email on December 14-15, 2023. On January 5, 2024, Plaintiffs sent a letter to each Defendant asking if they would agree to produce their FTC Discovery. Defendants sent separate responses via letter on January 10, 2024; both refused to make such a production. On January 23, 2024, Plaintiffs met and conferred separately with each Defendant by videoconference pursuant to Local Civil Rule 37.1 to discuss Plaintiffs' request, during which it became clear the parties were at impasse. On February 1, 2024, Plaintiffs sent a follow-up email to Axon confirming that the parties were at an impasse. The parties subsequently agreed by email on a process and schedule to submit this joint letter. On February 21, 2024, Plaintiffs served their first sets of requests for production formally seeking the documents at issue in this joint letter.

---

[1] Pursuant to the Court's Order (ECF No. 52), Defendants served their respective motions on Plaintiffs on February 5, 2024. The motions will be fully briefed on May 15, 2024, at which time the complete motion packages will be filed on the docket. *Id*. Defendants can provide the Court with a copy of the motions if it would assist in resolving the instant discovery dispute.

IV.     **Summary of the Case and Discovery Sought**

Plaintiffs challenge Axon's acquisition of VieVu from Safariland and related agreements as anticompetitive and unlawful. Consolidated Amended Class Action Complaint, ECF No. 37 ("Compl.") ¶ 1. The transaction closed in May 2018, and the non-compete agreement was rescinded in January 2020.  Plaintiffs allege that Defendants violated the Clayton Act because the acquisition substantially lessened competition and tended to create a monopoly in the U.S. markets for BWC Systems and Long-Range CEWs, that Axon violated the Sherman Act by monopolizing or attempting to monopolize these same two markets, and that Defendants violated the Sherman Act by conspiring to monopolize these same two markets through the acquisition and related agreements.  *Id*. ¶¶ 153-237.

In the FTC Action, the FTC alleged that Axon's acquisition of VieVu violated the Clayton Act and the FTC Act by substantially reducing competition, and tending to create a monopoly, in the market for "BWC Systems … to large, metropolitan police departments in the United States," and "constitute[d] an unfair method of competition in violation of Section 5 of the FTC Act." Ex. A ¶¶ 20, 57-60 (FTC Complaint). Unlike Plaintiffs' claims here, the FTC Action did not allege any claim as to the market for Long-Range CEWs. Safariland settled with the FTC on June 11, 2020. Am. Compl. ¶ 131. On October 6, 2023, the FTC dismissed its complaint against Axon. *Id.* ¶ 132.

V.      **Plaintiffs' Position**

An initial Rule 16 conference will allow the parties and the Court to discuss the issues that may arise during the litigation and implement a discovery schedule so the case can proceed efficiently. Plaintiffs seek only the FTC Discovery, which is highly relevant, readily accessible, can be produced to Plaintiffs with minimal burden, and will materially advance this litigation.

The Court should set an initial Rule 16 conference so Plaintiffs can commence with limited, targeted document discovery. ***First***, the FTC Discovery is relevant to Plaintiffs' claims, which entirely encompass those brought in the FTC Action. ***Second***, Plaintiffs seek only pre-assembled and easily obtainable materials that Defendants either previously produced to the FTC or possess as discrete files from the FTC Action (i.e., their document productions and depositions of their current or former employees). This discovery is limited, tailored to the early stage of the case, and proportional to the needs of the case. ***Finally***, although Defendants claim Plaintiffs must show good cause for "early" discovery, there is no discovery stay in effect, and Defendants cannot show good cause for such a stay. *See United Healthcare Servs., Inc. v. Teva Pharm. U.S., Inc.*, No. 22-cv-6643, 2023 WL 6558058, at *2 n.2 (D.N.J. May 11, 2023) ("It is well settled that the mere filing of a motion to dismiss does not satisfy the 'good cause' standard for a stay."). There is a substantial public interest in advancing this antitrust litigation brought on behalf of both private and public entities seeking damages and injunctive relief for anticompetitive conduct alleged to have resulted in significant overcharges, and reduced quality and innovation, for products widely used in law enforcement and self-defense nationwide. *See Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*, No. 11-cv-7178, 2012 WL 12918261, at *2 (D.N.J. July 18, 2012) (denying motion to stay pending resolution of motion to dismiss and noting "public's interest in vigorously enforcing national antitrust laws through the expeditious resolution of a private antitrust action"). Limited document production—not a stay—will promote the timely, efficient, and accurate resolution of this litigation.

