## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE AXON VIEVU ANTITRUST LITIGATION | Case No. 3:23-cv-07182 (RK-RLS) |
| | *Filed Electronically* |

## BRIEF IN SUPPORT OF DEFENDANT AXON ENTERPRISE, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

WALSH PIZZI O'REILLY FALANGA LLP
Liza M. Walsh
Katelyn O'Reilly
Eric S. Padilla
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100


AXON ENTERPRISE, INC.
Pamela B. Petersen (*pro hac vice*)
Gayathiri Shanmuganatha (*pro hac vice*)
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016


*Attorneys for Defendant Axon Enterprise, Inc.*

JONES DAY
Julia E. McEvoy (*pro hac vice*)
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939

Aaron M. Healey (*pro hac vice*)
250 Vessey Street
New York, New York 10281
Tel: (212) 326-3939

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

LEGAL STANDARD.............................................................................................5

ARGUMENT .........................................................................................................8

I.    SOVEREIGN IMMUNITY AND STATUTORY LAW PRECLUDE
      PLAINTIFFS FROM REPRESENTING THE GOVERNMENT
      ENTITIES THAT MAKE UP THE VAST MAJORITY OF THE
      CLASS. ........................................................................................................9

      A.    Sovereign Immunity Precludes The Court From Exercising
            Jurisdiction Over Federal And State Entity Class Members. ..............9

      B.    Plaintiffs' Representation Of Federal, State And Local
            Agencies Is Precluded By Statutes And Ordinances. .......................13

            1.    Federal Law Precludes Plaintiffs From Representing
                  Federal Agencies...................................................................14

            2.    Plaintiffs Are Statutorily Barred From Representing
                  States And State Agencies. ....................................................15

            3.    Plaintiffs Are Precluded From Representing Municipal,
                  County, And Local Law Enforcement Agencies.....................17

II.   PLAINTIFFS' COMPLAINT FURTHER ESTABLISHES THEY
      CANNOT MEET THE REQUIREMENTS OF RULE 23. .........................19

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Advanced Acupuncture Clinic, Inc. v. Allstate Ins*.
   Co., No. CIV.A.07-4925 (JAP), 2008 WL 4056244 (D.N.J. Aug.
   26, 2008) ........................................................................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................20

*Atkin v. Johnson*,
   432 F. App'x 47 (3d Cir. 2011) ......................................................................12

*Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*,
   No. CIV.A. 12-929, 2015 WL 401443 (W.D. Pa. Jan. 28, 2015) ...................6, 8

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
   475 F.3d 524 (3d Cir. 2007) ...........................................................................22

*Clark v. McDonald's Corp.*,
   213 F.R.D. 198 (D.N.J. 2003)...........................................................................8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)............................................................................................6

*Federal Maritime Com'n v. South Carolina State Ports Authority*,
   535 U.S. 743 (2002)......................................................................................9, 10

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).......................................................................................5, 7

*Gensetix Inc. v. Board of Regents of University of Texas System*,
   966 F.3d 1316 (Fed. Cir. 2020) ......................................................................10

*Hassine v. Simon's Agency Inc*.,
   No. 18-09031, 2021 WL 9990348 (D.N.J. Dec. 21, 2021) ..............................13

*Havasupai Tribe v. Anasazi Water Co. LLC*,
  321 F.R.D. 351 (D. Ariz. 2017) .......................................................................10

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ........................................................................19

*In re Cmty. Bank*,
  795 F.3d 409 (3d Cir. 2015) ...........................................................................20

*In re Flonase Antitrust Litig.*,
  879 F.3d 61 (3d Cir. 2017) ............................................................2, 10, 11, 12

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .............................................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2,
  2014) ...............................................................................................................25

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
  767 F. Supp. 2d 263 (D. Mass. 2011)...............................................11, 15, 20, 21

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
  395 F. Supp. 3d 464 (W.D. Pa. 2019).............................................................7, 8

*In re: Wire Harness Sys.*,
  No. 12-MD-02311, 2015 WL 14047405 (E.D. Mich. Apr. 30,
  2015) ................................................................................................11, 12, 13, 17

*Johnston v. HBO Film Management, Inc.*,
  265 F.3d 178 (3d Cir. 2001) ...........................................................................20

*Karns v. Shanahan*,
  879 F.3d 504 (3d Cir. 2018) .......................................................................22, 23

*Kern v. Siemens Corp.*,
  393 F.3d 120 (2d Cir. 2004) ...........................................................................13

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3d Cir. 2011) ...................................................7

*Maliandi v. Montclair State Univ.*,
  845 F.3d 77 (3d Cir. 2016) ............................................23, 24

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) .................................................6

*Martinez v. Eagle Disposal*,
  783 F. App'x 206 (3d Cir. 2019) .......................................13

*Martinez v. TD Bank USA, N.A.*,
  No. 15-7712, 2017 WL 2829601 (D.N.J. June 30, 2017) ...................................7

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ...............................................19

