Michael D. Fitzgerald (NJ #004391985)
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
(202) 349-1482
mdfitz@briellelaw.com

*Interim Liaison Counsel for*
*Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| *IN RE AXON VIEVU ANTITRUST LITIGATION* | No. 3:23-cv-7182-RK-RLS<br><br>Jury Trial Demanded<br><br>**Oral Argument Requested** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO AXON'S MOTION TO STRIKE CLASS ALLEGATIONS

# TABLE OF CONTENTS

TABLE OF CONTENTS .............................................................................. i

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS......................................................................... 4

LEGAL STANDARD ............................................................................... 5

ARGUMENT.......................................................................................... 6

    I.    LOCAL GOVERNMENT ENTITIES SHOULD NOT BE STRUCK FROM THE PUTATIVE CLASS ........................................... 6

        A.    Rule 23 Forecloses Axon's Authorization Argument. ............... 7

        B.    Axon Lacks Standing to Assert the Rights of LGEs. ............... 12

        C.    Local Laws Do Not Prohibit LGEs from Serving as Absent Class Members. ..................................................... 13

        D.    The Rights of Putative LGE Class Members Are Protected by Their Ability to Opt Out Following Class Certification. ......... 16

        E.    Striking LGEs from the Proposed Class Runs Contrary to Decades of Precedent as Well as the Policy Considerations Underlying Rule 23 ................................................. 17

    II.    STATE AND FEDERAL ENTITIES ARE APPROPRIATELY INCLUDED IN THE PROPOSED CLASS ....................................... 21

        A.    State and Federal Statutes Do Not Bar State and Federal Entities from Serving as Absent Class Members. ................... 21

        B.    Sovereign Immunity Does Not Bar State and Federal Entities from Serving as Absent Class Members ............................ 24

            1.    *Axon Lacks Standing to Assert the Eleventh Amendment Rights of Its Adversaries.* ................................ 25

            2.    *State and Federal Entities May Appropriately Waive Sovereign Immunity Through Rule 23's Opt-Out Procedure* ........................................................ 29

i

　　　　　　3.　　*Sovereign Immunity Is Inapplicable Where No Remedies Are Sought Against State and Federal Entities.*..............33

　III.　AXON'S RULE 23 ARGUMENTS ARE INCORRECT AND PREMATURE ......................................................................................35

CONCLUSION...........................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*6803 Blvd. E., LLC v. DIRECTV, Inc.,*
  2012 WL 3133680 (D.N.J. July 31, 2012)........................................................ 37

*Alden v. Maine,*
  527 U.S. 706 (1999) ....................................................................................... 6

*In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.,*
  537 F. Supp. 3d 679 (D.N.J. 2021).........................................................5, 6, 36

*Amato v. Wilentz,*
  952 F.2d 742 (3d Cir. 1991)................................................................ 12, 13, 25

*Anello Fence, LLC v. VCA Sons, Inc.,*
  2016 WL 354746 (D.N.J. Jan. 27, 2016) ........................................................ 13

*In re Atl. Fin. Fed. Sec. Litig.,*
  1990 WL 188927 (E.D. Pa. Nov. 28, 1990)..................................................... 19

*Balon v. Agria Corp.,*
  No. 16-cv-8376 (D.N.J. June 30, 2017), ECF No. 25........................................ 19

*Bd. of Cnty. Comm'rs v. Wilshire Oil Co.,*
  1973 WL 797 (W.D. Okla. 1973)..................................................................... 9

*Montgomery County ex rel. Becker v. MERSCORP, Inc.,*
  298 F.R.D. 202 (E.D. Pa. 2014)..................................................................... 10

*Califano v. Yamasaki,*
  442 U.S. 682 (1979)...................................................................................... 22

*Cent. Power & Light Co. v. City of San Juan,*
  962 S.W.2d 602 (Tex. Ct. App. 1998)........................................................15, 17

*In re Centerstone Diamonds, Inc.,*
  2014 WL 1330186 (Bankr. C.D. Cal. Apr. 2, 2014) ......................................... 8

*In re Charter Oak Assocs.,*
  361 F.3d 760 (2d Cir. 2004)........................................................................... 31

*Christy v. Pa. Tpk. Comm'n*,
  54 F.3d 1140 (3d Cir. 1995)................................................................. 25

*City of Goodlettsville v. Priceline.com, Inc.*,
  267 F.R.D. 523 (M.D. Tenn. 2010).............................13, 17, 19, 21

*City of O'Fallon v. CenturyLink, Inc.*,
  491 S.W.3d 276 (Mo. Ct. App. 2016) ................................... 16

*City of Philadelphia v. Am. Oil Co.*,
  53 F.R.D. 45 (D.N.J. 1971) ........................................................ 19

*City of San Antonio v. Hotels.com*,
  2008 WL 2486043 (W.D. Tex. May 27, 2008)........................ 21

*City of San Benito v. Rio Grande Valley Gas Co.*,
  109 S.W.3d 750 (Tex. 2003)...............................................16, 17

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005).............................................14, 15

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999) .........................................................25, 28

*Comm'rs of Pub. Works v. Costco Wholesale Corp.*,
  2024 WL 1004697 (D.S.C. Mar. 8, 2024)............................. 19

*Commonwealth v. Reichl*,
  2019 WL 2488678 (Va. Cir. Ct. Mar. 22, 2019)................... 16

*County of Monroe v. Priceline.com, Inc.*,
  265 F.R.D. 659 (S.D. Fla. 2010)........................................17, 19

*In re DaimlerChrysler AG Sec. Litig.*,
  216 F.R.D. 291 (D. Del. 2003) .............................................. 19

*Deal v. Velez*,
  244 F. Supp. 3d 435 (D.N.J. 2017)........................................ 36

*Entex, a Div. of Noram Energy Corp. v. City of Pearland*,
  990 S.W.2d 904 (Tex. Ct. App. 1999).................................. 15

*In re Fine Paper Antitrust Litig.*,
    685 F.2d 810 (3d Cir. 1982)........................................................................18, 24

*In re Flonase Antitrust Litig.*,
    2015 WL 9273274 (E.D. Pa. Dec. 21, 2015) ......................................... 32

*In re Flonase Antitrust Litig.*,
    879 F.3d 61 (3d Cir. 2017)........................................................... 3, 32, 33, 34

*Gares v. Willingboro Township*,
    90 F.3d 720 (3d Cir. 1996)............................................................ 15

*Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*,
    966 F.3d 1316 (Fed. Cir. 2020) ...............................................26, 35

*Gragg v. Ky. Cabinet for Workforce Dev.*,
    289 F.3d 958 (6th Cir. 2002) ....................................................25, 26

*Havasupai Tribe v. Anasazi Water Co. LLC*,
    321 F.R.D. 351 (D. Ariz. 2017)........................................................... 35

*Hill v. Blind Indus. & Servs. of Md.*,
    179 F.3d 754 (9th Cir. 1999), *opinion amended on denial of reh'g*,
    201 F.3d 1186 (9th Cir. 1999) ......................................................... 31

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)........................................................... 37

*Iowa v. Union Asphalt & Roadoils, Inc.*,
    281 F. Supp. 391 (S.D. Iowa 1968), *aff'd*, 409 F.2d 1239 (8th Cir.
    1969), *and aff'd sub nom. Standard Oil Co. v. Iowa*, 408 F.2d 1171
    (8th Cir. 1969) ........................................................................... 9

*Knepper v. Rite Aid Corp.*,
    675 F.3d 249 (3d Cir. 2012)........................................................10, 22

*Ku v. Tennessee*,
    322 F.3d 431 (6th Cir. 2003) ......................................................... 31

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
    2012 WL 6622120 (D.N.J. Dec. 19, 2012) .................................5, 8, 37

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3d Cir. 2011), *opinion reinstated in part*, 2012 WL
  2052685 (3d Cir. Apr. 17, 2012) .................................................................. 5, 37

*Lane v. Pena*,
  518 U.S. 187 (1996) ....................................................................................... 2

*Lapides v. Bd. of Regents*,
  535 U.S. 613 (2002) ...................................................................................... 31

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  2017 WL 3131977 (D.N.J. July 20, 2017) ..................................................... 37

