## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE AXON VIEVU ANTITRUST LITIGATION | Case No. 3:23-cv-07182 (RK-RLS) |
|  | *Filed Electronically* |

---

## REPLY MEMORANDUM IN SUPPORT OF AXON'S
## MOTION TO STRIKE CLASS ALLEGATIONS

---

WALSH PIZZI O'REILLY FALANGA LLP
Liza M. Walsh
Katelyn O'Reilly
Eric S. Padilla
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100

AXON ENTERPRISE, INC.
Pamela B. Petersen (*pro hac vice*)
Gayathiri Shanmuganatha (*pro hac vice*)
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016

JONES DAY
Julia E. McEvoy (*pro hac vice*)
Aaron M. Healey (*pro hac vice*)
250 Vessey Street
New York, New York 10281
Tel: (212) 326-3939

*Attorneys for Defendant Axon Enterprise, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ......................................................................................................2

  I.    SOVEREIGN IMMUNITY BARS PLAINTIFFS' PROPOSED CLASS. ....2

    A.  Plaintiffs' "Standing" Argument is Meritless. .............................................3

    B.  Plaintiffs' "Wait and See" Approach Is Not A Viable Solution. ................5

      1.  Requiring A Sovereign To Act Violates The Eleventh Amendment. ......5

      2.  Failing to Opt Out May Not Waive Sovereign Immunity. .......................6

      3.  "Opt-In" Classes Are Prohibited Under Rule 23. ....................................8

  II.  PLAINTIFFS' REPRESENTATION IS PRECLUDED BY FEDERAL, STATE, AND LOCAL STATUTES, WHICH PRESENT INSURMOUNTABLE ROADBLOCKS TO CERTIFICATION..................................................................8

  III.  SIGNIFICANT AUTHORIZATION AND MANAGEABILITY ISSUES WILL PREDOMINATE A NATIONWIDE CLASS OF LOCAL GOVERNMENTAL ENTITIES.........................................................................10

  IV.  PLAINTIFFS' PREEMPTION ARGUMENT FAILS.................................13

CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackal v. Centennial Beauregard Cellular L.L.C.*,
700 F.3d 212 (5th Cir. 2012) ...................................................................8, 12, 15

*In re Automotive Parts Antitrust Litig.*,
2015 WL 14047405 (E.D. Mich. Apr. 30, 2015) .................................................3

*Bd. of Cnty. Comm'rs v. Wilshire Oil Co.*,
1973 WL 797 (W.D. Okla. 1973) ......................................................................11

*Montgomery County ex rel. Becker v. MERSCORP, Inc.*,
298 F.R.D. 202 (E.D. Pa. 2014).........................................................................11

*Bragg v. West Virginia Coal Ass'n*,
248 F.3d 275 (4th Cir. 2001) ...............................................................................4

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) ...........................................................................10

*Brown v. Hain Celestial Grp., Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012)................................................................11

*Burke v. Visa, Inc.*,
2021 WL 4712058 (D.D.C. Sept. 7, 2021).........................................................11

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .................................................................................9

*Cent. Power & Light Co. v. City of San Juan*,
962 S.W.2d 602 (Tex. Ct. App. 1998)................................................................11

*City of Goodlettsville v. Priceline.com, Inc.*,
267 F.R.D. 523 (M.D. Tenn. 2010) ....................................................................11

*City of O'Fallon v. CenturyLink, Inc.*,
491 S.W.3d 276 (Mo. Ct. App. 2016) ................................................................11

*City of San Antonio v. Hotels.com*,
  2008 WL 2486043 (W.D. Tex. May 27, 2008) ...................................................11

*City of San Benito v. Rio Grande Valley Gas Co.*,
  109 S.W.3d 750 (Tex. 2003) ................................................................11

*Cnty. of Dorchester, S.C. v. AT&T Corp.*,
  407 F. Supp. 3d 561 (D.S.C. 2019) ..............................................11, 12

*Commonwealth v. Reichl*,
  2019 WL 2488678 (Va. Cir. Ct. Mar. 22, 2019) ................................11

