**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By: Steven A. Haber, Esquire
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
(856) 795-3300
steven.haber@obermayer.com

**BAKER BOTTS L.L.P.**
James G. Kress (*pro hac vice*)
Paul C. Cuomo (*pro hac vice*)
Jana I. Seidl (*pro hac vice*)
Dorothea R. Allocca (*pro hac vice*)
700 K Street NW
Washington, DC 20001
(202) 639-7884
james.kress@bakerbotts.com

*Attorneys for Defendant Safariland, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *IN RE AXON VIEVU ANTITRUST LITIGATION* | No. 3:23-cv-7182-RK-RLS<br><br>**DEFENDANT SAFARILAND'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>*Electronically Filed*<br><br>**Oral Argument Requested** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

    I.    The Potential for Equitable Relief on Plaintiffs' Section 7 Claim Does Not Justify Keeping Safariland as a Defendant. ..................................................3

    II.   Plaintiffs Cannot Save Their *Per Se* Claim Under Section 1 by Asking the Court to Defer Its Decision and Recasting Merger Conduct as Unlawful Market Allocation. ......................................................................................6

    III.  Plaintiffs Point to No Cases Where a Shared Intent to Monopolize is Premised on a Merger Agreement. ................................................................8

CONCLUSION ...................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*,
    613 F.2d 727 (9th Cir. 1979)......................................................................9, 10

*Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*,
    256 F. Supp. 2d 249 (D.N.J. 2003)..............................................................9, 10

*Christou v. Beatport, LLC*,
    849 F. Supp. 2d 1055 (D. Colo. 2012) ................................................................9

*Community Publishers, Inc. v. Donrey Corp.*,
    892 F. Supp. 1146, 1174 (W.D. Ark. 1995) .......................................................4

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
    658 F.2d 139 (3d Cir. 1981) ...............................................................................9

*Fort Wayne Telsat v. Ent. & Sports Programming Network*,
    753 F. Supp. 109 (S.D.N.Y. 1990).....................................................................9

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ...............................................................................9

*In re Generic Pharms. Pricing Antitrust Litig.*,
    394 F. Supp. 3d 509 (E.D. Pa. 2019)..................................................................8

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012)..............................................................6

*In re Magnesium Oxide Antitrust Litig.*,
    2011 WL 5008090 (D.N.J. Oct. 20, 2011) .........................................................8

*In re RealPage, Inc.*,
    2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023) ............................................6, 7

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    No. 13-MD-2445, 2017 WL 4910673 (E.D. Pa. Oct. 30, 2017) ........................9

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
    419 F. Supp. 3d 791 (D. Del. 2019) ...................................................................6

ii

*Lifewatch Servs. Inc. v. Highmark Inc.*,
   902 F.3d 323, 336 (3d Cir. 2018) ..........................................................................7

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   562 F. Supp. 3d 1073, 1078, 1080 n.4 (E.D. Cal. 2021) ......................................5

*TV Commc'ns Network, Inc. v. Turner Network Television*,
   Inc., 964 F.2d 1022, 1026 (10th Cir. 1992) ..........................................................9

*United States v. Coca-Cola Bottling Co. of L.A.*,
   575 F.2d 222, 226-27 (9th Cir. 1978)...................................................................4

## INTRODUCTION

To present a streamlined set of briefs to the Court, Safariland addresses below Plaintiffs' Opposition only with respect to the issues unique to Safariland, i.e., its arguments as to Count 1; the *per se* allegations of Count 2; and the specific intent element of Count 5. In support of the remaining arguments in its Motion to Dismiss Counts 2, 5, and 8, which Plaintiffs addressed in their Opposition to Axon's Motion to Dismiss, Safariland joins Axon's reply.

As to Count 1, Plaintiffs cling to their Section 7 claim improperly lodged against Safariland by claiming this Court may retain jurisdiction over Safariland as necessary to any as-of-yet unspecified equitable relief that may be awarded. This makes no sense. Upon closer examination, Plaintiffs' cases are factually inapposite. Unlike the present situation, Plaintiffs' authorities involved factual scenarios where: (i) there was no need to unscramble the proverbial eggs because preliminary injunctions had issued to prevent consummation of the challenged transactions, or (ii) the seller remained engaged in the business rather than having fully exited with the sale. Thus, even if this Court were to entertain the possibility of equitable relief, Safariland's presence could not be required to effectuate it. Safariland sold its only subsidiary engaged in the BWC business more *than six years earlier*. As the *seller* in the challenged transaction, there is nothing for Safariland to divest; and no authority supports the idea that the Court could (or

should) force Safariland to "repurchase" any such business. Tellingly, not even the FTC's Complaint from more than four years earlier, upon which Plaintiffs rely so heavily, ever went that far.