**Civil Plaintiffs Can Obtain Discovery from Related Government Investigations:** The FTC Discovery is relevant because Plaintiffs' claims concern the same acquisition and related agreements challenged by the FTC. Courts often recognize the "appropriateness and relevance" of

documents and transcripts produced in a related government investigation such as those Plaintiffs

seek here. *See In re Plastics Additives Antitrust Litig.*, No. 03-cv-2038, 2004 WL 2743591, at \*12-

13 (E.D. Pa. Nov. 29, 2004) (requiring production of "all documents that were produced to the

DOJ, any grand jury, and any domestic investigatory authority in connection with an investigation

of the plastic additives industry"); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No.

21-cv-305, 2023 WL 4181198, at \*7 (N.D. Ill. June 26, 2023) (citing *Plastics Additives* and noting

"courts have allowed cloned discovery where the previous litigation or investigation and the

present case had 'significant factual and legal overlap'"); *In re Pool Prods. Distrib. Mkt. Antitrust

Litig.*, No. 12-md-2328 (E.D. La. June 4, 2013), ECF Nos. 93, 121 (ordering production of FTC

documents before decision on motion to dismiss); *In re Static Random Access Memory (SRAM)

Antitrust Litig.*, 580 F. Supp. 2d 896, 899 (N.D. Cal. 2008) (describing similar order overruling

objection to producing DOJ, grand jury, and related civil litigation documents before motion to

dismiss).

Here, Plaintiffs' allegations encompass and incorporate the FTC's investigation into

whether Axon's acquisition of VieVu from Safariland reduced competition in the BWC Systems

market in violation of the Clayton and FTC Acts. *See* Compl. ¶¶ 128-32. Defendants' speculation

about the potential dismissal of claims cannot overcome the presumption in favor of immediate

and prompt discovery.[2] *See Plastics Additives*, 2004 WL 2743591, at *9 (finding "speculative"

concerns insufficient to stay discovery).[3]

        **Plaintiffs' Request for the FTC Discovery Is Proportional to the Needs of the Case**

**and Would Impose Minimal Burden on Defendants:** Plaintiffs seek only documents that

Defendants have already produced to the FTC and testimony given by their employees in the FTC

Action. In their previous productions, Defendants presumably collected documents and data,

searched them, reviewed them for privilege and responsiveness, and produced them electronically.

All they have to do now is give Plaintiffs a copy. *See, e.g.*, *Plastics Additives*, 2004 WL 2743591,

at *12 (noting that producing "documents related to government investigations" will result in "only

a minimum burden on the defendants, 'since the documents in question have already been

identified and sorted'" (quoting *Golden Quality Ice Cream, Co. v. Deerfield Specialty Papers, Inc.*,

87 F.R.D. 53, 59 (E.D. Pa. 1980))).

        Safariland did not specify any burden in producing the FTC Discovery during the parties'

meet and confer. Safariland told Plaintiffs that it was *already* restoring the FTC Discovery from

---

[2] Plaintiffs will vigorously dispute Defendants' claimed bases for dismissal in their responsive briefs. Further, Plaintiffs note that the vast majority of Defendants' arguments do not even attempt to dispose of the entire case, and that the FTC explained its dismissal was based solely on Axon's "constitutional challenges to the Commission's adjudication process" that "would result in years of additional litigation" before a court could "reach the merits" of the FTC's allegations. Order Returning Matter to Adjudication & Dismissing Compl., *In re Axon Enter., Inc.*, FTC No. D9389 (Oct. 6, 2023).

[3] The cases Defendants cite raising questions about the relevance of "cloned" discovery fare no better. *See TravelPass Grp., LLC v. Caesars Ent. Corp.*, No. 18-cv-153, 2020 WL 698538, at *2, 5-7 (E.D. Tex. Jan. 16, 2020) (discovery request violated stipulated e-discovery order); *Wilmington Tr. Co. v. Boeing Co.*, No. 20-cv-0402, 2020 WL 4125106, at *2-3 (W.D. Wash. July 20, 2020) (documents sought not limited "to the transactions at issue in this lawsuit" and no need for expedited discovery where court had set discovery schedule and 26(f) conference had already occurred); *Racing Optics v. Aevoe Corp.*, No. 15-cv-1774, 2016 WL 4059358, at *2 (D. Nev. July 28, 2016) (documents "from an action that predates the first Asserted Patent" not relevant).

cold storage for its own review and use in this litigation. Safariland's burden in reproducing the FTC Discovery is minimal—notwithstanding the reversal of its position in this letter.