*O'Leary v. California Highway Patrol*,
  923 F.2d 862 (9th Cir. 1991) ............................................12

*Pinckney v. Cofaro*,
  2023 WL 5177492 (D.N.J. Aug. 11, 2023) ......................................16

*Port Auth. Trans-Hudson Corp. v. Feeney*,
  495 U.S. 299 (1990).......................................................12

*Porter v. Nationscredit Consumer Discount Co.*,
  229 F.R.D. 497 (E.D. Pa. 2005).........................................19

*Raab Fam. P'ship v. Borough of Magnolia*,
  No. CIVIL 08-5050 (JBS), 2009 WL 361135 (D.N.J. Feb. 13, 2009) ...........................................5

*Seminole Tribe of Fla. v. Florida.*,
  517 U.S. 44 (1996)..........................................................9

*Sobel v. Hertz Corp.*,
  No. 06-cv-00545-LRH-RAM, 2011 WL 2559565 (D. Nev. June
  27, 2011) ................................................................................................14

*Thomas v. FAG Bearings Corp.*,
  50 F.3d 502 (8th Cir. 1995) ...................................................................10

*Trunzo v. Citi Mortg.*,
  No. 2:11-CV-01124, 2014 WL 1317577 (W.D. Pa. Mar. 31, 2014)...................7

*United States v. Mitchell*,
  463 U.S. 206 (1983)...................................................................................9

*Vanderklok v. United States*,
  868 F.3d 189 (3d Cir. 2017) ...................................................................16

*Walker v. Liggett Group, Inc.*,
  982 F. Supp. 1208 (S.D. W. Va. 1997)..............................................11, 12, 15, 17

*Walney v. SWEPI LP*,
  No. CV 13-102, 2019 WL 1436938 (W.D. Pa. Mar. 31, 2019) ........................24

STATUTES

28 U.S.C. § 516...........................................................................................14

28 U.S.C. § 519...........................................................................................14

Ala. Code § 36-15-21 .................................................................................16

Cal. Gov't Code § 12511 ...........................................................................16

Fla. Stat. Ann. § 16.01 ..............................................................................16

Md. Code, State Gov't § 6-106 .................................................................17

Minn. Stat. § 8.01 ......................................................................................17

Miss. Code Ann. § 7-5-1 ...........................................................................17

N.C. Gen. Stat. § 114-2 ..........................................................................................17

N.J.S.A. § 52:17A-4 ...............................................................................................15

N.M. Stat. § 8-5-2 ..................................................................................................17

N.Y. Exec. Law § 63 ..............................................................................................17

Neb. Rev. Stat. Ann. § 84-202 ...............................................................................17

W. Va. Code § 5-3-2 ...............................................................................................17

**RULES**

Fed. R. Civ. P. 12 .....................................................................................................6

Fed. R. Civ. P. 23 ...........................................................................................*passim*

**OTHER AUTHORITIES**

Alexandria VA City Charter, Ch. 11, § 11.02 ........................................................18

Charter of the City of Baltimore, Article VII, § 24 ................................................22

City of San Bernardino, CA, City Charter, Art. V § 504 ........................................18

Columbus, OH, City Charter, § 67 .........................................................................18

Henderson NV, City Charter, Art. III, § 3.060 .......................................................18

Kansas City, MO, City Charter, Art. IV § 407 .......................................................18

Oakland, CA, City Charter, Art. IV § 401 ..............................................................18

Pflugerville, TX, City Charter, Art. IV § 4.03 ........................................................18

U.S. Const. Amendment XI .......................................................................................9

## INTRODUCTION

Axon Enterprise, Inc. ("Axon") is an innovator and leader in the field of public safety technology.  Among the products Axon develops and sells are body-worn cameras ("BWCs"), digital evidence management systems ("DEMS"), and conducted energy weapons ("CEWs").  These products support Axon's mission to Protect Life by providing law enforcement with cutting-edge technology that protects them and the communities they serve and increases transparency and accountability.  Axon's customers are predominately federal, state, and local law enforcement agencies.

Plaintiffs are three municipal entities—the Township of Howell (NJ) ("Howell"), the City of Baltimore (MD) ("Baltimore"), and the City of Augusta (ME) ("Augusta")—hoping to represent a nationwide class of purchasers who bought BWC Systems and CEWs from Axon.  Plaintiffs' proposed class necessarily sweeps thousands of federal, state, and local law enforcement agencies—which represent the vast majority of Axon's customers—into the class.  But this case cannot proceed as a class action as a matter of law, and no amount of discovery will change that.

First, the Eleventh Amendment to the United States Constitution protects state entities from being conscripted into litigation—whether as a plaintiff or defendant—without an affirmative and express waiver of sovereign immunity.  Accordingly, and

as the Third Circuit has recently made clear, the Court lacks jurisdiction to include state entities as class members without an affirmative waiver of their immunity. *In re Flonase Antitrust Litig.*, 879 F.3d 61, 65 (3d Cir. 2017). The same principles bar plaintiffs from conscripting federal agencies into the class absent a waiver of the United States' sovereign immunity. Plaintiffs plead no such waiver for the state and federal entities that are necessarily included in their expansive class definition. As such, this Court should follow the well-paved path from every other court to consider this question and hold that Plaintiffs cannot maintain a class action that includes such entities.