*Lombardo v. Pennsylvania, Dep't of Pub. Welfare*,
  540 F.3d 190 (3d Cir. 2008) .......................................................................... 31

*Lowden v. T-Mobile USA, Inc.*,
  512 F.3d 1213 (9th Cir. 2008) ......................................................................... 1

*Luppino v. Mercedes-Benz USA, LLC*,
  2013 WL 6047556 (D.N.J. Nov. 12, 2013) ............................................. 5, 6, 37

*In re Lupron Mktg. & Sales Pracs. Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ........................................................... 19, 21, 23

*Marcy v. Select Med. Corp.*,
  2023 WL 8542684 (M.D. Pa. Dec. 6, 2023) .............................................. 10, 11

*McGowan v. Maryland*,
  366 U.S. 420 (1961) ...................................................................................... 12

*In re McKesson Governmental Entities Average Wholesale Price Litig.*,
  767 F. Supp. 2d 263 (D. Mass. 2011) ........................................... 19, 26, 33, 34

*McPeak v. S-L Distribution Co.*,
  2014 WL 4388562 (D.N.J. Sept. 5, 2014) ........................................................ 6

*Mediterranean Villas Condo. Ass'n v. Moors Master Maint. Ass'n*,
  2012 WL 882508 (S.D. Fla. Mar. 14, 2012) ..................................................... 8

*In re Merck & Co.*,
  No. 08-cv-2177 (D.N.J. Sept. 25, 2012), ECF No. 251 ................................... 19

*Minnesota v. U.S. Steel Corp.*,
44 F.R.D. 559 (D. Minn. 1968) .............................................................. 9

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
2015 WL 12791433 (E.D. Pa. Jan. 28, 2015) ................................. 18, 24

*In re Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) .......................................................... 20

*Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616 (E.D. Pa.
Apr. 22, 2005) ............................................................................ 19, 23, 24

*Norman v. Allied Interstate, LLC*,
310 F. Supp. 3d 509 (E.D. Pa. 2018) .................................................... 38

*Pac. Gas & Elec. Co. v. County of Stanislaus*,
947 P.2d 291 (Cal. 1997) ...................................................................... 15

*Phila. Elec. Co. v. Anaconda Am. Brass Co.*,
43 F.R.D. 452 (E.D. Pa. 1968) .............................................................. 18

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................... 14, 29, 30, 31

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
338 F.R.D. 294 (D. Mass. 2021) ........................................................... 20

*In re Remicade Antitrust Litig.*,
No. 17-cv-4326 (E.D. Pa. Mar 15, 2023), ECF No. 227 ...................... 19

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
241 F.R.D. 85 (D. Mass. 2007) ........................................... 14, 19, 4, 31

*Singleton v. Wulff*,
428 U.S. 106 (1976) ......................................................................... 12, 13

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ............................................................................. 33

*Sung Park v. Ind. Univ. Sch. of Dentistry*,
692 F.3d 828 (7th Cir. 2012) ............................................................... 31

*Sw. Bell v. City of Port Arthur*,
　1993 WL 13013186 (Tex. Ct. App. June 3, 1993) .............................................. 21

*Thomas v. FAG Bearings Corp.*,
　50 F.3d 502 (8th Cir. 1995) ........................................................................26, 35

*Tritchler v. County of Lake*,
　358 F.3d 1150 (9th Cir. 2004) ........................................................................ 27

*United States v. Kluger*,
　722 F.3d 549 (3d Cir. 2013) ............................................................................ 23

*United States v. Mun. Bond & Collection Servs., Inc.*,
　810 F.2d 46 (3rd Cir. 1987) ............................................................................ 12

*Walker v. Liggett Grp., Inc.*,
　982 F. Supp. 1208 (S.D. W. Va. 1997) ....................................20 24, 26, 33, 35

*Walker v. Liggett Grp., Inc.*,
　1997 WL 33635626 (S.D. W. Va. May 15, 1997) ........................................... 20

*Wis. Dep't of Corr. v. Schacht*,
　524 U.S. 381 (1998) ........................................................................................ 25

*In re Zetia (Ezetimibe) Antitrust Litig.*,
　2020 WL 5778756 (E.D. Va. Aug. 14, 2020) .................................................. 20

**Statutes**

28 U.S.C. § 516 ................................................................................................... 22

28 U.S.C. § 519 ................................................................................................... 22

28 U.S.C. § 1331 ................................................................................................... 8

**Other Authorities**

U.S. Const. amend. XIII ............................................................................*passim*

3 Charles Alan Wright & Arthur R. Miller, *Federal Practice &*
　*Procedure Judicial Review* § 8351 (2d ed. 2023) ............................................. 2

Fed. R. Civ. P. 1 ................................................................................................... 7

Fed. R. Civ. P. 23 ............................................................................*passim*

*Industries*, AXON, https://www.axon.com/ (last visited Apr. 14, 2024) ............................................................................................ 4

*TASER Pulse*, TASER, https://taser.com/pages/all-devices (last visited Apr. 14, 2024)............................................................................ 38

1 William Rubenstein et al., *Newberg on Class Actions* § 9:1 (5th ed. 2018) ............................................................................................ 14

## INTRODUCTION

Government entities are significant commercial actors in the U.S. economy. They buy almost everything, from prescription drugs to body armor, from securities to natural gas, from paper clips to steel. And when class actions are filed, settled, and certified, government entities are regularly included as named and absent class members in their capacity as commercial purchasers of these products. For good reason. Government entities have limited resources, and class actions are often the only means they have to recover for their injuries.[1]

In a radical bid to upend decades of precedent wherein courts have routinely certified classes consisting of government entities, Axon Enterprise, Inc. ("Axon") asks this court to issue a sweeping decision barring all class actions on behalf of government entities. Axon's argument is based on its claims that (1) various statutes and ordinances bar government entities from serving as absent class members without their express consent prior to the filing of a complaint, Mot.[2] at 13-17; and

---

[1] *See, e.g.*, *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1218 (9th Cir. 2008) (noting that Washington Attorney General "did not have sufficient resources to respond to many individual cases and often relied on . . . private class action" (internal quotation marks omitted) (alteration in original)).

[2] "Motion" or "Mot." refers to Defendant Axon Enterprise, Inc.'s Motion to Strike Class Allegations.

(2) sovereign immunity prohibits state and federal entities from serving as absent class members, Mot. at 9-13. Both premises are meritless.

Axon's "authorization" argument fails for at least four independent reasons. *First*, because Rule 23 governs class actions asserting federal claims in federal court, the local and state authorization laws Axon cites are "irrelevant" under binding Supreme Court precedent. *Second*, Axon lacks standing to assert its "authorization" argument on behalf of government entities. *Third*, Axon fails to cite a single law that prohibits government entities from serving as absent class members (nor are Plaintiffs[3] aware of any). To the contrary, courts routinely certify classes consisting of government entities and have rejected arguments identical to those raised by Axon here. *Fourth*, the rights of putative absent government entity class members are protected by their ability to opt out of a class.

Similarly, Axon's contention that sovereign immunity bars state and federal entities[4] from serving as absent class members must be rejected. Axon may not assert

---

[3] "Plaintiffs" refers collectively to the Township of Howell, Monmouth County, New Jersey; the Mayor and City Council of Baltimore; and the City of Augusta, Kennebec County, Maine.

[4] Sovereign immunity applies to state as well as federal entities and is analyzed in the same way. *Lane v. Pena*, 518 U.S. 187, 192 (1996); 3 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Judicial Review § 8351 (2d ed. 2023).

sovereign immunity on behalf of state and federal entities because only state and federal entities may assert sovereign immunity.

Even if the Court were to find that Axon has standing to assert a sovereign immunity defense on behalf of state and federal entities, Axon's Motion should be rejected because class notice and opt-out procedures adequately preserve the ability of these entities to assert or waive sovereign immunity.

Further, no court in the Third Circuit has ever found that sovereign immunity bars state and federal entities from serving as absent class members, particularly at the pleadings stage, since serving as an absent class member does not constitute "a suit against a state" or federal government. *See In re Flonase Antitrust Litig.*, 879 F.3d 61, 63 (3d Cir. 2017).