*County of Monroe v. Priceline.com, Inc.*,
  265 F.R.D. 659 (S.D. Fla. 2010)................................................11, 12

*Dallas Cnty., Tex. v. MERSCORP, Inc.*,
  2012 WL 6208385 (N.D. Tex. Dec. 12, 2012) .......................8, 13, 15

*Des Roches v. Cal. Physicians' Serv.*,
  320 F.R.D. 486 (N.D. Cal. 2017)...............................................11

*Entex, a Div. of Noram Energy Corp., v. City of Pearland*,
  990 S.W.2d 904 (Tex. Ct. App. 1999).........................................11

*Federal Maritime Com'n v. South Carolina State Ports Authority*,
  535 U.S. 743 (2002).......................................................................5

*In re Flonase Antitrust Litig.*,
  879 F.3d 61 (3d Cir. 2017) ...................................................2, 5, 6, 7

*Georgine v. Amchem Prods.*,
  83 F.3d 610 (3d Cir. 1996) ...........................................................9

*In re Infant Formula Antitrust Litig.*,
  1992 WL 503465 (N.D. Fla. Jan. 13, 1992) ................................11

*Iowa v. Union Asphalt & Roadoils, Inc.*,
  281 F. Supp. 391 (S.D. Iowa 1968) ............................................11

*Kern v. Siemens Corp.*,
  393 F.3d 120 (2d Cir. 2004) ..........................................................8

*In re McKesson Gov't Entities Average Wholesale Price Litig.*,
   767 F. Supp. 2d 263 (D. Mass. 2011) ...................................................................14

*Messner v Weingarten*,
   2023 WL 6806179 (D.N.J. Oct. 16, 2023) ..........................................................3

*In re OSB Antitrust Litig.*,
   2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) .......................................................10

*Pac. Gas & Elec. Co. v. County of Stanislaus*,
   947 P.2d 291 (Cal. 1997) ..................................................................................11

*In re Polypropylene Carpet Antitrust Litig.*,
   178 F.R.D. 603 (N.D. Ga. 1997) .......................................................................11

*Port Auth. Trans-Hudson Corp. v. Feeney*,
   495 U.S. 299 (1990)............................................................................................4

*In re Pork Antitrust Litig.*,
   665 F. Supp. 3d 967 (D. Minn. 2023)................................................................11

*Seminole Tribe of Fla v. Florida*,
   517 U.S. 44 (1996)......................................................................................2, 4, 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)............................................................1, 12, 13, 14, 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009).......................................................................10

*Sw. Bell v. City of Port Arthur*,
   1993 WL 13013186 (Tex. Ct. App. June 3, 1993) ...........................................11

*Thomas v. FAG Bearings Corp.*,
   50 F.3d 502 (8th Cir. 1995) ................................................................................4

*Tritchler v. County of Lake*,
   358 F.3d 1150 (9th Cir. 2004) ............................................................................4

*Village of Bedford Park v. Expedia, Inc.*,
   309 F.R.D. 442 (N.D. Ill. 2015).........................................................................10

*Walker v. Liggett Group, Inc.*,
 982 F. Supp. 1208 (S.D. W. Va. 1997) ............................................................ 6, 15

**Statutes**

28 U.S.C. § 516 ...................................................................................................... 14

**Rules**

Rule 23 ............................................................ 1, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15

# PRELIMINARY STATEMENT

Plaintiffs' Opposition to Axon's Motion to Strike strains to salvage a proposed class that, on its face, suffers from fatal legal deficiencies that render it incapable of being maintained under Rule 23. Plaintiffs' proposed nationwide class, which is predominately made up of thousands of federal, state, and local law enforcement agencies, is the first of its kind. Despite citing more than 30 cases to support the purported legitimacy of its proposed class, *none* involved a nationwide government class of the type plaintiffs are pursuing here. This is not surprising as there are significant barriers to such a class that plaintiffs cannot overcome. The sovereign immunity afforded to States under the Eleventh Amendment, together with federal and state statutory schemes, confirm that the class cannot proceed as pled. And notwithstanding plaintiffs' emphasis on *Shady Grove*, counsel acts *ultra vires* with respect to government entities that have not authorized any participation in this action consistent with such statutes.