As to Plaintiffs' *per se* Section 1 claim(s), advanced as part of Plaintiffs' jam-packed Count 2, Plaintiffs acknowledge that merger conduct is not evaluated under the *per se* standard. Opp'n at 6 n.2. And Plaintiffs cite no authority for the proposition that a non-compete ancillary to a merger should be analyzed as a *per se* illegal market allocation. Rather, Plaintiffs rely on cases where the Section 1 theory of liability could be reached under the *per se* rule or the rule of reason, *which is not the case here*. Against this backdrop, there is no reason for the Court to delay in dismissing Plaintiffs' *per se* claim(s). Plaintiffs' apparent desire to avoid proving actual anticompetitive effects from a challenged agreement in effect for less than twenty months before being rescinded more than four years ago provides no basis to rewrite bedrock antitrust law.

Finally, as to Count 5, Plaintiffs have yet to cite a single case in which a court found a shared specific intent necessary for a Section 2 conspiracy to monopolize claim premised on a merger and ancillary non-compete. With the sale of VieVu, Safariland exited the BWC business entirely. The cases Plaintiffs rely on instead feature alleged exclusionary conduct in which the co-conspirator allegedly supported and actively participated in the common scheme, including

2

group boycotts, licensing arrangements, and product hopping. Notably, the FTC did not pursue a Section 2 theory in its now abandoned challenge, and the Court should not entertain Plaintiffs' pleas to stretch the bounds of Section 2.

## ARGUMENT

**I.     The Potential for Equitable Relief on Plaintiffs' Section 7 Claim Does Not Justify Keeping Safariland as a Defendant.**

Plaintiffs' Opposition limits their Section 7 claim against Safariland only to injunctive relief—not damages. Opp'n at 4, 5.[1] On that basis, Plaintiffs assert, "Safariland is a proper defendant to [their] Section 7 claim" because a Court may fashion "remedies that undo the challenged transaction, such as divestiture and rescission"—"*in appropriate cases*." *Id.* at 5 (emphasis added). That caveat is a critical one; and the authority relied on by Plaintiffs underscores that this is *not* an appropriate case for rescission.

Not one case from "the backdrop of [] authority" Plaintiffs cite, Opp'n at 5, stands for the proposition that a court may force a seller to repurchase assets it long-ago sold when exiting a business. Yet, that is the reality of what "rescission" would entail in this case given Safariland sold its VieVu subsidiary "lock, stock and barrel" six years ago. Instead, Plaintiffs rely on cases in which preliminary

---

[1] Plaintiffs' Count I is not plead with such clarity. It advances a single Section 7 claim against both Axon and Safariland seeking "treble damages and an injunction against Defendants." Compl. ¶ 162.

3

injunctions prevented consummation of the transaction, or where the assets sold constituted only a part of the business at issue, such that the seller remained actively engaged in that line of business.

Specifically, in *United States v. Coca-Cola Bottling Co. of L.A.*, the Ninth Circuit conducted a "unique" interlocutory review of a preliminary injunction granted where the parties had not yet consummated the challenged transaction. 575 F.2d 222, 226-27 (9th Cir. 1978). Even there, the court cabined its holding as to a recission remedy to "appropriate circumstances" and cautioned that "the equity power of the courts is not unbounded," *id*. at 230. Yet, the court emphasized "[t]he fact that sellers in s[ection] 7 cases are not technical violators of the law is itself a strong equity consideration against rescission." *Id*.

Similarly, *Community Publishers, Inc. v. Donrey Corp.* stands for the unremarkable proposition that rescission *could* be an available remedy in a private suit—not that it would be appropriate under the circumstances here. 892 F. Supp. 1146, 1174 (W.D. Ark. 1995). Indeed, the parties in that case closed the transaction the day after being served with a complaint and motion for temporary restraining order to block the transaction. *Id*. at 1175. Even there, the court noted that should a court determine equitable relief appropriate on a Section 7 claim, divestiture is regarded as "the preferred remedy," and rescission is reserved for only unique circumstances. *See id*. at 1176-77. Indeed, the court observed that

rescission could be effectuated in that case because "[i]n light of the preliminary injunction order which has been in place since two days after the transfer of the [business], the court would not be faced with the difficulties often encountered in attempting to rescind mergers or asset acquisitions. That is, there should be no difficulty in separating the assets and requiring the rescission of the asset purchase agreement." *Id*. at 1178. The circumstances here, of course, with a transaction completed six years earlier are far different.