Axon claims that reproducing the FTC Documents would constitute a "substantial burden" based on its calculated monthly cost to remove the FTC Documents from cold storage and continue to actively host the FTC Documents for the remainder of the case. But continued hosting costs are unnecessary because Plaintiffs do not intend to seek additional discovery from Defendants until after the motion to dismiss is decided, and Axon's claimed monthly hosting cost is inflated because it includes all the data it *collected*, which is far more than it *produced*. *Cf. United States v. Taylor*, No. 21-cr-13, 2022 WL 11899209, at *2 (E.D. Ky. Oct. 20, 2022) ("Any burden now facing the [responding party] in complying with the discovery order is self-imposed.").

**A Full Stay of Discovery Is Inefficient and Prejudicial:** Flipping the standard on its head, Defendants contend that there is no compelling need *for* discovery and fail to satisfy their own burden to show a compelling need to *stay* discovery.[4] *Discover Bank v. Greenwood House Home for Jewish Aged*, No. 18-CV-16020, 2023 WL 5995502, at *12 (D.N.J. Sept. 15, 2023) (Kirsch, J.) (discovery stay is "extraordinary remedy" and burden is on movant to show good cause). Courts in this district routinely permit limited discovery in similar circumstances. *See, e.g., Coyle v. Hornell Brewing Co.*, No. 08-cv-2797, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) (explaining discovery stays cause delayed discovery and "unnecessary litigation expenses and problems"); *In re Schering-Plough Corp.*, No. 06-cv-5774, 2008 WL 11381889, at *2 (D.N.J. Apr. 22, 2008)

---

[4] Defendants' claim that *Twombly* requires a stay is rejected by their own cases. *See In re Graphics Processing Units Antitrust Litig.*, No. 06-cv-07417, 2007 WL 2127577, at *1 (N.D. Cal. July 24, 2007).

(denying stay pending motion to dismiss because court was not "convince[d] . . . that this is an exceptional case or that proceeding with limited discovery… would be inefficient or wasteful").[5]

Plaintiffs will be prejudiced if their claims are not resolved in an expeditious fashion.[6] *See Plastics Additives*, 2004 WL 2743591, at *7 (staying discovery "hinders . . . timely and effective resolution of [plaintiffs'] claims"). Briefing on Defendants' motions to dismiss will not be complete until May 15, 2024, and resolution of those motions could be months later still. In addition to delayed recovery of their damages, Plaintiffs will also be prejudiced by the delay of injunctive relief, which may need to wait for resolution on the merits. *Cf. Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (preliminary injunction is an "extraordinary remedy, which should be granted only in limited circumstances"). Any further delay of discovery also increases the chances that Plaintiffs will be prejudiced by the fading memories of witnesses, particularly since many of the events at the core of this litigation occurred more than five years ago. *See Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. 00-cv-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002). Obtaining the FTC Discovery now will help Plaintiffs be ready to depose relevant witnesses when their memories are as fresh as possible when that stage arises.

**Conclusion:** An initial Rule 16 conference to discuss limited discovery is appropriate. *See, e.g.*, *Udeen v. Subaru of Am.*, 378 F. Supp. 3d 330, 333-34 (D.N.J. 2019) (denying discovery stay while motion to dismiss was pending, permitting limited discovery, and ordering Rule 16

---

[5] Defendants' authorities miss the mark. *See Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121, 124 & n.5 (3d Cir. 2015) (affirming *dismissal*); *Strike 3 Holdings, LLC v. Doe*, No. 23-cv-1402, 2023 WL 2868584, at *2 (D.N.J. Apr. 10, 2023) (permitting limited discovery to bolster complaint); *In re Wholesale Grocery Prod. Antitrust Litig.*, No. 09-md-2090, 2010 WL 11469883, at *1-2 (D. Minn. Mar. 3, 2010) (denying motion to *lift* stay); *Graphics Processing Units*, 2007 WL 2127577, at *4-5 (noting "incremental cost to produce a duplicate set to plaintiffs' counsel would be minor in the overall picture" contemplating limited discovery to bolster complaint).

[6] Even under Defendants' "early discovery" standard, these facts demonstrate good cause.

conference to address discovery disputes). In addition to the FTC Discovery, the parties would also benefit from discussing with the Court how to be ready to proceed efficiently (e.g., Defendants have refused to negotiate Plaintiffs' proposed Confidentiality Order and ESI Protocol until the Court decides Defendants' motions to dismiss). *See* Fed. R. Civ. P. 1.