Second, Plaintiffs fail to allege that they have the requisite legal authority to represent the predominately government-entity class they propose. Federal law, state statutes, and local ordinances generally vest the authority to represent government entities in a *government* attorney—such as the Attorney General, district attorney, or city attorney—not private law firms. Plaintiffs allege no facts suggesting they can overcome these legal barriers to them representing the thousands of federal, state, and municipal law enforcement agencies that make up the putative class.

Third, even if sovereign immunity, statutory law, and local ordinances did not categorically bar Plaintiffs' gambit here, there are insurmountable obstacles to class certification that no amount of discovery can cure. Letting the case proceed as a putative class action will mire the parties and Court in discovery and litigation over

highly individualized issues, including whether each government-entity class member can be represented by private law firms and which law enforcement agencies are entitled to sovereign immunity under the highly fact-intensive inquiry required to determine whether a given agency or department is an arm of the state for Eleventh Amendment purposes.[1]

For these reasons and as more fully set forth below, Axon respectfully submits that an Order striking Plaintiffs' class allegations in the Consolidated Amended Class Action Complaint (the "Complaint") is warranted.

## BACKGROUND[2]

Plaintiffs Howell and Augusta allege they are "organized and existing pursuant to the laws of" their states, and Baltimore alleges it is a "municipality." Compl. ¶¶ 22–24. These three governmental entities seek to represent a putative class of nationwide purchasers of Axon's BWC Systems and CEWs. Specifically, Plaintiffs define the class as:

---

[1] In addition to these threshold legal issues, Plaintiffs will also be unable to satisfy Rule 23's commonality, typicality, and adequacy requirements due to, at a minimum, variations in contract procurement processes and negotiations, contract terms, and variations in customer and transaction type—and Axon reserves all rights regarding same. For purposes of the present motion, Axon has limited its arguments to the purely legal issues which prohibit Plaintiffs from prosecuting these claims on behalf of the putative class and warrant striking the class allegations.

[2] Axon incorporates the Background section of its Motion to Dismiss, which is filed concurrently herewith, as if fully set forth herein.

> all persons or entities who have directly purchased any of the following from Axon in the United States from May 3, 2018 until the effects of Defendants' unlawful conduct cease (the "Class Period"): (1) a BWC System or any component of a BWC System or related services such as transcription, redaction, and warranties, and/or (2) a long-range CEW or components and related services such as electricity cartridges, battery packs, docks, cameras, signals, training and warranties.

Compl. ¶ 134.  Plaintiffs do not exclude federal, state, or municipal governmental entities from their class definition.  Compl. ¶ 135.

The Complaint demonstrates that the purchasers within the proposed class will be primarily (if not exclusively) federal, state, and municipal law enforcement agencies.  Plaintiffs allege that BWC Systems and CEWs are specifically "designed for use by law enforcement agencies."   Compl. ¶ 124; *see also id.* ¶¶ 2, 35, 37 (alleging BWCs are "specifically designed to withstand the rigorous demands of police usage" and capture "police actions" while DEMS are used by "police departments").  Although Plaintiffs suggest that private citizens may buy Axon's CEWs for self-defense, Compl. ¶ 60, they allege no facts that any individual or entity purchases BWC Systems except law enforcement and focus their Complaint on *police departments* as the relevant purchasers.   *See, e.g.*, Compl. ¶¶ 40-41 (allegations regarding purchasing behavior of police departments with no equivalent allegation for private purchasers); *see also id.* ¶¶ 15-16, 58-59, 72-74, 79.

There are more than 18,000 state, county, and municipal police departments in the United States.[3]  According to Plaintiffs, in 2022 "nearly half of police departments in the United States used body cameras" and Axon has held anywhere from 60-85% of the BWC System market.  Compl. ¶¶ 15, 43, 51.  This means the class includes anywhere from 5,400 to 7,650 state, county, and municipal police departments, plus federal agencies and any other non-police department law enforcement agencies in each state and municipality that purchased BWC Systems from Axon.  Similarly, Plaintiffs allege that "two-thirds of police departments used long-range CEWs," and that Axon has a 95% share of that market.  Compl. ¶¶ 58, 62.  This suggests that another 11,400 local police departments (plus any other federal or non-police law enforcement agencies that purchased CEWs) are included in the class for Plaintiffs' CEW claims.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only[]" and is permitted only where the prerequisites and standards of Rule 23 are met.  *Gen. Tel. Co. of Sw. v. Falcon*,

---

[3] *See* Declaration of Liza M. Walsh in Support of Motion to Strike ("Walsh Decl.") Ex. A (United States Department of Justice, "Policing 101"), which is judicially noticeable as information available on a government website. *See Raab Fam. P'ship v. Borough of Magnolia*, No. CIVIL 08-5050 (JBS), 2009 WL 361135, *7 n.9 (D.N.J. Feb. 13, 2009) (taking judicial notice of United States Census Bureau statistics).