Finally, Axon's related contention that Rule 23 prohibits Plaintiffs' class action is incorrect and premature. This argument fundamentally rests on—and therefore falls with—Axon's flawed premise that authorization laws and sovereign immunity prevent government entities from participating in class actions. But even to the extent that authorization laws or sovereign immunity might require consent from some class members or prevent them from participating in the class, that would not create overwhelming individualized inquiries or otherwise warrant striking Plaintiffs' class allegations entirely at this stage. At the very least, such questions would more properly be addressed at the class certification stage.

Put simply, as decades of precedent confirm, class actions are and should be available to government entities just as they are available to other commercial actors. Axon's motion should accordingly be denied.

## STATEMENT OF FACTS

Plaintiffs incorporate the Statement of Facts from their Memorandum of Law in Opposition to Axon's Motion to Dismiss the Consolidated Amended Complaint. Plaintiffs represent a proposed class of direct purchasers of the Relevant Products.[5] Consolidated Amended Complaint ("CAC") ¶ 134. Plaintiffs allege that they and the proposed class paid higher prices as a result of Axon's acquisition of VieVu, LLC from Safariland, LLC and the related anticompetitive agreements. CAC ¶ 133. As Axon's own website explains, direct purchasers of the Relevant Products include (1) Cities, Towns, Townships, Villages, Counties, and other municipalities ("Local Government Entities" or "LGEs"); (2) state entities; (3) federal government entities; and (4) private purchasers.[6]

---

[5] The "Relevant Products" are Body-Worn Camera Systems and their components and related services, and Conducted-Energy Weapons ("CEWs") and their components and related services as defined in Paragraphs 1, 35-36, and 55 of the CAC.

[6] *Industries*, AXON, https://www.axon.com/ (last visited Apr. 14, 2024) (listing industries of "Law Enforcement: Municipal, county, and state law enforcement agencies," "Federal," "Retail," "Private Security," and "Personal Safety," among others).

To date, Plaintiffs have not received any discovery from Axon or Safariland, LLC (collectively, "Defendants"). As direct purchasers of the Relevant Products, information regarding the composition of the proposed class is uniquely in Defendants' possession. Plaintiffs asked Defendants to produce documents and related deposition transcripts Defendants previously produced to the Federal Trade Commission, but Defendants have refused. Axon's motion seeks to strike Plaintiffs' class allegations without providing Plaintiffs any discovery regarding the class's scope or composition.

## LEGAL STANDARD

"Dismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery." *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (cleaned up); *see also Luppino v. Mercedes-Benz USA, LLC*, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013) ("Dismissal of class claims prior to discovery and a motion to certify the class by [a] plaintiff is the exception rather than the rule.").

A motion to strike, therefore, will not be granted unless it is among the "rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011), *opinion reinstated in part*, 2012 WL 2052685 (3d

Cir. Apr. 17, 2012). In making that determination, "the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to Plaintiffs" that could otherwise defeat class certification. *Luppino*, 2013 WL 6047556, at *3. "[T]he Court will not consider the potential factual differences among individual Plaintiffs, which could otherwise defeat class certification." *In re Allergan*, 537 F. Supp. 3d at 752. "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *McPeak v. S-L Distribution Co.*, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014).

## ARGUMENT

## I.   LOCAL GOVERNMENT ENTITIES SHOULD NOT BE STRUCK FROM THE PUTATIVE CLASS

Axon concedes that its Eleventh Amendment argument has no application to LGEs. Mot. at 15.[7] Instead, its *only* argument for striking LGEs as putative class members is that Plaintiffs "allege no facts suggesting that they have authority to represent" the LGEs "necessarily included in their proposed class." Mot. at 18-19.

---

[7] As the Supreme Court held, "immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Alden v. Maine*, 527 U.S. 706, 756 (1999).

Axon's statutory "authorization" argument should be rejected as it applies to LGEs.[8]

### A.    Rule 23 Forecloses Axon's Authorization Argument.

Even if the local laws Axon proffers could be construed in the manner it suggests—which, as demonstrated below, they cannot—Rule 23 preempts local authorization laws in federal class actions such as this one (to the extent authorization laws apply at all). As the Supreme Court recognized in *Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, Rule 23 is "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," and thus "if the prescribed preconditions [of Rule 23] are satisfied, a class action may be maintained." 559 U.S. 393, 398-400 (2010) (cleaned up). Critically, Rule 23 makes no distinction between the types of persons—individuals, associations, public entities, or private entities—who may pursue their claims as class actions or be class members so long as plaintiffs meet the requirements of Rule 23.

It is black-letter law that the Federal Rules of Civil Procedure supersede state law when federal claims are asserted in federal court.[9] Fed. R. Civ. P. 1 ("These rules

---

[8] As explained *infra* Section II.A, for similar reasons, Axon's "authorization" argument should also be rejected to the extent it is directed toward the inclusion of state and federal entities in the proposed class.

[9] Were it otherwise, local governments would be empowered to enact laws barring or otherwise inhibiting injured parties from pursuing recovery for federal

govern the procedure in all civil actions and proceedings in the United States district courts . . . ."); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 2012 WL 6622120, at *6 (D.N.J. Dec. 19, 2012) ("[A] federal court addressing a federal law that serves an important federal interest would be remiss were it to hold that a plaintiff's claim must be dismissed because of a state law.").[10]

Accordingly, "state-law limitations [on class certification] have no application in [a] federal-question case in federal court," where "[f]ederal law only applies." *Landsman & Funk*, 2012 WL 6622120, at *9; Wright & Miller, *supra*, § 1758 ("Federal and not local standards also will determine the various procedural elements of the class action, such as the adequacy of representation and the manner in which the court administers the action."). As such, state laws, like the ones Axon cites, have no application at all in adjudicating Plaintiffs' claims under federal antitrust law in federal district court.

---

claims in federal court. One could hardly imagine, for instance, the City of Trenton being permitted to enact a law barring Trenton residents from bringing federal antitrust price-fixing claims.

[10] *See also Mediterranean Villas Condo. Ass'n v. Moors Master Maint. Ass'n*, 2012 WL 882508, at *3 n.3 (S.D. Fla. Mar. 14, 2012) ("[Plaintiff] has brought this action pursuant to 28 U.S.C. § 1331. Therefore, the Federal Rules of Civil Procedure apply."); *In re Centerstone Diamonds, Inc.*, 2014 WL 1330186, at *4 (Bankr. C.D. Cal. Apr. 2, 2014) (state-law requirements for suit "do[] not apply to federal question claims in federal court because such application would frustrate substantive federal rights").

Axon argues in vain that local laws governing states and LGEs bar these entities from participating in class actions—where, as here, the entities assert federal claims in federal court—but Axon's argument has repeatedly been rejected. *See Iowa v. Union Asphalt & Roadoils, Inc.*, 281 F. Supp. 391, 402 (S.D. Iowa 1968), *aff'd*, 409 F.2d 1239 (8th Cir. 1969), *and aff'd sub nom. Standard Oil Co. v. Iowa*, 408 F.2d 1171 (8th Cir. 1969) (rejecting argument that Attorney General of Iowa lacked authorization under state law to assert federal antitrust claims in federal court on behalf of state subdivisions, and holding "[i]f the prerequisites to a class action are present in this suit, the Court will not consider the question of formal authorization under Iowa law," because the "right to be represented here is established by the Federal Rules of Civil Procedure").[11] The result should be the same here: Rule 23 is the only valid source of the requirements for class certification, and the Court should not go further.

Even federal courts sitting in diversity—where arguably the state or local government's interest in asserting its law is stronger than in a federal question case like the one here—have rejected similar arguments as barred by Rule 23. When a

---

[11] See also *Minnesota v. U.S. Steel Corp.*, 44 F.R.D. 559, 568 (D. Minn. 1968) (rejecting similar argument with respect to federal antitrust claims asserted in federal court and holding "[s]ince Rule 23 does not look to state law, state law is irrelevant in making a Rule 23 determination"); *Bd. of Cnty. Comm'rs v. Wilshire Oil Co.*, 1973 WL 797, at *4 (W.D. Okla. 1973) (same).