Simply stated, plaintiffs' proposed class definition runs afoul of sovereign immunity, state and federal statutes, local laws, and Rule 23 itself. Plaintiffs have an obligation to plead a cognizable class *now*. Yet, plaintiffs' Opposition urges an unsupportable "wait and see" approach to determine whether these infirmities may one day be cured. Because nothing in the Opposition saves plaintiffs' class allegations, Axon's motion to strike should be granted in its entirety.

# ARGUMENT

## I.  SOVEREIGN IMMUNITY BARS PLAINTIFFS' PROPOSED CLASS.

As Axon's motion explained, sovereign immunity precludes a federal court from subjecting states or their subunits to the "coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Fla v. Florida*, 517 U.S. 44, 58 (1996). Sovereign immunity is not just a shield to liability—it prevents sovereign entities from being conscripted into litigation in any role, including as plaintiffs. Mot. 10. Accordingly, every court to consider the question has held that a class containing sovereign entities cannot be certified, and the Third Circuit has held that district courts lack jurisdiction over such entities, even as purported absent class members, unless and until they have affirmatively waived sovereign immunity. Mot. 10–11; *In re Flonase Antitrust Litig.*, 879 F.3d 61, 67 (3d Cir. 2017).

Plaintiffs offer no valid response to this straightforward application of sovereign immunity to this case. Plaintiffs argue that various courts have certified classes "consisting" of state entities, but none of those cases directly considered the issue and are therefore not authority for the proposition that the certification of such a class is proper. Moreover, plaintiffs' cited cases involve classes where government entities were included on the margins, not a class *primarily* made up of sovereign entities or their subunits. Plaintiffs also argue that sovereign immunity only applies when remedies are sought against the state, which is not what plaintiffs seek to do

here. But they do not cite a single case supporting that proposition. Nor could they. Courts at every level across the country have recognized that sovereign immunity also prevents states from being conscripted into litigation as plaintiffs—exactly what the plaintiffs attempt to do here. Mot. 9-12.

Unable to dispute the crux of Axon's arguments, plaintiffs spend most of their Opposition raising specious procedural arguments about "standing" and "preemption," and imploring the Court to adopt a "wait-and-see" approach to their proposed class. None of plaintiffs' arguments have merit.

### A.    Plaintiffs' "Standing" Argument is Meritless.

Plaintiffs argue that courts "may" not or "can" not address sovereign immunity unless it is raised by the States. But, as this Court recently discussed in *Messner v Weingarten*, 2023 WL 6806179, *3 (D.N.J. Oct. 16, 2023), "[a] court may raise the issue of sovereign immunity based on the Eleventh Amendment *sua sponte*." (collecting cases). Moreover, as sovereign immunity implicates issues of federal jurisdiction, any party may raise the issue with the Court. *See In re Automotive Parts Antitrust Litig.*, 2015 WL 14047405, *3, *5 (E.D. Mich. Apr. 30, 2015) (noting *any* party may challenge subject matter jurisdiction; and rejecting argument that defendants lacked standing to challenge inclusion of States in putative class on sovereign immunity grounds, even though "sovereign immunity [was] not being raised as a defense by any of the nine identified States"). Plaintiffs' cited cases

are not to the contrary as they involved situations where the State was either participating in the litigation, *see e.g., Tritchler v. County of Lake*, 358 F.3d 1150, 1153 (9th Cir. 2004), or had previously done so, *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 300 (4th Cir. 2001), and therefore could have raised (or declined to raise) their own sovereign immunity. Opp. 25-27.

Furthermore, Axon is entitled to raise sovereign immunity to the extent it precludes plaintiffs' proposed class from being cognizable under Rule 23. Mot. 9-11; *see also, e.g., Seminole Tribe of Fla..,* 517 U.S. at 58 (stating Eleventh Amendment "serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."); *Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 506 (8th Cir. 1995) (state sovereignty is implicated "whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation"). The rights of absent sovereigns are impaired by subjecting them to the jurisdiction of federal courts, and this Court may only exercise jurisdiction over States, and the arms of States, where there has been an affirmative, unmistakable waiver on the part of those entities, which plaintiffs have not obtained. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990).