Finally, in *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, the court elected to retain jurisdiction over two seller defendants on the equitable relief claim where the buyer had acquired an 80% interest, such that the sellers continued to be engaged in the business. 562 F. Supp. 3d 1073, 1078, 1080 n.4 (E.D. Cal. 2021). Again, retaining jurisdiction over a seller to potentially unwind a deal where the seller retained an active stake is a far cry from rescinding a transaction six years after the seller exited the business and Axon has long-since fully integrated the acquired assets.

On the factual allegations here, there is no basis to conclude that "Safariland's presence might plausibly be needed to effect appropriate relief" on Plaintiffs' Section 7 claim. Opp'n at 5. Divestiture could not be directed toward *Safariland* as the *seller*, and rescission would be neither appropriate nor effective. Nor would it be "premature" to dismiss Safariland from Plaintiffs' Section 7 claim.

5

Opp'n at 6.² No discovery in this matter can contradict, as Plaintiffs have alleged, that the VieVu Acquisition closed in 2018.

## II. Plaintiffs Cannot Save Their *Per Se* Claim Under Section 1 by Asking the Court to Defer Its Decision and Recasting Merger Conduct as Unlawful Market Allocation.

To distract from well-settled law that merger conduct is not considered a *per se* violation, Plaintiffs argue that the Court should simply defer ruling on the sufficiency of their allegations of a *per se* violation. Opp'n at 6.³ In doing so, Plaintiffs cite cases that are inapposite—none involve a challenge to merger conduct. Rather, Plaintiffs' authorities involve allegations of price-fixing, group boycott, and wage-fixing where application of the *per se* standard may well apply. Opp'n at 7-10.⁴

---

² Plaintiffs argue "no-harm-no-foul" in asking the Court to retain Safariland as a Section 7 defendant simply because they have brought other claims against it. Opp'n at 6 n.1. Not surprisingly, Plaintiffs cite no basis for the Court to ignore the statutory scope of, and availability of equitable relief, available under, Section 7.

³ As noted in Safariland's opening brief, Plaintiffs' Section 1 claim(s) challenged separate "agreements" involving separate alleged product markets (CEWs and BWCs) and separate theories of illegality (*per se* and rule of reason). Safariland addresses the alleged CEW claim and "holster agreement" in totality, via its joinder, in Defendant Axon's reply brief.

⁴ *See Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 419 F. Supp. 3d 791, 807 (D. Del. 2019) (finding plaintiff adequately pled a group boycott claim but declining to decide which standard applied); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012) (finding plaintiffs adequately pled both a *per se* theory for fixing employee compensation and a rule of reason theory but declining to decide which standard applied); *In re RealPage, Inc.*, 2023 WL

*In re RealPage, Inc.*, cited by Plaintiffs, is particularly unhelpful to their position. There, the court concluded on a motion to dismiss that application of the *per se* standard to plaintiffs' allegations was "not appropriate." *In re RealPage*, 2023 WL 9004806, at *22-24. That case shows that courts need not wait to determine which Section 1 standard applies where, like here, plaintiffs have failed to plausibly allege facts sufficient to state a *per se* theory of liability. Indeed, Plaintiffs "do not dispute that mergers are not illegal *per se*," Opp'n at 6 n.2, and, for the reasons articulated in Safariland's opening brief, none of the ancillary agreements arising from the VieVu Acquisition, considered separately or together, support a claim for *per se* liability. Safariland Mot. Dismiss at 16-21.

Stretching to save their *per se* theory, Plaintiffs double down on their efforts seeking to characterize the ancillary non-competes as so-called "market allocation" agreements. Yet, Safariland did not make, nor planned to make, CEWs. *See* Safariland Mot. Dismiss at 4, 5, 13-15. And its only BWC business was conducted by its VieVu subsidiary, which it sold in its entirety to Axon in 2018. *See id.* at 4, 20. Not surprisingly, Plaintiffs' "market allocation" authorities prove weak allies on the facts alleged here. Indeed, in *Lifewatch Servs. Inc. v. Highmark Inc.*, the Third Circuit ultimately analyzed group boycott allegations under the rule of

---

9004806, at *22 (M.D. Tenn. Dec. 28, 2023) (rejecting plaintiffs' arguments that the *per se* standard should apply in alleged "hub and spoke" price-fixing case).