VI.    **Defendants' Position**

The Court should deny Plaintiffs' premature request for early cloned discovery as it lacks good cause, is improper and overbroad, and unnecessarily burdens Defendants.

A.    **Plaintiffs Cannot Show "Good Cause" For Early Discovery.** Plaintiffs attempt to shift the burden of proof to Defendants by reframing the issue as a motion to stay discovery[7] rather that what it actually is—a premature effort by Plaintiffs to obtain early discovery. Under the Federal Rules, "[a] party *may not* seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(f)(1) (emphasis added). Under this Court's Local Rules and practice, a Rule 26(f) conference does not typically occur until after the defendant files its answer. Here, no answer has been filed, no Rule 26(f) conference has occurred, and no "presumption" in favor of immediate discovery exists. Early discovery is *only* permissible for good cause, *i.e.*, where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Strike 3 Holdings, LLC v. Doe*, 2023 WL 2868584, *2 (D.N.J. Apr. 10, 2023).

---

[7] Plaintiffs rely almost exclusively on inapposite motion to stay authorities. Even so, several cited cases weigh in favor of Defendants' position. *See, e.g., In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) (court initially stayed all discovery pending motion to dismiss resolution). Whether properly framed as one for early discovery or mislabeled as a request to stay discovery, Defendants prevail. For the same reasons Plaintiffs lack good cause to open discovery, good cause exists to stay it.

Plaintiffs have not established good cause. They identify no exigency necessitating expedited treatment, *cf. Strike 3 Holdings*, 2023 WL 2868584, *2 (early discovery necessary to identify name/address of John Doe defendant), and have not sought a preliminary injunction. Nor could they. Any claim of prejudice without early discovery is belied by Plaintiffs' own admission that "many of the events at the core of this litigation occurred more than five years ago." *See supra* pp. 8. Indeed, it is Plaintiffs' own delay in bringing suit that supports dismissal on statute of limitations grounds, further highlighting the improper nature of their request. Plaintiffs' self-manufactured "exigency" cannot support premature discovery. Both memories and documents are well-preserved in the FTC Discovery. *In re: Wholesale Grocery Prod. Antitrust Litig.*, 2010 WL 11469883, *3 (D. Minn. Mar. 3, 2010) ("There is little to no risk that these documents [previously produced to the FTC] will be unavailable in the future.").

Further, Plaintiffs' request will prejudice Defendants, causing them to incur significant costs and fees to produce the FTC Discovery. *See infra* pp. 13-14. Defendants' Motions to Dismiss and Strike Plaintiffs' Class Allegations raise substantial questions about the viability of Plaintiffs' claims. Defendants have moved to dismiss Plaintiffs' claims on several grounds, including statute of limitations, standing, failure to plausibly allege an anticompetitive effect as to the CEW market or a cognizable antitrust market as to any product as a matter of law, and failure to state a claim for entitlement to injunctive relief.  In addition to these threshold legal challenges, Defendants have moved to strike the class allegations on the basis of sovereign immunity and statutory law, which preclude Plaintiffs from representing government entities that make up the vast majority of Axon's customers and the proposed class. These motions may dispose of this litigation or at the very least to materially narrow the scope of the case. Absent decision on those motions, it is impossible to make relevancy determinations or to evaluate burden and proportionality. *See, e.g.*,

*Ghaffari v. Wells Fargo Bank NA*, 621 Fed. App'x 121, 124 (3d Cir. 2015) (Rule 12(b)(6) motions to dismiss "should typically be resolved before discovery begins." (cleaned up)); *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, *5 (N.D. Cal. July 24, 2007) ("whether and to what extent [the requested discovery should be had] will be best decided after ruling on the Rule 12 motions").[8] The Court should thus "heed[] the Supreme Court's words of caution" in *Twombly* and not "open the flood gates of discovery prior to Plaintiffs satisfying their initial burden of pleading a cause of action upon which relief can be granted." *In re Wholesale Grocery Prods.*, 2010 WL 11469883, *3.

**B.      Plaintiffs' Request For Cloned Discovery Is Improper.** Plaintiffs offer no valid basis for forcing Defendants to undertake the significant expenses associated with early document production in a case that might not even proceed to discovery. Simply because Plaintiffs' request is limited to materials Defendants produced to the FTC in its now abandoned administrative challenge to the Axon-VieVu merger,[9] does not make premature discovery proper. Such a "cloned discovery" request—intended to circumvent Rule 26 and local procedure—is clearly improper while Defendants' dispositive and case-altering motions are pending.