457 U.S. 147, 155 (1982); Fed. R. Civ. P. 23(a)-(b); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008). Thus, a plaintiff must demonstrate that the case satisfies Rule 23(a)'s requirements—*i.e.*, numerosity, commonality, typicality, and adequacy of representation—and also fits into one of Rule 23(b)'s subsections—*i.e.*, that "final injunctive relief" is "appropriate respecting the class as a whole," or, for damages classes, that common questions predominate over any questions affecting individual members and a class action is "superior" to other available methods for litigating the dispute. Fed. R. Civ. P. 23; *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012).

Motions to strike class allegations are authorized under Rules 12(f) and 23 of the Federal Rules of Civil Procedure. Rule 23 provides that the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons" and directs the court to determine whether certification is possible "[a]t an early practicable time." Fed. R. Civ. P. 23(d)(1)(D) & (c)(1)(A). Additionally, under Rule 12(f), a party may move to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "These Rules, together, provide authority for the Court to strike the class allegations from Plaintiffs' Complaint, if appropriate, even before Plaintiffs move

for class certification." *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. CIV.A. 12-929, 2015 WL 401443, *2 (W.D. Pa. Jan. 28, 2015).

Granting a pre-discovery motion to strike class allegations is appropriate where the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011). As the Supreme Court has made clear, "[s]ometimes the issues are plain enough from the pleadings to determine whether" a class can be maintained. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, (1982).

Courts routinely recognize and apply this principle by striking class allegations before discovery or a motion for class certification. *See, e.g.*, *Martinez v. TD Bank USA, N.A.*, No. 15-7712, 2017 WL 2829601, *12 (D.N.J. June 30, 2017) (striking class claims because the putative class as pleaded would require "the sort of extensive fact-finding that class actions should avoid"); *Trunzo v. Citi Mortg.*, No. 2:11-CV-01124, 2014 WL 1317577, *13-15 (W.D. Pa. Mar. 31, 2014) (striking class allegations because complaint revealed the need to resolve individualized issues such that plaintiffs could not establish typicality, adequacy, predominance, and superiority requirements).

On a motion to strike class allegations, the "the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ.

P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *In re Ry. Indus. Emp. No-Poach Antitrust Litig*., 395 F. Supp. 3d 464, 498 (W.D. Pa. 2019); *see also Bell,* 2015 WL 401443, *2-3 (finding, in agreement with "the vast majority of District Courts in this circuit," that the plaintiff "must advance a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied") (internal quotations omitted).  Absent a prima facie showing that class treatment is proper, "a trial court's refusal to allow class discovery is not an abuse of discretion." *In re Ry. Indus. Emp.*, 395 F. Supp. at 498.

## ARGUMENT

This case cannot proceed as a class action as a matter of law because (1) sovereign immunity precludes Plaintiffs from representing state and federal entities absent an unequivocal waiver of their immunity, and the Complaint contains no such allegations; (2) federal and state statutes and local ordinances generally vest authority to represent government entities in specific *government* attorneys, and Plaintiffs allege no facts demonstrating their compliance with these laws; and (3) the highly individualized inquiries necessary to establish Plaintiffs' authority to represent each class member will overwhelm any purported common issues or benefit to the case proceeding as a class.  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003).

Accordingly, pursuant to Federal Rule of Civil Procedure 23(d)(1)(D) and Rule 12(f), the Court should exercise its discretion to strike the class allegations and avoid forcing the parties and judicial system into wasteful class discovery for a putative class that can never be certified.

## I.    SOVEREIGN IMMUNITY AND STATUTORY LAW PRECLUDE PLAINTIFFS FROM REPRESENTING THE GOVERNMENT ENTITIES THAT MAKE UP THE MAJORITY OF THE CLASS.

### A.    Sovereign Immunity Precludes The Court From Exercising Jurisdiction Over Federal And State Entity Class Members.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court "has repeatedly held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 754 (2002). "The Eleventh Amendment does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla. v. Florida*., 517 U.S. 44, 58 (1996) (cleaned up). Federal agencies are likewise entitled to sovereign immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).

9

Sovereign immunity does not function solely to shield sovereign entities from liability—it also bars any attempt to force them to prosecute putative claims "at a time and place dictated by the federal courts." *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 505-06 (8th Cir. 1995) (holding that sovereign immunity prevented a state from being involuntarily joined and realigned as a plaintiff); *Gensetix Inc. v. Board of Regents of University of Texas System*, 966 F.3d 1316, 1322 (Fed. Cir. 2020) (holding that sovereign immunity prevents a state from being "joined as an involuntary plaintiff"); *Havasupai Tribe v. Anasazi Water Co. LLC*, 321 F.R.D. 351, 355 (D. Ariz. 2017) (United States could not be involuntarily joined as a party absent a waiver of its sovereign immunity). That is because the Constitution's "concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation." *Thomas*, 50 F.3d at 506; *see also South Carolina State Ports Authority*, 535 U.S. at 765 ("Sovereign immunity is not merely a defense to monetary liability; its purpose is to respect the dignity of states as sovereigns").