Federal Rule of Civil Procedure conflicts with a state or local law in a diversity case, *Shady Grove* dictates that Rule 23 governs when "Rule 23 answers the question in dispute," so long as Rule 23 does not "abridge, enlarge, or modify any substantive right." *Marcy v. Select Med. Corp.*, 2023 WL 8542684, *1 (M.D. Pa. Dec. 6, 2023) (first quoting *Shady Grove*, 559 U.S. at 398, then quoting *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d Cir. 2012)). Here, Rule 23 "answers the question" of what conditions must be met before a class is certified. *See Shady Grove*, 559 U.S. at 399-400 ("[I]f the prescribed preconditions [of Rule 23] are satisfied a class action may be maintained . . . ." (emphasis removed (internal quotation marks omitted)). State and local laws that (supposedly) restrict LGEs' participation in federal class actions exceed these requirements and thus are incompatible with Rule 23, which "is entirely silent on the matter of requiring consent and/or input from local entities in class actions." *Montgomery County ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 210 n.3 (E.D. Pa. 2014); *see also Marcy*, 2023 WL 8542684, at *1 (state law requiring that absent class members consent in writing to participate in class action "directly conflicts" with Rule 23).

The court's decision in *Montgomery County* is directly on point. There, defendants cited local authorization laws "which require[d] . . . appointment of counsel only by" certain local bodies to argue that the named plaintiff did not have authority to represent a proposed class of LGEs. *Id.* at 210 n.3. The court squarely

10

rejected defendants' argument, concluding that Rule 23 governs class actions in federal court. *Id*. Because Rule 23 "is entirely silent on the matter of requiring consent and/or input from local entities in class actions," the question of whether plaintiffs obtained authorization from various LGEs was "irrelevant." *Id*.

Nor do the local laws that Axon cites contain "any substantive right" that Rule 23 would "abridge, enlarge, or modify." Even if Axon is correct that these laws require local entities to obtain authorization before participating in class actions as absent class members, at best, they would regulate the manner in which such entities participate in class actions. The Third Circuit has held that state laws that purport to "regulat[e] . . . class relief . . . [are] procedural" and are thus displaced by the Federal Rule that regulates class relief: Rule 23. *Knepper*, 675 F.3d at 265 (rejecting defendant's argument that plaintiff was required to obtain written authorization of absent class members because Rule 23 governs federal class actions and *Shady Grove* "leaves no room for the arguments advanced by" the defendant); *see also Marcy*, 2023 WL 8542684, at *1 ("Rule 23 governs plaintiff's class-action claim" because state "statute merely provides a 'procedural vehicle' for effectuating joinder and not a substantive right").

Here, Plaintiffs have filed a proposed class action in federal court asserting federal claims. Rule 23 therefore governs, and the state authorization statutes cited by Axon are "irrelevant."

B.    Axon Lacks Standing to Assert the Rights of LGEs.

In any event, Axon lacks standing to assert the rights of LGEs. "[I]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991) (quoting *Powers v. Ohio*, 499 U.S. 400 (1991)).

> Th[is] rule serves at least two judicial purposes. First, [it] fosters judicial restraint: courts faced with unsettled questions avoid pronouncements that are perhaps unnecessary and undesirable because the rightholders do not wish to assert their rights. . . . Second, [it] assures concrete, sharp presentation of the issues and enables courts to avoid ruling on abstract grievances. Generally, the third party will be the best advocate of its own position, and the plaintiff may place a slightly different, self-interested 'spin' on its presentation.

*Id.* Relevant to a court's third-party standing inquiry is "the extent of potential conflicts of interests between the [asserting party] and the third party whose rights are asserted," *id.* at 750, and "the ability of the third party to advance its own rights," *id.* at 749; *Singleton v. Wulff*, 428 U.S. 106, 114-15 (1976); *see also, e.g.*, *McGowan v. Maryland*, 366 U.S. 420, 429 (1961) (employees of the department store could not raise the Free Exercise rights of third-party consumers); *United States v. Mun. Bond & Collection Servs., Inc.*, 810 F.2d 46 (3rd Cir. 1987) (employer lacked standing to assert the constitutional rights of its employee).

These considerations all counsel in favor of rejecting Axon's gambit to assert the rights of LGEs here. The "self-interested spin" of which *Amato* warns is evident

in Axon's misreading of various City Charters, which as explained below, do not prohibit LGEs from serving as absent plaintiff class members. Here, absent LGE class members' interests are not served by denying them the ability to choose whether they can participate in this proposed class action. The only interests served by this motion are Defendants', which are clearly antagonistic to those of putative class members. As the Supreme Court observed, "it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not." *Singleton*, 428 U.S. at 113-14. The Court should therefore reject Axon's attempt to raise "abstract grievances" and usurp the rights of absent class member LGEs, who are "better equipped to assess their rights." *Amato*, 952 F.2d at 748; *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 535 (M.D. Tenn. 2010). Likewise, absent class members have ample ability to assert their own rights by choosing to opt out of the class. *See infra* at I.D.

C.    <u>Local Laws Do Not Prohibit LGEs from Serving as Absent Class Members.</u>

Even if Rule 23 did not foreclose Axon's argument and even if Axon had standing to invoke LGEs' rights here, Axon has not identified a single local law prohibiting an LGE from being an absent class member. *See Anello Fence, LLC v. VCA Sons, Inc.*, 2016 WL 354746, at *7 (D.N.J. Jan. 27, 2016) (movants bear a "high

burden on a motion to strike"). In fact, none of Axon's eight cited City Charters addresses class actions at all.

Notably, courts have soundly rejected Axon's precise "conten[tion] that state and local agencies, such as police departments, may not be represented as part of a class action." *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007) ("The authorities cited by the defendants do not mean that state [police departments] cannot be part of a class in this case." (emphasis removed)).

As with the defendants in *Southern States*, Axon invokes a handful of local laws purportedly entrusting "the authority to initiate civil proceedings . . . with the City Attorney—not private plaintiffs' counsel." Mot. at 18. But absent class members do not "initiate civil proceedings," nor do they have a traditional attorney-client relationship with Class Counsel. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 313 (3d Cir. 2005) ("[C]ourts have recognized that class counsel do not possess a traditional attorney-client relationship with absent class members."). Class actions are representative litigation in which "absent class members are not expected to do anything." 1 William Rubenstein et al., *Newberg on Class Actions* § 9:1 (5th ed. 2018); *see also, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809-10 (1985) (absent class members do not "need not hire counsel or appear"; instead, "[t]he court and named plaintiffs protect [their] interests"). At most, class counsel has a fiduciary

14

relationship with absent class members after the class is certified. *See In re Cmty. Bank of N. Va.*, 418 F.3d at 313. Ultimately, however, it is enough that LGEs "sit back and do nothing, secure in the knowledge that their interests are adequately represented." Rubenstein et al., *supra*, § 9:1. Thus, any City Charter's position on private counsel is no obstacle to LGEs' participation as absent class members in the proposed class.

Furthermore, even if these City Charters were relevant (they are not), Axon provides no case law interpreting them and conveniently ignores contrary state appellate authority. *See, e.g.*, *Gares v. Willingboro Township*, 90 F.3d 720, 725 (3d Cir. 1996) ("[W]e are to apply state law as interpreted by the state's highest court . . . ."); *Pac. Gas & Elec. Co. v. County of Stanislaus*, 947 P.2d 291, 300 (Cal. 1997) (holding that California LGEs have both the capacity and authority to bring class actions in federal court on behalf of themselves and other counties similarly situated); *Entex, a Div. of Noram Energy Corp. v. City of Pearland*, 990 S.W.2d 904, 911-13 (Tex. Ct. App. 1999), *abrogated on other grounds*, *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349 (Tex. Ct. App. 2003) ("[T]he governing body of a municipality may choose the procedure by which it litigates issues involving municipal ordinances, including participation in a class action suit."); *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex. Ct. App. 1998)

(affirming certification of a class of LGEs); *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 752 (Tex. 2003) (same).[12]

Not only does Axon utterly ignore this authority, but it asks the Court to construe each charter to deprive LGEs of the option of ever being an absent class member. Axon's self-serving interpretation of these local laws should be rejected.