Here, sovereign immunity presents an insurmountable bar to plaintiffs' proposed class. Contrary to plaintiffs' suggestion, sovereign immunity under the Eleventh Amendment is not merely a defense which States and their subdivisions

can raise, but rather a jurisdictional barrier that precludes federal courts from exercising authority over such sovereigns absent an explicit waiver. *See Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 765 (2002). Plaintiffs' proposed class necessarily requires that this Court wield authority over absent sovereigns and compel some action by them. But the Court is precluded from doing so because of sovereign immunity.

### B. Plaintiffs' "Wait and See" Approach Is Not A Viable Solution.

Plaintiffs' second argument that Axon and the Court may simply "wait and see" whether States will waive sovereign immunity, does not solve plaintiffs' problem because (i) requiring an absent sovereign to take *any* action, including opting-out, infringes upon sovereign immunity; (ii) as in *Flonase*, a state's failure to act may not be construed as a waiver of sovereign immunity; and (iii) the functional outcome of plaintiffs' formulation is an "opt-in" class prohibited by Rule 23.

#### 1. Requiring A Sovereign To Act Violates The Eleventh Amendment.

Plaintiffs are mistaken that their present infringement upon States' sovereign immunity is of no moment because sovereign states are free to "opt-out" in the future. This is essentially a "no harm no foul" argument that offends the fundamental purpose of sovereign immunity. *See* Mot. 9; *Seminole Tribe of Fla.*, 517 U.S. at 58 (sovereign immunity "also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties"); *see also*

*Walker v. Liggett Group, Inc.*, 982 F. Supp. 1208, 1211 (S.D. W. Va. 1997). Forcing State entities to respond to a class notice by affirmatively opting out—or else being held to a class wide judgment—subjects them to the Court's coercive process despite not having waived sovereign immunity.

## 2. Failing to Opt Out May Not Waive Sovereign Immunity.

Plaintiffs' entire argument that the Court should "wait and see" whether state entities opt out rests on the premise that a State entity's failure to respond to a class notice will constitute a waiver of its sovereign immunity. But plaintiffs cite no case in support of that proposition. On the contrary, *Flonase* teaches that a State's failure to affirmatively opt-out is insufficient to bind it as a class member, and thus an absent sovereign's failure to take any action in response to some future class notice may not have preclusive effect. If the absent sovereigns, which necessarily and predominantly comprise plaintiffs' putative class, cannot be bound by the outcome of this action, they cannot be absent class members. To allow otherwise is fundamentally at odds with Rule 23.

Plaintiffs attempt to avoid *Flonase* by pointing to the sufficiency of the notice at issue and the distinction between direct and indirect purchasers.[1] Neither

---

[1] In *Flonase*, Louisiana received a CAFA notice as an indirect purchaser who qualified as a potential class member. But the Court's decision did not turn on the *content* of the notice, but rather the *fact* of such notice and Louisiana's inaction after receipt could constitute a waiver of sovereign immunity such that the State was bound by the class settlement. The Court concluded it could not. There is nothing in

contention, however, escapes the critical import of the Court's holding—an absent sovereign that has not affirmatively waived sovereign immunity may not be bound by a class-wide resolution. In *Flonase*, the State of Louisiana did not take any action to opt out of the class and thereafter chose to separately assert its rights. The Third Circuit found that the district court could not enjoin Louisiana from pursuing its rights, even though it did not opt out and the class settlement extinguished the rights of absent class members. In other words, while class members who did not affirmatively opt out were precluded from pursuing claims against GSK because their rights were extinguished by the terms of the settlement, the same did not hold true for the State (which likewise did not opt out of the class) because sovereign immunity prohibits such a result. Moreover, the Court found that Louisiana's failure to opt out was not a waiver of its sovereign immunity; Louisiana's *inaction* in response to the notice was irrelevant. The clear and necessary corollary to this controlling authority is that a sovereign that cannot be bound by the resolution of a class action cannot be a member of the class, even if it does not opt-out. Therefore, a class definition that by necessity includes absent States and State agencies cannot be countenanced. Where, as here, a substantial number of the putative class members are entities falling into this category, plaintiffs' proposed class definition fails. For

---

the Court's opinion to suggest that if Louisiana had received a more detailed notice, or was a direct purchaser, that the outcome would be different.

plaintiffs' argument to carry any water, sovereigns would be required to opt-out or affirmatively opt-in for this case to have preclusive effect. This is precisely the result that sovereign immunity and Rule 23 foreclose.