7

reason—Plaintiffs' quote is pure dicta.  902 F.3d 323, 336 (3d Cir. 2018). Plaintiffs' other citations are also distinguishable as none involved merger agreements, or even non-compete agreements ancillary to a merger, but instead dealt with allegations of price fixing and market allocation agreements regularly analyzed as *per se* violations.  *See In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at **13-16 (D.N.J. Oct. 20, 2011); *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 529 (E.D. Pa. 2019).

Plaintiffs failed to state a *per se* claim in either the putative BWC or CEW markets and such claims should be dismissed.  Plaintiffs' apparent hope that they can avoid (or defer) the need to establish actual anticompetitive effects from the challenged agreements, *rescinded more than four years ago*, as required under the rule of reason, is no reason for the Court to delay streamlining this case.

### III.     Plaintiffs Point to No Cases Where a Shared Intent to Monopolize is Premised on a Merger Agreement.

Plaintiffs spill the most ink on whether they have alleged facts sufficient to show the specific intent required to support their BWC Section 2 conspiracy to monopolize claim.  That claim—and the associated specific intent Plaintiffs allege—is premised on a merger and its ancillary non-compete.  Yet, again, Plaintiffs cite no support where the challenged conduct by the alleged co-conspirator involved a merger.  Rather, Plaintiffs' authority analyzed alleged exclusionary conduct where the alleged co-conspirator was an active participant,

8

including at times unsuccessful group boycott claims and claims premised on licensing arrangements and product hopping; one case involved no alleged co-conspirator at all advancing only monopolization and attempted monopolization claims. Opp'n at 10-16.[5]

Plaintiffs' cases also fall flat for other reasons. For example, in *Fort Wayne Telsat*, which Plaintiffs cite as one example of the factors bearing on and type of allegations sufficient to plead specific intent, Opp'n at 12, the court applied pre-*Twombly* "liberal pleading requirements." 753 F. Supp. at 112, 114. And the specific intent analyses in Plaintiffs' other authorities, where those courts even found specific intent, relied on a laundry list of alleged overt acts in furtherance of an alleged common scheme. *See, e.g.*, *In re Suboxone Antitrust Litig.*, 2017 WL 4910673, at *17.

---

[5] *See Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 257-58 (3d Cir. 2010) (group boycott; no specific intent); *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 256 F. Supp. 2d 249, 282 (D.N.J. 2003) (group boycott); *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1063, 1072 (D. Colo. 2012) (group boycott); *Fort Wayne Telsat v. Ent. & Sports Programming Network*, 753 F. Supp. 109, 113 (S.D.N.Y. 1990) (group boycott); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (group boycott; no specific intent); *Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 139, 154 (3d Cir. 1981) (licensing agreements; no specific intent); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4910673, at *5 (E.D. Pa. Oct. 30, 2017) (product hopping); *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 731 (9th Cir. 1979) (unilateral conduct in the form of new products, price cuts, leasing policies, and marketing practices).

9

Finally, Plaintiffs' citation to *Carpet Grp. Int'l* undermines their argument that allegations of a Section 1 conspiracy also suffice for a court to infer the specific intent necessary for a Section 2 conspiracy claim. Opp'n at 12 (citing to *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 736-37 (9th Cir. 1979)). In fact, the *Carpet Grp. Int'l* court explained that "a section 2 conspiracy claim is harder to prove than a section 1 claim, *particularly because the former requires a showing of specific intent*." 256 F. Supp. 2d 249, 286 (D.N.J. 2003) (emphasis added).

## CONCLUSION

For the foregoing reasons, and as stated in its opening brief and Axon's reply brief, incorporated by reference, Safariland respectfully requests the Court dismiss Counts 1, 2, 5, and 8 as to Safariland.

Dated: May 15, 2024

**BAKER BOTTS L.L.P.**
James G. Kress (*pro hac vice*)
Paul C. Cuomo (*pro hac vice*)
Jana I. Seidl (*pro hac vice*)
Dorothea R. Allocca (*pro hac vice*)
700 K Street NW
Washington, DC 20001
(202) 639-7884
james.kress@bakerbotts.com
paul.cuomo@bakerbotts.com
jana.seidl@bakerbotts.com
dodi.allocca@bakerbotts.com

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

/s/ Steven A. Haber
Steven A. Haber, Esquire
1120 Route 73, Suite 420
Mount Laurel, NJ 08054-5108
(856) 795-3300
steven.haber@obermayer.com

*Attorneys for Defendant Safariland, LLC*

10