Discovery must be limited to what is "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Requests for cloned discovery—the re-production of material previously produced in another matter—are generally improper. *See,*

---

[8] *See also Dr. Reddy's Labs. v. Amarin Pharma, Inc.*, No. 21-10309-RK-TJB, ECF No. 45 (D.N.J. Oct. 29, 2021) (antitrust case order "denying Plaintiff's request to commence discovery . . . prior to a ruling on the pending Motion to Dismiss."); *Humana, Inc. v. Celgene Corp.*, No. 19-07532, ECF No. 34 (D.N.J. Sept. 13, 2019) (antitrust case order that "discovery in this matter is stayed pending adjudication of the motion to dismiss"); *In re Insulin Pricing Litig.*, No. 17-699, ECF No. 236 (D.N.J. Nov. 7, 2018) (antitrust case order that "discovery is stayed pending the disposition of Defendants' Motion to Dismiss").

[9] The FTC's dismissal of its administrative action was an unprecedented walk away without consent decree or other condition.  *See In re Axon Enter., Inc.*, FTC No. D9389 (Oct. 6, 2023).

*e.g.*, *Travel Pass Group LLC v. Caesars Entertainment Corp.*, 2020 WL 698538, *6 (E.D. Tex. Jan. 16, 2020) (collecting cases); *Racing Optics v. Aevoe Corp.*, 2016 WL 4059358, *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited" and the "fact that [the defendant] produced certain documents in … other cases does not necessarily make them discoverable in this case" (cleaned up)); *Wilmington Tr. Co. v. Boeing Co.*, 2020 WL 4125106, *2 (W.D. Wash. July 20, 2020) (denying request for early production of documents defendant previously produced during government investigations). Even the cases Plaintiffs rely on highlight the improper nature of "cloned discovery" requests. *See, e.g., In re Outpatient Med. Ctr. Employee Antitrust Litig.*, 2023 WL 4181198, *6 (N.D. Ill. June 26, 2023) (noting "cloned discovery" requests are disfavored and holding plaintiffs' request was "facially overbroad").

Plaintiffs' request for cloned discovery is improper because (1) they cannot meet their burden to establish relevance without knowing what they are asking for; (2) the Court cannot ascertain whether the documents requested relate to Plaintiffs' claims and defenses; and (3) there are myriad reasons "why documents appropriately requested and provided in another case—even if the cases' subject matter seem to overlap—would be irrelevant or burdensome to provide in another case." *Travel Pass*, 2020 WL 698538, *6; *see also In re Graphics Processing*, 2007 WL 2127577, *5 ("compelled act of turning records over to the government pursuant to the subpoena does not mean that everyone else has an equal right to rummage through the same records."). Simply put, Plaintiffs are "not entitled to the wholesale reproduction of all of the [documents produced in a prior FTC matter] simply because there may be overlap between the issues in [that case] and those in this case." *Id.* Indeed, the very subset of Plaintiffs' claims alleged to be "entirely encompass[ed]" in the FTC Action involve the same public entities (*i.e.*, large metropolitan police

12

departments) subject to Defendants' Motion to Strike on sovereign immunity and statutory grounds (which, if granted, materially affects the proportionality analysis under Rule 26).

**C.      Plaintiffs' Early Discovery Requests Will Unfairly Burden Defendants.**

Plaintiffs' request for an early production of the FTC Discovery places a significant burden on Defendants that may well prove to be inefficient and unnecessary:[10]

**Axon:** The documents Axon collected, reviewed, and produced during the FTC matter are currently stored as Relativity Archives ("ARM"). There are 6.9 Terabytes of information on the ARM databases. Axon produced more than 493,000 documents, spanning at least 2,645,515 pages, over at least 69 volumes of load files. Axon would need to restore and reproduce the databases at an estimated cost of $8,600-$13,000, with *monthly* hosting fees thereafter of ~$53,000—a cost that will quickly reach six figures while the not-yet-fully briefed motions remain pending.[11]

**Safariland**:  Safariland's archived FTC productions exceed 54,000 documents spanning at least 225,004 pages. The estimated cost to restore the database and reproduce the volumes to Plaintiffs is $8,500 to $12,300, with ongoing database maintenance expense of ~$6,300/month. And that is just Safariland's production. Safariland exited the FTC administrative proceedings before any Axon depositions were taken and before most Axon productions occurred. Thus, Plaintiffs' early discovery request substantially prejudices Safariland, which would need to ingest, review, and analyze large-scale discovery from prior litigation at a time it was no longer a party.