The Third Circuit recently applied these principles to uphold a district court's refusal to enforce a class settlement that included the State of Louisiana as an absent class member. *In re Flonase Antitrust Litig.*, 879 F.3d 61, 67 (3d Cir. 2017). The court held that the settlement could not be enforced against Louisiana because in "approving the settlement agreement, the District Court lacked jurisdiction over the

State because the Eleventh Amendment applies to the primary case [in which Louisiana was an absent class member] and because Louisiana did not waive its sovereign immunity in that case." *Id.* at 65. In reaching this conclusion, the court was motivated by a concern that a contrary ruling would (a) allow a private party to waive a state's sovereign immunity; and (b) compel "premature litigation that potentially limits the costs the state can recover." *Id.* at 67 (cleaned up).

Although *Flonase* arose in a different procedural posture, its holding is clear: Absent a waiver of sovereign immunity, a district court lacks jurisdiction over sovereign governmental entities—even as purported absent class members—and any class-wide decision cannot bind such entities. Even without the benefit of *Flonase*, the few district courts to have addressed the question have held that a class cannot include government entities with sovereign immunity. *See Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208, 1210-11 (S.D. W. Va. 1997) (excluding states and their agencies from the class because the "Eleventh Amendment bars jurisdiction over [them]"); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 271 (D. Mass. 2011) (concluding that a class which "includes states" could not meet superiority requirement of Rule 23 in light of the sovereign immunity issues that would be raised); *In re: Wire Harness Sys.*, No. 12-MD-02311, 2015 WL 14047405, *5 (E.D. Mich. Apr. 30, 2015) (striking class allegations based on sovereign immunity).

11

The court's decision in *Wire Harness Systems* is particularly instructive. There, the court granted a motion to strike class allegations because sovereign immunity did not permit states to be "cast as unwilling plaintiffs" in a class action. 2015 WL 14047405, *4-5 (quoting *Walker*, 982 F. Supp. at 1210). The court refused to defer its ruling until the class certification stage because the ordinary process—certifying a class, providing notice, and permitting absent class members to opt out—"does not give proper deference to the doctrine of sovereign immunity." *Id.* at *3; *see also Flonase*, 879 F.3d at 69 (state's failure to oppose class settlement after receiving Class Action Fairness Act notice was not a "clear declaration" that it was waiving sovereign immunity); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990) ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.") (cleaned up).

These principles doom Plaintiffs' effort to litigate this case as a class action. Plaintiffs' Complaint establishes that the overwhelming majority of putative class members are federal, state, or local police departments or similar law enforcement agencies. Accordingly, the class will necessarily include an untold number of federal and state law enforcement agencies that are entitled to sovereign immunity. *See, e.g.*, *O'Leary v. California Highway Patrol*, 923 F.2d 862 (9th Cir. 1991)

(California Highway Patrol entitled to sovereign immunity under Eleventh Amendment); *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (Pennsylvania State Police had sovereign immunity); *Martinez v. Eagle Disposal*, 783 F. App'x 206, 209 (3d Cir. 2019) (FBI entitled to sovereign immunity).  Here, Plaintiffs offer no allegations that the United States or *any* state has waived their sovereign immunity.  Nor can the Court wait until class certification and insist that any government entities who want to participate affirmatively opt in because such an "opt in" class is unauthorized by Rule 23.  *See, e.g., Kern v. Siemens Corp.*, 393 F.3d 120, 124-27 (2d Cir. 2004) (holding that district court erred in certifying an "opt in" class); *Hassine v. Simon's Agency Inc.*, No. 18-09031, 2021 WL 9990348, *2 (D.N.J. Dec. 21, 2021) (denying request for an opt-in requirement, and noting there is no legal authority for the proposition that an opt-in requirement is necessary or authorized).  Accordingly, the class allegations should be stricken because sovereign immunity bars Plaintiffs from representing the federal and state entities included in the proposed class.  *See, e.g.*, *In Re: Wire Harness Sys.*, 2015 WL 14047405, *3-5.

### B.    Plaintiffs' Representation Of Federal, State And Local Agencies Is Precluded By Statutes And Ordinances.

Plaintiffs are also barred from asserting claims on behalf of government agencies pursuant to federal, state, and municipal statutes that delegate their representation in litigation to a government attorney.  Plaintiffs allege no facts suggesting they have been authorized to represent the thousands of governmental

entities that will make up the majority of the proposed class. Accordingly, there is no basis to believe that the Plaintiffs' proposed class action can be maintained without wholesale violations of statutes and ordinances across the country, and the class allegations must be dismissed.