> D.    The Rights of Putative LGE Class Members Are Protected by Their Ability to Opt Out Following Class Certification.

Following certification of the class, LGEs, like any other class members, will be afforded an opportunity to determine whether to participate as absent class members or opt out. *See* Fed. R. Civ. P. 23(c)(2)(B)(v). As the court held in *Southern States* in rejecting the identical argument Axon raises here:

> [T]he Court is persuaded by the cases cited by the plaintiffs which support their argument that this Court has certified state agencies as part of a class action so long as they are afforded the opportunity to opt out of the class. *It appears, therefore, that police departments may be certified as part of the class so long as they are afforded the opportunity to opt out of the class.*

241 F.R.D. at 93 (internal citations omitted) (emphasis added). Similarly, in *County of Monroe*, the court certified a class of Florida counties, reasoning that the "county

---

[12] *See also, e.g., City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276 (Mo. Ct. App. 2016) (rejecting appeal of certification of a settlement class in which the three named city plaintiffs represented all municipalities in the State of Missouri); *Commonwealth v. Reichl*, 2019 WL 2488678, at *1 (Va. Cir. Ct. Mar. 22, 2019) ("All of the Virginia localities are putative members of the class.").

governments[] will be better equipped to assess their rights and to evaluate the consequences of opting out than the lay individuals who comprise most classes." 265 F.R.D. at 672 n.15.

And, in *City of Goodlettsville*, the court granted plaintiff's motion to certify a class of "all Tennessee municipalities and counties," finding that if the municipalities or counties "nevertheless wish to litigate their cases individually, they may simply opt out of the class." 267 F.R.D. at 527, 535. *See also, e.g.*, *Cent. Power & Light Co.*, 962 S.W.2d at 613 (ruling that each local government will "know from its charter, and other pertinent laws, what actions are necessary for the city to stay in or opt-out of this particular litigation"); *City of San Benito*, 109 S.W.3d at 752 (rejecting arguments to strike a class action by Texas cities on behalf of eighty other Texas cities, in part, because "cities could authorize their attorneys to opt out of [class action] litigation").

The same is true here. If and when the class is certified, LGEs will have an opportunity to remain in the class or opt out.[13]

E.   <u>Striking LGEs from the Proposed Class Runs Contrary to Decades of Precedent as Well as the Policy Considerations Underlying Rule 23.</u>

---

[13] Because the proposed class is comprised entirely of direct purchasers, each LGE will receive direct notice of its right to opt out or remain in the class. *See infra* Section II.B.2.

Given the discussion above, it is unsurprising that courts in the Third Circuit routinely certify classes consisting of government entities (including local governments). *See, e.g.*, *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 816 (3d Cir. 1982) ("In addition to certifying a class of private plaintiffs, the court certified each minority state and its respective government entities as a separate plaintiff class . . . ."); *Phila. Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 464 (E.D. Pa. 1968) (certifying class that included "all cities in the United States" and "all municipal governments" that purchased from defendants); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2015 WL 12791433, at *2 (E.D. Pa. Jan. 28, 2015) (certifying settlement class that included "government funded employee benefit

plans"). [14] Federal courts outside this Circuit are in accord. [15] In contrast, Axon does not cite a single case to support its argument that LGEs should be struck from the proposed class. [16]

---

[14] *See also, e.g.*, *City of Philadelphia v. Am. Oil Co.*, 53 F.R.D. 45, 67 (D.N.J. 1971) ("[I]t is proper to recognize as a class all government units within a larger governmental body and have that class represented by one or more governmental units within the class."); *In re Remicade Antitrust Litig.*, No. 17-cv-4326 (E.D. Pa. Mar 15, 2023), ECF No. 227 (certifying settlement class that included "cities, towns or municipalities with self-funded prescription drug plans"); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *7 (E.D. Pa. Apr. 22, 2005) (final approval of class settlement that included "a governmental entity . . . to the extent it makes prescription drug purchases as part of a health benefit plan for its employees"); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 294-95 (D. Del. 2003) (certifying class that included local municipal pension funds); *Balon v. Agria Corp.*, No. 16-cv-8376 (D.N.J. June 30, 2017), ECF No. 25, at 9 (class settlement stipulation that specifically included "any political subdivision or agency thereof"); *id.*, ECF No. 40 (court approval of settlement); *In re Merck & Co.*, No. 08-cv-2177 (D.N.J. Sept. 25, 2012), ECF No. 251 (certifying class that included police department and city retirement fund as named plaintiffs and "all persons and entities" as absent plaintiffs, with no exclusion for governments); *In re Atl. Fin. Fed. Sec. Litig.*, 1990 WL 188927, at *7 (E.D. Pa. Nov. 28, 1990) (certifying class that included "government[s] and any political subdivision thereof").

[15] *See, e.g.*, *S. States*, 241 F.R.D. at 93 (certifying class of local and state police departments because "this Court has certified state agencies as part of a class action so long as they are afforded the opportunity to opt out of the class"); *In re Lupron Mktg. & Sales Pracs. Litig.*, 228 F.R.D. 75, 77 n.3 (D. Mass. 2005) (certifying class that included "the United States government . . . and all other government entities' claims"); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 266 (D. Mass. 2011) (certifying class of "[a]ll non-federal and non-state governmental entities in the United States"); *Comm'rs of Pub. Works v. Costco Wholesale Corp.*, 2024 WL 1004697, at *6 (D.S.C. Mar. 8, 2024) (certifying class that included municipalities); *City of Goodlettsville*, 267 F.R.D. at 527 (certifying a class of "all Tennessee municipalities and counties that impose hotel occupancy taxes"); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671

Here, Axon does not and cannot dispute that many LGEs in Plaintiffs' proposed class are small entities that could not afford to pursue this litigation on their own. Excluding them from the class would therefore effectively prevent them from pursuing recovery for the harm resulting from Axon's unlawful conduct.

As the court in *City of San Antonio* astutely observed in certifying a class of Texas cities:

---

(S.D. Fla. 2010) (certifying class of 59 Florida counties); *In re Dynamic Random Access Memory* ("*DRAM*") *Antitrust Litig.*, 2014 WL 12879520, at *2 (N.D. Cal. June 27, 2014) (certifying indirect government purchaser settlement class consisting of "[a]ll state government entities, all political subdivisions and all public colleges and universities"); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 577 (S.D.N.Y. 2021) (certifying a class that included "cities, towns or municipalities with self-funded prescription drug plans"); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 299 (D. Mass. 2021) (same); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 5778756, at *2 (E.D. Va. Aug. 14, 2020), *report and recommendation adopted*, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021) (same).

[16] Although the court in *Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208 (S.D. W. Va. 1997) (discussed *infra* Section II.B) ultimately excluded state entities from the settlement class, it did not exclude LGEs. *Walker v. Liggett Grp., Inc.*, 1997 WL 33635626 (S.D. W. Va. May 15, 1997). *Lithium Ion Batteries Antitrust Litigation* did not address the question of whether local statutes bar LGEs from serving as absent class members and is therefore not persuasive authority. 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014). Ultimately, Axon cites only one case, *In re Automotive Parts Antitrust Litigation* ("*Auto Parts*"), that struck LGEs from a class based on local authorization statutes. 2015 WL 14047405 (E.D. Mich. Apr. 30, 2015). Curiously, Axon does not cite to *Auto Parts* for that proposition, perhaps because the case, which contains little if any reasoning for its holding, has never been cited in the nearly 10 years since it was decided. *Auto Parts* was wrongly decided for the reasons discussed above and should not be followed.

Common sense dictates that many of the cities would have a negative value lawsuit if they pursued this matter on an individual basis. As the result, there does not appear to be an interest in individually controlling the prosecution or defense of separate actions. Many of the putative class members are small municipalities.... In sum, forcing the municipalities to litigate these issues individually would be a waste of judicial resources and a waste of the parties' resources.