### 3. "Opt-In" Classes Are Prohibited Under Rule 23.

Plaintiffs do not meaningfully grapple with the practical reality that their proposed class is, in effect, an "opt-in" class requiring affirmative acts (*i.e.*, waiving sovereign immunity) to participate in this action. Such an opt-in class cannot be certified under Rule 23. *See Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 218-20 (5th Cir. 2012); *Kern v. Siemens Corp.*, 393 F.3d 120, 126 (2d Cir. 2004); *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2012 WL 6208385, *5 (N.D. Tex. Dec. 12, 2012) ("no authority exists for certifying an opt in class") (internal quotation marks omitted). For all the foregoing reasons, plaintiffs' proposed class contravenes settled sovereign immunity principles and cannot stand.

## II. PLAINTIFFS' REPRESENTATION IS PRECLUDED BY FEDERAL, STATE, AND LOCAL STATUTES, WHICH PRESENT INSURMOUNTABLE ROADBLOCKS TO CERTIFICATION.

Federal and state statutes govern the prosecution of claims on behalf of such governments. Plaintiffs erroneously argue that Axon lacks standing to raise matters regarding statutory authorization and that opt-out procedures adequately protect government interests underlying such statutes. Opp. 22-23. These arguments fail as discussed above (§ I, *supra*) because (i) Axon is not asserting rights on behalf of

absent sovereigns, but rather such rights confirm that plaintiffs are unable to meet Rule 23's requirements as a matter of law; and (ii) opt-out procedures requiring affirmative action cannot save plaintiffs' class definition. Simply put, plaintiffs' counsel may not delegate to themselves authority which sovereign entities have determined only they may allocate. Requiring government entities to make a choice to retain plaintiffs' counsel, pursue claims on their own in accordance with statutory prescriptions, or to take any action at all tramples their sovereign immunity—an outcome the Court should not countenance here.

Plaintiffs also conveniently ignore the sovereign immunity, authorization, and manageability issues that their class definition creates. And their over-simplified assertions that a nationwide class of thousands of federal, state, and local governmental entities can be certified is not supported by the cited cases. Opp. 24.

The proposed class is not manageable because highly individualized issues predominate over class-wide problems and a class is not superior. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) (citing *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996) (decertifying class because legal and factual differences in plaintiffs' claims were "exponentially magnified by choice of law considerations, [and] eclipse any common issues").

A nationwide class of federal, state, and local governmental entities would require analysis of hundreds or thousands of statutes and ordinances with variations that present "significant manageability problems." *Village of Bedford Park v. Expedia, Inc.*, 309 F.R.D. 442, 452 (N.D. Ill. 2015) (declining to certify class on manageability grounds because court would need to analyze ordinances from over 150 different municipalities to determine relevant legal standards); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (holding that class action would not be manageable because plaintiffs' "claims must be adjudicated under the law of so many jurisdictions."). Here, certification of the proposed class would require individualized analysis of these laws across every jurisdiction to determine whether authorization issues prevent inclusion in the class, whether a certain entity is considered a "State" entity subject to sovereign immunity, and a variety of other individualized issues. Such individualized analysis fails to meet Rule 23's requirements.

## III. SIGNIFICANT AUTHORIZATION AND MANAGEABILITY ISSUES WILL PREDOMINATE A NATIONWIDE CLASS OF LOCAL GOVERNMENTAL ENTITIES.

Plaintiffs state that courts "routinely" certify classes made up of LGEs.[2] Opp.