Moreover, both Defendants will incur significant legal fees for the time it takes counsel to review the FTC Discovery, redact as necessary, and attend to confidentiality designations—as

---

[10] Defendants will provide certifications as to the facts establishing burden at the Court's request.

[11] Plaintiffs' suggestion that Axon need not continue to host the data once Plaintiffs obtain a copy is nonsensical and ignores the realities of litigation, including Plaintiffs' admitted (but now dialed back here) intention to prepare for prompt depositions.

required by Plaintiffs' own proposed confidentiality order. The fact that these materials were previously produced to the FTC is irrelevant to this burden, not only because the scope of the discovery was different in that case, but also because Defendants "have a right to screen the materials for privilege, confidentiality, and relevance before turning them over" to a private litigant in a different action. *In re Local TV Advertising Antitrust Litig.*, 2019 WL 13457004, \*1 (N.D. Ill. Mar. 20, 2019); *see also Wilmington*, 2020 WL 4125106, \*3 (rejecting argument that re-production would not be burdensome where defendant would have to re-review documents and speculate as to relevance given the early stage of proceedings).

Ultimately, Plaintiffs have not demonstrated any good cause to either accelerate discovery or obtain cloned discovery, and their request for such discovery before a Rule 26(f) conference is premature and contrary to the Federal and Local Rules and local practice. Plaintiffs should not be permitted an end-run around Rule 26, particularly where, as here, Defendants' motions may dispose of or materially narrow the action. Accordingly, the Court should deny Plaintiffs' request in its entirety.

s/ Michael D. Fitzgerald
Michael D. Fitzgerald (NJ #004391985)
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
(202) 349-1482
mdfitz@briellelaw.com

*Interim Liaison Counsel for Plaintiffs and the Proposed Class*

Heidi M. Silton (MN #025759X) (*pro hac vice*)
Jessica N. Servais (MN #0326744) (*pro hac vice*)
Joseph C. Bourne (MN #0389922) (*pro hac vice*)
Eura Chang (MN #0403526) (*pro hac vice*)

**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
echang@locklaw.com

Kellie Lerner (NJ #018532003)
William V. Reiss (NY #4431177) (*pro hac vice*)
Jonathan S. Edelman (DC #1719587) (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
(212) 980-7400
klerner@robinskaplan.com
wreiss@robinskaplan.com
jedelman@robinskaplan.com

Sharon K. Robertson (NJ #030642006)
Christopher J. Bateman (NY #5323837) (*pro hac vice*)
Jared A. Dummitt (NY #5723036) (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pint Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com
jdummitt@cohenmilstein.com

Daniel H. Silverman (MA #704387) (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street | Suite 207
Boston, MA 02130
(617) 858-1990
dsilverman@cohenmilstein.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

*s/Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Eric S. Padilla

15

**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100

Pamela B. Petersen (pro hac vice)
Gayathiri Shanmuganatha (pro hac vice)
**AXON ENTERPRISE, INC.**
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016

Julia E. McEvoy (pro hac vice)
**JONES DAY**
51 Louisiana Ave., N.W.
Washington, D.C. 2001
Tel: (202) 879-3939

Aaron M. Healey (pro hac vice)
**JONES DAY**
250 Vessey Street
New York, New York 10281
Tel: (212) 326-3939

*Attorneys for Defendant*
*Axon Enterprise, Inc.*

**OBERMAYER   REBMANN   MAXWELL   &
HIPPEL LLP**

/s/ Steven A. Haber
Steven A. Haber, Esquire
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
(856) 795-3300
steven.haber@obermayer.com

**BAKER BOTTS L.L.P.**
James G. Kress (*pro hac vice*)
Paul C. Cuomo (*pro hac vice*)
Jana I. Seidl (*pro hac vice*)
Dorothea R. Allocca (*pro hac vice*)
700 K Street NW
Washington, D.C. 20001

16

(202) 639-7884
james.kress@bakerbotts.com
paul.cuomo@bakerbotts.com
jana.seidl@bakerbotts.com
dodi.allocca@bakerbotts.com

*Attorneys for Defendant Safariland, LLC*