### 1. Federal Law Precludes Plaintiffs From Representing Federal Agencies.

Plaintiffs are prohibited from representing any federal agencies that purchased products from Axon. Only the U.S. Department of Justice, under the direction of the U.S. Attorney General, is authorized to conduct litigation in which the United States or one of its agencies is a party or is interested. 28 U.S.C. § 516 (providing that "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *see also* 28 U.S.C. § 519 ("Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party . . ."). The plain language of these statutes clearly demonstrates that neither Plaintiffs nor their counsel are authorized to represent the interests of a United States agency in this action. *See also Sobel v. Hertz Corp.*, No. 06-cv-00545-LRH-RAM, 2011 WL 2559565, *16 (D. Nev. June 27, 2011) (noting United States' position that these statutes "preclude[] its participation as a member of a class represented by private counsel" and directing the parties to address the issue in future

14

briefing).  Yet, because the proposed class includes *all* entities that have directly purchased BWC Systems or CEWs from Axon, Compl. ¶ 134, the proposed class necessarily includes untold numbers of federal agencies as absent class members.

### 2.   Plaintiffs Are Statutorily Barred From Representing States And State Agencies.

Even ignoring the sovereign immunity bar to the proposed class (*supra* § I-A), Plaintiffs are also barred from representing states and state agencies by statute. Virtually every state maintains control over its participation in litigation, including by statutorily granting its chief governmental attorney—*i.e.*, the Attorney General—*exclusive* authority to represent the state's interests in litigation.  *See In re McKesson* 767 F. Supp. at 271 ("[M]ost states have laws providing the Attorney General of the state with the exclusive authority to represent the state in litigation"); *Walker*, 982 F. Supp. at 1210-11 (striking states and state agencies from proposed settlement class).

By way of example, New Jersey law provides that the state Attorney General "shall *exclusively* attend to and control all litigation and controversies to which the State is a party or in which its rights and interests are involved."  N.J.S.A. § 52:17A-4(c) (emphasis added).  Plaintiffs therefore lack authorization to represent the

interests of New Jersey state agencies (*e.g.*, the New Jersey State Police Department).[4]

The same holds true for every other state that similarly confers authority on the state Attorney General to assert or maintain claims on behalf of state agencies, including but not limited to the following states:

- **Alabama**—"*All* litigation concerning the interest of the state, or any department of the state, *shall* be under the direction and control of the Attorney General." Ala. Code § 36-15-21 (emphasis added).

- **California**—"The Attorney General has charge, as attorney, of *all* legal matters in which the State is interested, except the business of The Regents of the University of California and of such other boards or officers as are by law authorized to employ attorneys." Cal. Gov't Code § 12511 (emphasis added).

- **Florida**—The Attorney General "shall appear in and attend to, in behalf of the state, *all* suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested, in the Supreme Court and district courts of appeal of this state[,] [and] [s]hall appear in and attend to such suits or prosecutions in any other of the courts of this state or in any courts of any other state or of the United States. This subsection is not intended to authorize the joinder of the Attorney General as a party in such suits or prosecutions." Fla. Stat. Ann. § 16.01(4)-(5) (emphasis added).

- **Nebraska**—"The Department of Justice *shall* have the general control and supervision of *all* actions and legal proceedings in which the State

---

[4] *See* Walsh Decl. Ex. B (New Jersey State Police, "Body Worn Cameras"), which is judicially noticeable as information made "publicly available on government websites." *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *see also Pinckney v. Cofaro*, 2023 WL 5177492, *2-3 (D.N.J. Aug. 11, 2023) (Kirsch, J.) (taking judicial notice of information found on a county social service board website).

of Nebraska may be a party or may be interested, and shall have charge and control of all the legal business of all departments and bureaus of the state, or of any office thereof, which requires the services of attorney or counsel in order to protect the interests of the state."  Neb. Rev. Stat. Ann. § 84-202 (emphasis added).

- **West Virginia**—The "attorney general shall appear as counsel for the state in *all* causes pending … in any federal court[] in which the state is interested." W. Va. Code § 5-3-2 (emphasis added).[5]

Plaintiffs allege no facts suggesting that they have authority to proceed as representatives of these states or, indeed, *any* state, so their class allegations must be stricken.  *See In Re: Wire Harness Sys.*, 2015 WL 14047405, *7 (granting motion to strike class allegations based on "the statutory requirements that local state entities must satisfy before being represented by private counsel" which had not been alleged); *Walker*, 982 F. Supp. at 1210-11 (striking state entities and agencies from the class because, without proper authorization, private class counsel "act *ultra vires*").