*City of San Antonio v. Hotels.com*, 2008 WL 2486043, at \*13, 15 (W.D. Tex. May 27, 2008); *see also, e.g.*, *City of Goodlettsville*, 267 F.R.D. 523 at 535 n.4 (citing *City of San Antonio* and finding same); *Sw. Bell v. City of Port Arthur*, 1993 WL 13013186, at \*4 (Tex. Ct. App. June 3, 1993) (affirming class certification, in part because "[t]he trial court had evidence before it that the class contains many small cities that lack significant financial resources to litigate the matter on their own"). Axon's argument, which runs contrary to a wealth of Third Circuit precedent and Rule 23's policy considerations, should be rejected.

## II. STATE AND FEDERAL ENTITIES ARE APPROPRIATELY INCLUDED IN THE PROPOSED CLASS

### A.    State and Federal Statutes Do Not Bar State and Federal Entities from Serving as Absent Class Members.

Axon's contention that state and federal laws prevent state and federal entities, respectively, from serving as absent class members fails for many of the same reasons as discussed above. *See* Mot. at 14-17.

Axon argues "[v]irtually every" state entity is prohibited from serving as an absent class member by statutes "granting its chief governmental attorney—*i.e.*, the

21

Attorney General—exclusive authority to represent the state's interests in litigation." Mot. at 15 (emphasis removed). It also argues that 28 U.S.C. §§ 516 and 519 prevent federal agencies from serving as absent class members. Mot. at 14. These arguments fail for at least four reasons.

*First*, for similar reasons discussed in Section I.A, *supra*, Axon's argument that state and federal authorization statutes prohibit these entities from serving as absent class members must be rejected. With respect to state authorization statutes, Rule 23 preempts them. And with respect to federal statutes, the Supreme Court and Third Circuit have unequivocally held that courts should not interpret a federal statute to conflict with Rule 23 without "the necessary clear expression of congressional intent to exempt actions brought under that statute from the operation of the Federal Rules of Civil Procedure." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (rejecting attempt to decertify class based on judicial review provision of the Social Security Act); *Knepper v. Rite Aid Corp.*, 675 F.3d at 265 (concluding that authorization requirement contained in federal statute did not bar Rule 23 opt-out action). Axon's cited statutes do not evince any such congressional intent.

*Second*, for the same reasons discussed *supra* Section I.B, Axon does not have standing to raise this authorization argument on behalf of state and federal entities.

*Third*, similar to the discussion *supra* Section I.C, even if they were not preempted, *none* of the six state statutes Axon cites—nor the federal statutes—

prevents class counsel from representing state and federal entities. Axon provides no case law interpreting any of these statutes, nor could it: these statutes simply require state and federal entities' *legal representation* to be reserved with the state or federal Attorney General.[17] *See supra* Section I.C. But absent class members do not have traditional client-lawyer relationships with class counsel, so these statutes are inapplicable to state and federal entities' ability to serve as absent class members. *See supra* Section I.C.

*Fourth*, Rule 23(b)(3) opt-out rights adequately protect the interests of state and federal entities and provide them with the necessary choice of electing whether to be included in a class. *See supra* Section I.D.

Axon's citation to two unpublished out-of-Circuit cases reflecting little-to-no analysis does not merit a different result. *See, e.g.*, *United States v. Kluger*, 722 F.3d 549, 559 n.15 (3d Cir. 2013) ("[W]e surely are not bound by unpublished district court opinions from courts in other circuits."). *Auto Parts* has never been cited in the nearly 10 years since it was issued and was wrongly decided for the reasons

---

[17] Axon's citation to *Sobel v. Hertz Corp.* does not support its argument because the *Sobel* court did not address the issue. 2011 WL 2559565, at *16 (D. Nev. June 27, 2011). Rather, it simply noted the position of the United States. *Id.* Notwithstanding that position, courts frequently certify classes including federal entities as absent class members. *See, e.g.*, *Lupron*, 228 F.R.D. at 77 n.3; *Nichols*, 2005 WL 950616, at *7.

discussed herein.[18] Axon's citation to *Walker*, another out-of-Circuit opinion, is equally unavailing. First, unlike here, that case was decided following extensive discovery and briefing on plaintiffs' motion for class certification. *Walker*, 982 F. Supp. at 1209. Second, the court provided little basis for its holding, neglecting to explain if it was relying on Article IV's "full faith and credit" clause, sovereign immunity under the Eleventh Amendment, or any other doctrine.

      B.    <u>Sovereign Immunity Does Not Bar State and Federal Entities from Serving as Absent Class Members.</u>

Courts throughout this Circuit and elsewhere have repeatedly certified classes consisting of state and federal entities. *See Fine Paper*, 685 F.2d at 816; *Mylan Pharms.*, 2015 WL 12791433, at *2; *Nichols*, 2005 WL 950616, at *7; *S. States*, 241 F.R.D. at 93; *Lupron*, 228 F.R.D. at 77 n.3; *DRAM*, 2014 WL 12879520, at *2. Disregarding this precedent, Axon contends that sovereign immunity under the Eleventh Amendment bars state and federal entities from serving as absent class members and the Court should strike these entities from the class despite the fact that: (i) they have not received notice of the lawsuit and their claims; (ii) they have not asserted immunity; and (iii) excluding them at this juncture would effectively deny them of their constitutionally protected right to waive sovereign immunity. Axon's argument should be rejected for the following reasons.

---

[18] *See supra* note 16.

1.     *Axon Lacks Standing to Assert the Eleventh Amendment Rights of Its Adversaries.*

State and federal entities have a constitutional entitlement to waive sovereign immunity under the Eleventh Amendment. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). As such, a court should not address a claim of sovereign immunity unless raised by the government entity *itself*.[19] *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("Nor need a court raise the defect [of sovereign immunity] on its own. Unless the State raises the matter, a court can ignore it."); *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002) (citing *Christy* and holding that "the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state"). This approach is also consistent with the general rule against allowing litigants to assert the rights of third parties, particularly where their interests are antagonistic to those third parties and the third parties can assert their own rights. *See supra* Section I.B (citing *Amato*, 952 F.2d 742, 748-50).

---

[19]     Indeed, because state and federal entities have a protected entitlement to waive sovereign immunity, the invocation of sovereign immunity is considered an affirmative defense that a court should not raise *sua sponte*. *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) ("Eleventh Amendment immunity should be treated as an affirmative defense, [which] must be proved by the party that asserts it and would benefit from its acceptance." (cleaned up)).

Axon cites no case law from the Third Circuit in support of its brazen attempt to assert sovereign immunity on behalf of state and federal absent class members. Indeed, Plaintiffs are not aware of a single case in the Third Circuit where a private litigant *even attempted* to assert sovereign immunity on behalf of a state or federal entity.[20] Every Court of Appeals that has analyzed this issue has concluded that sovereign immunity should be considered only when asserted *by a state or federal entity* itself.

In *Bragg v. West Virginia Coal Association*, for instance, the Fourth Circuit considered a group of coal mining companies' Eleventh Amendment challenge to a consent decree approving a settlement between a state official and the plaintiffs. 248 F.3d 275, 298 (4th Cir. 2001). The coal companies—but not the state official—

---

[20] The only case Plaintiffs are aware of from any circuit that allowed a private entity to assert sovereign immunity on behalf of state and federal entities was *Auto Parts*, an unreported, out-of-Circuit case that misread and misquoted *Schacht* and failed to address its own circuit's controlling law mandating that "the entity asserting Eleventh Amendment immunity has the burden to show . . . that it is an arm of the state." *Compare Auto Parts*, 2015 WL 14047405, at *2, *with Gragg*, 289 F.3d at 963.

The other cases Axon cites are inapposite because either the court declined to address the private defendant's sovereign immunity argument or the state itself asserted sovereign immunity. *See Flonase*, 879 F.3d at 63 (state asserted sovereign immunity); *Walker*, 982 F. Supp. at 1210 (same); *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 504 (8th Cir. 1995) (same)*; Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1320 (Fed. Cir. 2020) (same); *McKesson*, 767 F. Supp. 2d at 271 (deciding motion on superiority grounds and expressly declining to address sovereign immunity arguments).

objected to the consent decree, arguing that it should be voided because the suit itself was barred under sovereign immunity. *Id.* at 300. Citing *Schacht*, the Fourth Circuit nevertheless affirmed the consent decree, stating:

> But the coal companies may not assert a defense on behalf of the [state agency] Director that the Director chooses not to assert. Sovereign immunity, unlike the subject matter jurisdiction requirement, may be waived by the State . . . . *Because sovereign immunity reflects the federal courts' respect for the States, we need not undermine that respect by forcing a State to assert immunity when it chooses not to do so.*

*Id.* (emphasis added); *see also Tritchler v. County of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004) (rejecting private plaintiff's "brazen" attempt to assert sovereign immunity on behalf of a defendant state entity and holding that plaintiff "does not have standing to raise the immunity defense on behalf of the Superior Court in the first place").