---

[2] Plaintiffs also ignore the many cases that specifically exclude local governmental entities from class definitions. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 606 (N.D. Cal. 2009); *In re OSB Antitrust Litig.*, 2007 WL 2253425, *19 (E.D. Pa. Aug. 3, 2007); *In re Infant Formula Antitrust Litig.*, 1992 WL 503465, *3 (N.D. Fla. Jan. 13, 1992); *In re Polypropylene Carpet Antitrust*

18. Yet plaintiffs primarily rely on limited, single-state classes,[3] including many irrelevant state-court class actions not certified under Rule 23.[4] But contrary to plaintiffs' framing, the propriety of certifying even a single-state class of LGEs is not a settled question.

For example, in striking a class of South Carolina-only LGE's, the district court noted that the "authority to decide when a claim should or should not be brought by a governmental entity is vested with the entity." *Cnty. of Dorchester, S.C. v. AT&T Corp.*, 407 F. Supp. 3d 561, 568 (D.S.C. 2019). The court found that the "sovereignty of these putative class members" would be impeded by their inclusion as absent class members, distinguishing plaintiffs' cited case of *County of Monroe,*

---

*Litig.*, 178 F.R.D. 603, 608 (N.D. Ga. 1997); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 495 (N.D. Cal. 2017); *Burke v. Visa, Inc.*, 2021 WL 4712058 (D.D.C. Sept. 7, 2021); *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967 (D. Minn. 2023); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012).

[3] *Bd. of Cnty. Comm'rs v. Wilshire Oil Co.*, 1973 WL 797 (W.D. Okla. 1973); *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523 (M.D. Tenn. 2010); *City of San Antonio v. Hotels.com*, 2008 WL 2486043 (W.D. Tex. May 27, 2008); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D. Fla. 2010); *Iowa v. Union Asphalt & Roadoils, Inc.*, 281 F. Supp. 391 (S.D. Iowa 1968); *Montgomery County ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202 (E.D. Pa. 2014).

[4] *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602 (Tex. Ct. App. 1998); *City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276 (Mo. Ct. App. 2016); *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750 (Tex. 2003); *Commonwealth v. Reichl*, 2019 WL 2488678 (Va. Cir. Ct. Mar. 22, 2019); *Entex, a Div. of Noram Energy Corp.*, *v. City of Pearland*, 990 S.W.2d 904 (Tex. Ct. App. 1999); *Pac. Gas & Elec. Co. v. County of Stanislaus*, 947 P.2d 291 (Cal. 1997); *Sw. Bell v. City of Port Arthur*, 1993 WL 13013186 (Tex. Ct. App. June 3, 1993).

*Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 663 (S.D. Fla. 2010) (certifying a single-state class of Florida counties). *Id.* at 569. The court noted that "the general disfavoring of a motion to strike allegations on the pleadings as a procedural tool does not necessarily hold where the putative class is comprised of separate governments." *Id.* at 568.

Moreover, contrary to plaintiffs' assertions, courts repeatedly have held that "authorization" statutes like those raised by defendants impede the certification of an LGE class—even for a single state, much less nationwide. For example, the Fifth Circuit decertified a class that included LGEs because class counsel failed to establish they received proper authorization to represent all absent LGE class members. *Ackal v. Cent. Beauregard Cellular, LLC*, 700 F.3d 212 (5th Cir. 2012). At issue in *Ackal* (and here) was a Louisiana law that "limits the ability of certain governmental entities… to be represented by private counsel." *Id.* at 218. The Fifth Circuit held that, "given the various 'procedural' hurdles that must be cleared… before a class member even is authorized to participate" in the lawsuit, the plaintiffs had "effectively created an 'opt in' class." *Id.* at 219.[5] The court thus vacated the order certifying the class as not permitted by Rule 23. *Id.*

---

[5] This decision post-dates *Shady Grove*, and, as discussed *infra*, belies plaintiffs' expansive reading of that decision to preempt authorization laws nationwide.