### 3.    Plaintiffs Are Precluded From Representing Municipal, County, And Local Law Enforcement Agencies.

Plaintiffs are likewise precluded from representing municipal, county, and local law enforcement agencies because under countless municipal or county laws,

---

[5] *See also* Md. Code, State Gov't § 6-106(b)-(c); Minn. Stat. § 8.01; Miss. Code Ann. § 7-5-1; N.M. Stat. § 8-5-2(B); N.Y. Exec. Law § 63(1); N.C. Gen. Stat. § 114-2(1); *Walker*, 982 F. Supp. at 1211 (finding that plaintiffs' counsel was "not authorized to represent the States" as class members, citing statutes from Alabama, Colorado, Georgia, Nebraska, and Ohio).

only the city, county or district attorney is authorized to initiate or maintain litigation in which the municipality or county is interested.  For example, the City Charter for the City of Henderson, Nevada unambiguously states that the Henderson City Attorney "shall … Determine whether the City should initiate any judicial or administrative proceeding."   Henderson NV, City Charter, Art. III, § 3.060(d). Under that ordinance, the authority to initiate civil proceedings on behalf of the City of Henderson, and its law enforcement agencies, lies with the City Attorney—not private plaintiffs' counsel.  The same is true with respect to the many other municipal and local law enforcement agencies subsumed within Plaintiffs' proposed class definition.[6]  Plaintiffs allege no facts suggesting that they have authority to represent the countless municipal police departments and other local law enforcement entities

---

[6] *See, e.g.*, Alexandria VA City Charter, Ch. 11, § 11.02(e) ("The city attorney shall . . . Institute and prosecute all legal proceedings he shall deem necessary or proper to protect the interests of the city"); City of San Bernardino, CA, City Charter, Art. V § 504 ("The City Attorney shall . . . represent the City in all legal proceedings"); Pflugerville, TX, City Charter, Art. IV § 4.03 ("The city council shall appoint a city attorney, who shall . . . represent the city in all litigation . . . ."); Columbus, OH, City Charter, § 67 ("The city attorney shall prosecute or defend all suits for and in behalf of the city..."); Oakland, CA, City Charter, Art. IV § 401(6) ("He or she shall act as Counsel in behalf of the City or any of its officers, boards, commissions, or other agencies in litigation involving any of them in their official capacity."); Kansas City, MO, City Charter, Art. IV § 407(a)(2) ("There will exist a Law Department, under the supervision of the City Attorney, to perform the following duties: . . . Represent the City in all legal matters and proceedings in which the City is a party or interested.").

necessarily included in their proposed class, so their class allegations—which purport to define a class of *several thousands* of these entities—must be dismissed.

## II. PLAINTIFFS' COMPLAINT FURTHER ESTABLISHES THEY CANNOT MEET THE REQUIREMENTS OF RULE 23.

While the Court does not need to reach this issue because Plaintiffs are categorically barred by sovereign immunity, statutes, and ordinances from maintaining the proposed class action (*supra* § I), the proffered class is also not viable from the face of the Complaint, and no amount of notoriously costly discovery in this antitrust action will change that fact.

Rule 23 provides that a class action may be maintained only where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Relatedly, Rule 23(b)(3) damage classes are only permissible when "questions of law or fact common to class members predominate over any questions affecting only individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance cannot be satisfied where the putative class claims "lead to disparate applications of legal rules." *Porter v. Nationscredit Consumer Discount Co.*, 229 F.R.D. 497, 498 (E.D. Pa. 2005) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 189 (3d Cir. 2001); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[n]o class action is proper unless all litigants are governed by the same legal rules").

19

To satisfy Rule 23(b)(3), class treatment must also be "superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority analysis balances "the merits of a class action against those of alternative available methods of adjudication" through the lens of fairness and efficiency. *In re Cmty. Bank*, 795 F.3d at 409. The key factor in determining superiority "is manageability, which focuses on pragmatic concerns." *In re McKesson*, 767 F. Supp. 2d at 271 (internal citations omitted). Both the predominance and superiority elements are aimed at ensuring the class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (internal citation omitted).

And a class can only be maintained where class counsel is an adequate representative, which requires evaluating "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Management, Inc*., 265 F.3d 178, 185 (3d Cir. 2001).

Plaintiffs' Complaint demonstrates they will be unable to meet any of these Rule 23 requirements because their proposed class of predominately governmental entities will necessitate highly individualized inquiries that will dwarf any common

issues, render the class unmanageable, and render the named Plaintiffs incapable of adequately representing the class. *See In re McKesson*, 767 F. Supp. 2d at 271 (concluding that a class which "includes states" could not meet superiority requirement of Rule 23 in light of the sovereign immunity issues that would need to be addressed); *Advanced Acupuncture Clinic, Inc. v. Allstate Ins*. Co., No. CIV.A.07-4925 (JAP), 2008 WL 4056244, *11 (D.N.J. Aug. 26, 2008) (granting motion to strike "[b]ecause the class potentially includes plaintiffs from each of the fifty states, fifty different state laws could apply to the [at-issue] insurance policies, rendering the class action unmanageable"), *aff'd* on other grounds sub nom. *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co*., 342 F. App'x 809 (3d Cir. 2009).