Similarly, in *Frazier v. Pioneer Americas LLC*, the Fifth Circuit rejected a private entity's effort to raise a sovereign immunity defense on behalf of the state entity, finding that "[a] federal court may ignore sovereign immunity until the state asserts it." 455 F.3d 542, 547 (5th Cir. 2006).

27

Here, Axon seeks to invoke a sovereign immunity "defense" on behalf of absent state and federal class members without their knowledge or consent.[21] If Axon's argument were accepted, these entities would effectively be denied their right to waive sovereign immunity. *See Coll. Sav. Bank*, 527 U.S. at 675 ("[A] State's sovereign immunity is a personal privilege which it may waive at pleasure." (internal quotation marks omitted)).

The right of state and federal entities to exercise waiver is particularly acute here where these entities are *not defendants*, but instead absent class members. Waiving sovereign immunity—to the extent the doctrine is implicated at all—may be the only means by which these entities can recover for injuries suffered as a result of Defendants' unlawful conduct. *See Bragg*, 248 F.3d at 300 (private litigants may not assert sovereign immunity on behalf of state agencies because doing so "forc[es] a State to assert immunity when it chooses not to do so").

For these reasons and those discussed *supra* Section I.B, Axon does not have standing to assert the affirmative defense of sovereign immunity on behalf of absent state and federal class members, and the Court should reject its argument on this basis alone.

---

[21] Indeed, Axon insists that these entities should be struck from the proposed class prior to discovery and without the benefit of notice or an opportunity to decide whether to participate in the class. Mot. at 8.

2. *State and Federal Entities May Appropriately Waive Sovereign Immunity Through Rule 23's Opt-Out Procedure.*

If accepted, Axon's sovereign immunity argument would completely bar state and federal entities from participating as absent class members. Worse still, Axon would deny these entities their constitutionally protected privilege to waive sovereign immunity without the benefit of receiving notice of their claims and an opportunity to opt out of the class. Axon's argument is unsupported in the law.

The Supreme Court's decision in *Shutts* is instructive. In that case, a class action defendant argued that a constitutional limitation protecting defendants—that courts cannot exercise personal jurisdiction unless the defendant has sufficient contacts with the forum state or has affirmatively consented to jurisdiction—should apply to absent plaintiff class members. 472 U.S. at 804-05. The Court disagreed and expressly "reject[ed]" the "contention that the Due Process Clause . . . requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out.'" *Id*. at 812. The Court held that "such a contention . . . ignores the differences between class-action plaintiffs, on the one hand, and defendants in nonclass civil suits on the other." *Id*. Therefore, an opt-out procedure "where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Id*. at 812.

*Shutts*'s conclusion that absent class members' opt-out rights were sufficient to satisfy due process was animated by the Court's observation that:

> Requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution.

*Shutts,* 472 U.S. at 812-13 (citation omitted).

The principles articulated in *Shutts* are equally applicable to state and federal absent class members. Particularly in antitrust cases where litigation costs frequently amount to millions of dollars, state and federal entities often have negative value claims, rendering it uneconomical to pursue these cases on an individual basis. The opt-out procedure provides state and federal entities with a choice. They can waive sovereign immunity and pursue their claims on a class-wide basis, or they can opt out and pursue their case individually or not at all.

Axon seeks to eliminate that choice and prevent these entities from ever participating as absent class members. Denying state and federal entities the ability to participate in an opt-out class action does nothing to preserve their dignity interests, but instead restricts their rights and options and serves only to bar these entities from what often is their only pathway to recover for their injuries. *See*, *e.g.*,

30

*S. States*, 241 F.R.D. at 93 ("[T]his Court has certified state agencies as part of a class action so long as they are afforded the opportunity to opt out of the class.").

When state and federal entities receive "fully descriptive notice" as described in *Shutts* and choose not to opt out, this is sufficient to waive sovereign immunity. *See id.* at 812. It is well settled that a state or federal entity need not affirmatively exercise its waiver, and that such waiver may be implied by litigation conduct. *See, e.g.*, *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002); *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (state entity waived sovereign immunity by removing suit from state to federal court).[22] Declining to opt out after adequate notice has been provided, just like declining to raise sovereign immunity before engaging in litigation, is simply a form of litigation conduct that waives sovereign immunity.

Axon's reliance on *Flonase*, Mot. at 10, is misplaced. In *Flonase*, the court simply held that a state's failure to opt out after receiving *CAFA* notice—as opposed

---

[22] *See also, e.g.*, *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012) (state entity "waived its sovereign immunity defense" because it "never once raised the issue"); *Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (state waived sovereign immunity because it engaged in discovery and then "invited the district court to enter judgment on the merits" without asserting defense); *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 759 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999) (sovereign immunity waived where state entity "chose to defend on the merits and proceed to trial"); *In re Charter Oak Assocs.*, 361 F.3d 760, 768 (2d Cir. 2004) (state entity waived sovereign immunity as to counterclaims when it submitted a proof of claim in bankruptcy proceedings).

to class notice—was insufficient to waive sovereign immunity. 879 F.3d at 69. As the district court explained, "I need not—and do not—address the broader question of whether the Eleventh Amendment ever permits a State to be bound as an absent class member in a Rule 23(b)(3) opt-out" because "the notice received by the State was insufficient" to determine whether it had exercised its right to waive sovereign immunity. *In re Flonase Antitrust Litig.*, 2015 WL 9273274 at *5 (E.D. Pa. Dec. 21, 2015). Indeed, the Third Circuit pointedly noted that Louisiana "did not receive the approved notice. Instead, it only received a Class Action Fairness Act ('CAFA') Notice," which was far different than class action notice. *Flonase*, 879 F.3d at 64.[23]

*Flonase* is also distinguishable because it was an indirect purchaser case where it was not possible to send direct notice to each member of the settlement class. *Id.* Here, in contrast, Plaintiffs' proposed class definition consists of direct purchasers of the Relevant Products, and the discovery Axon ultimately produces will enable class counsel to provide each proposed class member, including state and federal entities, with clear and descriptive class notice directly.

---

[23] As the district court in *Flonase* observed, CAFA notice merely alerts the state that some of its citizens would be affected by a settlement. Unlike class notice, it does not inform the state that it is a member of the settlement class and will be bound by the settlement unless it exercises its right to opt out. *Flonase*, 2015 WL 9273274, at *6. Indeed, in *Flonase*, it was unclear whether the state entities in question had even purchased the product at issue. 879 F.3d at 64.

The remaining cases Axon cites fail to support its contention that opt-out rights do not protect state and federal entities' right to waive sovereign immunity where state and federal absent class members are provided with class notice. *See Auto Parts*, 2015 WL 14047405, at *1 (analyzing a proposed indirect purchaser class and failing to address the issue of whether opt outs waived sovereign immunity); *McKesson*, 767 F. Supp. 2d at 271 (expressly declining to address sovereign immunity argument); *Walker*, 982 F. Supp. at 1210 (S.D. W. Va. 1997) (finding that granting absent plaintiff States a "*limited opt-out option*" in a limited-fund case—as described by States that were pursuing their own litigation against the defendant[24]— was insufficient to constitute waiver of sovereign immunity).