Similarly, the Northern District of Texas faced a request to certify a class under Rule 23 consisting of all Texas counties. *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2012 WL 6208385 (N.D. Tex. Dec. 13, 2012). Defendants argued "Texas law does not permit a class consisting of all Texas counties, because each county is a separate legal entity whose powers extend solely within its own borders, and the power to determine whether to institute suit is vested exclusively with the county commissioners court." *Id.* *4. The Court denied certification, holding this created an impermissible "opt in" class under Rule 23. *Id.* *11. Moreover, the case highlights how authorization laws even within a single state differ by LGE making identification of which LGEs fall within or outside this proposed nationwide class is hopelessly individualized. *Id.* *7 (noting different treatment of municipalities and counties under Texas law).

Because plaintiffs fail to resolve the significant authorization and manageability issues present on the face of their complaint, the proposed class of thousands of federal, state, and local government entities cannot be certified under Rule 23.

## IV.    PLAINTIFFS' PREEMPTION ARGUMENT FAILS.

Plaintiffs argue Rule 23 preempts state and local laws regarding authorization based on a misreading of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Contrary to the single district court footnote cited by plaintiffs,

multiple courts have found—even after *Shady Grove*—that state and local laws relating to counsel authorization statutes prevent certifying a class of LGEs.

*Shady Grove* does not reach as far as plaintiffs argue. In that case, a New York civil practice rule barred class actions seeking recovery of statutory interest penalties in conflict with Rule 23. Because federal jurisdiction was based on diversity, the court determined the Federal Rules of Civil Procedure controlled over this literal rule of procedure under New York law regulating the availability of class relief.

Here, no conflict exists between Rule 23 and the authorization statutes. The federal and state (and local) statutory schemes governing authorization and representation embody the fundamental principle that governments at every level retain the right to determine for themselves whether, when, and by whom they will pursue claims for the benefit of citizens within their jurisdiction. *See e.g., In re McKesson Gov't Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 271 (D. Mass. 2011) (noting that "most states have laws providing the Attorney General of the state with exclusive authority to represent the state in litigation"); 28 U.S.C. § 516 (vesting DOJ with exclusive litigation authority for United States). Plaintiffs attempt to stretch *Shady Grove*'s holding into a categorical rule whereby Rule 23 controls over any statute, including those controlling governments' election to prosecute their claims. Plaintiffs' sole support for that expansive proposition is a

single footnote. *See* Opp. 10 (citing *Montgomery Cty. ex rel. Becker v. MERSCORP, Inc.* 298 F.R.D. 202, 210 n.3 (E.D. Pa. 2014)).

*Shady Grove* does not stand for the proposition that if plaintiffs plead a putative class action, any counsel can act for any federal, state, or local government notwithstanding a clear statutory reservation of authority to appropriate officers. Indeed, plaintiffs' erroneous and expansive reading of *Shady Grove* is belied by *later* decisions holding that state and local authorization laws prevent certification of classes under Rule 23 where absent members would be required to effectively "opt-in" to representation. *See e.g., Ackal*, 700 F.3d 212 (holding Louisiana state law prevented certain governmental entities from participating in litigation prior to authorization, resulting in improper "opt-in" class); *Dallas County*, 2012 WL 6208385, *7-8 (meeting statutory requirements for retention of private counsel would require creating improper "opt-in" class). Rather, as set forth in *Walker*, to whatever extent private plaintiffs' "counsel purport to represent the interests of the States, these counsel act *ultra vires*." 982 F. Supp. at 1210.

## CONCLUSION

For the foregoing reasons and those set forth in Axon's motion, the Court should strike plaintiffs' class allegations in their entirety.

Dated: May 15, 2024                Respectfully submitted,

                                         */s/Liza M. Walsh*
                                         Liza M. Walsh

WALSH PIZZI O'REILLY FALANGA LLP
Liza M. Walsh
Katelyn O'Reilly
Eric S. Padilla
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100


AXON ENTERPRISE, INC.
Pamela B. Petersen (*pro hac vice*)
Gayathiri Shanmuganatha (*pro hac vice*)
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016

JONES DAY
Julia E. McEvoy (*pro hac vice*)
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Tel: (202) 879-3939

Aaron M. Healey (*pro hac vice*)
250 Vessey Street
New York, New York 10281
Tel: (212) 326-3939

*Attorneys for Defendant Axon Enterprise, Inc.*