First, even if some states or municipalities do not flat-out prohibit private plaintiffs' counsel from representing their interests in a class action (*supra* § I-B), it would require a tremendous amount of discovery and litigation to identify whether any particular class member can be lawfully represented by the private attorneys purporting to represent the class here. There are over 18,000 police departments in the country, most of which, according to Plaintiffs' allegations, will have purchased a BWC System and/or CEW from Axon. For every one of these purported class members, the parties will need to litigate—and the Court will need to decide— whether the entity can be represented in this case by private class counsel at all, under what conditions, and whether those conditions were met.

Consider Plaintiff Baltimore as an example, where the "City Solicitor shall have *sole* charge" of all suits on behalf of the City or "any municipal officer or agency"— except where (a) the City Solicitor provides written notice of an "irreconcilable conflict of interest" and (b) the agency or department obtains "approval of the Mayor" to "select outside counsel to represent it."  Charter of the City of Baltimore, Article VII, § 24(a)-(c).  Axon will need to conduct discovery on whether these prerequisites to class counsel representing Baltimore have been met.  The parties would then have to litigate (and the Court would have to decide) the scope of this ordinance and whether the evidence was sufficient to establish the prerequisites were met.  And then, this intensive process would have to repeat for the *multiple thousands* of other governmental entities that make up the vast majority of Plaintiffs' proposed class.

Second, the scope of sovereign immunity and which class members receive it will also involve highly individualized inquiries.  "The Eleventh Amendment immunizes from suit in federal court both non-consenting states and those entities that are so intertwined with them as to render them 'arms of the state.'"  *Karns v. Shanahan*, 879 F.3d 504, 512-13 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007)).  Whether a particular entity is so intertwined with the state to be entitled to sovereign immunity requires a "fact-intensive three-part" inquiry into (1) the nature of the entity's funding, (2) the

entity's status under state law, and (3) the entity's degree of autonomy. *See Karns*, 879 F.3d at 513. Each of these questions, in turn, depend on subsidiary entity- and jurisdiction-specific factors. For example, in analyzing the agency "status" factor, the Court considers, among others, "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation," as well as the "application of state administrative procedure and civil service laws to the entity, the entity's ability to enter contracts and make purchases on its own behalf, and whether the entity owns its own real estate." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 91 (3d Cir. 2016) (internal citations omitted). Similarly, in analyzing the "autonomy" factor, the Court must consider "the entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Id.* at 96. "[E]ach step of [the] analysis is a fact-intensive undertaking that requires a fresh analysis and individualized determinations for each entity claiming Eleventh Amendment immunity." *Id.* at 84.

This means that for each potential class member, the Court will be forced to evaluate state statutes and case law relating to the entity's structure, governance, authority, and financials, to determine if it is an arm of the state for sovereign immunity purposes. Worse still, this inquiry may implicate subsidiary choice-of-law questions—such as whether to apply the sovereign immunity law from the Third

Circuit or the circuit in which each class member resides—which would alone involve a morass of different individualized inquiries. *See Maliandi*, 845 F.3d at 85 (noting that decisions from other circuits are informative but not determinative because the "particulars" of the Third Circuit's arm of the state "test differ from analogous tests in other Circuits and because each entity seeking immunity warrants an individualized analysis").

No amount of discovery can cure these defects. On the contrary, the only discovery that would yield the answers the parties and Court need to determine whether any given entity is a member of the class would be precisely the type of entity-specific discovery that renders a class action improper. *See Walney v. SWEPI LP*, No. CV 13-102, 2019 WL 1436938, *10 (W.D. Pa. Mar. 31, 2019) (finding class treatment improper where the proof necessary to establish predominance requirement of Rule 23 would "by its very nature, require individualized discovery"). As one court explained when confronted with a similar issue: a court should not permit "potentially massive discovery concerning a class comprised of every municipal and regional government in the nation without further indication of foresight on the part of the purported representatives of those absent class members." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, *18 (N.D. Cal. Oct. 2, 2014). Accordingly, the Court should exercise its discretion to strike Plaintiffs' class allegations.

## CONCLUSION

For the foregoing reasons, the class allegations in the Complaint should be stricken.

Dated: February 5, 2024                    Respectfully submitted,


                                           *s/Liza M. Walsh*
                                           Liza M. Walsh


WALSH PIZZI O'REILLY FALANGA LLP          JONES DAY
Liza M. Walsh                              Julia E. McEvoy (*pro hac vice*)
Katelyn O'Reilly                           51 Louisiana Ave., N.W.
Eric S. Padilla                            Washington, D.C. 20001
Three Gateway Center                       Tel: (202) 879-3939
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102                   Aaron M. Healey (*pro hac vice*)
Tel: (973) 757-1100                        250 Vessey Street
                                           New York, New York 10281
                                           Tel: (212) 326-3939

AXON ENTERPRISE, INC.
Pamela B. Petersen (*pro hac vice*)
Gayathiri Shanmuganatha (*pro hac vice*)
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016

*Attorneys for Defendant Axon Enterprise, Inc.*