3.    *Sovereign Immunity Is Inapplicable Where No Remedies Are Sought Against State and Federal Entities.*

It is well settled that absent class members are not parties to a litigation "before the class is certified." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (emphasis removed). Axon cites *Flonase* for the proposition that sovereign immunity bars state and federal entities from serving as absent class members. Mot. at 11. But this was not the Third Circuit's holding, and (even beyond the obvious

---

[24] *See* Brief of the State of Ohio in Opposition to Being Made an Involuntary Party to the Instant Class Action, the Preliminarily Approved Settlement, or any Injunctive Relief Issued Thereunder at 3, attached as Ex. A to the Declaration of Kellie Lerner in Support of Plaintiffs' Memorandum of Law in Opposition to Axon's Motion to Strike Class Allegations; *Walker*, 1997 WL 33635626.

distinction that in *Flonase* the state itself raised sovereign immunity, *see supra* note 20) the facts in *Flonase* are distinguishable, as Axon concedes, *see* Mot. at 11 (noting "different procedural posture"). In *Flonase*, the Third Circuit determined that Louisiana was akin to a defendant because in their motion for final approval, the plaintiffs "sought an equitable remedy against a State . . . enjoin[ing] [it] from bringing any of the released claims against [the defendant]." 879 F.3d at 66 (internal quotation marks removed); *see also id*. at 68 (distinguishing cases holding that sovereign immunity is limited to instances where states are formally named as defendants "because none of the private parties in [those] cases . . . sought legal or equitable remedies against the State" (emphasis removed)).

Here, in contrast, Plaintiffs have not sought any remedy against state or federal entities. Instead, they have merely filed a class action complaint with a class definition that may include certain state and federal entities as absent class members. Accordingly, sovereign immunity is not implicated here, and Axon's self-serving attempt to assert this affirmative defense on behalf of unnamed state and federal absent class members should be rejected.

Axon's reliance on *McKesson* is unavailing because there the court expressly declined to find that sovereign immunity applied. 767 F. Supp. 2d at 271. Though *McKesson* excluded state entities from the class definition, it did so at the class certification stage on Rule 23's superiority grounds rather than sovereign immunity

grounds, after the states had "shown a willingness to litigate this matter themselves in . . . related . . . multi-district litigation." *Id*. The court observed that it "could find no appellate case law addressing the question of whether states can be included in a class action" and chose not "to address this novel constitutional issue." *Id*.[25]

## III. AXON'S RULE 23 ARGUMENTS ARE INCORRECT AND PREMATURE

Axon claims that the proposed class should not be certified under Rule 23. Mot. at 19-24.

Axon's primary Rule 23 argument appears to be that Rule 23(b)(3)'s predominance requirement cannot be satisfied because of purported authorization and sovereign immunity issues. Mot. at 20-24. This argument is both premature and

---

[25] The other out-of-Circuit cases Axon cites are inapposite. Mot. at 10. Several of those cases involve involuntary joinder, which coerces the State into litigation in much the same way as a suit against a state would—and without an option to opt out. *See Thomas*, 50 F.3d at 505 ("Involuntary joinder will compel MDNR to act by forcing it to prosecute FAG at a time and place dictated by the federal courts."); *Gensetix*, 966 F.3d at 1323 (similar); *Havasupai Tribe v. Anasazi Water Co. LLC*, 321 F.R.D. 351, 355 (D. Ariz. 2017) (similar).

*Auto Parts* and *Walker*, discussed *supra* note 16, are out-of-Circuit opinions that courts have seldom cited. (*Auto Parts* is an unreported opinion that no court has ever cited, and *Walker* has been cited five times in 26 years.) Both apply a cursory analysis in reaching their conclusions. *Auto Parts*, 2015 WL 14047405, at *4; *Walker*, 982 F. Supp. at 1210. Moreover, in *Walker*, unlike here, the states themselves asserted their Eleventh Amendment sovereign immunity, and they did so not at the pleading stage, but instead after the district court had preliminarily granted certification of a settlement class. *Id*. at 1209.

incorrect. With respect to LGEs, sovereign immunity unequivocally does not apply, and to the extent any state or local government laws in fact "prohibit private plaintiffs' counsel from representing their interests in a class action" as Axon claims (Mot. at 21), which they do not, such laws are preempted by Rule 23. *Supra* Section I.A. And to the extent sovereign immunity applies at all to absent class members, predominance is not defeated because the opt-out procedures provided by Rule 23 can address state and federal entities' sovereign immunity. *Supra* Section II.B.2.[26] As a result, the parade of "individualized inquiries" hypothesized by Axon simply will not exist in this case.[27]

---

[26] As explained above, it is black-letter law that sovereign immunity "does not extend to counties and municipalities" among other "political subdivisions," *Deal v. Velez*, 244 F. Supp. 3d 435, 442 (D.N.J. 2017), meaning there would be no individualized inquiries about sovereign immunity for such entities. And Axon does not even identify a local government entity to which sovereign immunity might apply. Thus, it is clear that Plaintiffs may represent, at the very least, a putative class of LGEs—which means Axon's argument fails at this stage.

[27] Axon also suggests, without any evidence or citation to the CAC, that class counsel cannot satisfy the "adequacy" requirement of Rule 23. Mot. at 3. But Axon has offered no evidence in support of this argument—which contradicts the principle that "[f]ederal and not local standards also will determine the various procedural elements of the class action, such as the adequacy of representation," Wright & Miller, *supra*, § 1758—and Plaintiffs need not make a showing of adequacy until they move for class certification after discovery has been taken. *In re Allergan*, 537 F. Supp. 3d at 752 ("[The] better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery.").

In any event, class certification determinations at the pleading stage without the benefit of discovery are premature and Plaintiffs should be afforded the opportunity to conduct discovery to determine the identity and scope of the class. *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008) ("[Rule 23] does not require or encourage premature certification determinations." (internal quotation marks omitted)); *Luppino*, 2013 WL 6047556, at *3 ("[I]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing." (internal citation and quotation marks omitted)); *cf. In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017) (rejecting pre-certification motion to dismiss because "class discovery will unveil the various members of the currently unknown class," "even if the named plaintiffs' claims become moot"). At this stage, prior to discovery, information concerning the identity of class members is uniquely in the possession of Defendants. *Cf., e.g.*, *Landsman & Funk*, 640 F.3d at 93 (reversing the district court's dismissal of class action claims based on lack of consent when "there had been no motion for class certification and no discovery"); *6803 Blvd. E., LLC v. DIRECTV, Inc.*, 2012 WL 3133680, at *2 (D.N.J. July 31, 2012) (citing *Landsman* and declining to strike class allegations under rule 12(f) and 12(b)(6) on same basis).

In addition, Plaintiffs' proposed class includes non-government purchasers, as Axon concedes. CAC ¶ 134 (class defined to include "*all persons or entities* who have directly purchased any of the [Relevant Products] from Axon" (emphasis added)); *see also id*. ¶ 60 (alleging that civilians use CEWs). Indeed, Axon's own website confirms that CEWs are marketed and sold to individuals.[28] Thus, even if certain government entities were struck from the class definition as Axon urges, discovery would be required to determine whether a smaller class containing only the remaining class members would satisfy Rule 23.

## CONCLUSION

For the reasons discussed above, Axon's Motion to Strike Class Allegations should be denied.

---

[28] *See, e.g.*, *TASER Pulse*, TASER, https://taser.com/pages/all-devices (last visited Apr. 14, 2024) ("TASER Pulse . . . was built with *civilian* self-protection in mind." (emphasis added)). This Court may take judicial notice of Axon's own website. *See, e.g.*, *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509, 515 (E.D. Pa. 2018) (taking judicial notice of defendant's website).

April 15, 2024

Respectfully submitted,

*/s/ Michael D. Fitzgerald*
Michael D. Fitzgerald (NJ #004391985)
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
(202) 349-1482
mdfitz@briellelaw.com
***Interim Liaison Counsel for Plaintiffs and the Proposed Class***

Kellie Lerner
William V. Reiss (*pro hac vice*)
Jonathan Edelman (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
(212) 980-7400
klerner@robinskaplan.com
wreiss@robinskaplan.com
jedelman@robinskaplan.com

Heidi M. Silton (*pro hac vice*)
Jessica N. Servais (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
echang@locklaw.com

Sharon K. Robertson
Christopher J. Bateman (*pro hac vice*)
Jared A. Dummitt (*pro hac vice*)
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com
jdummitt@cohenmilstein.com

Daniel H. Silverman (*pro hac vice*)
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
769 Centre Street | Suite 207
Boston, MA 02130
(617) 858-1990
dsilverman@cohenmilstein.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*