**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *IN RE AXON VIEVU ANTITRUST LITIGATION* | No. 3:23-cv-7182-RK-RLS<br><br>**FEDERAL TRADE COMMISSION'S BRIEF AS AMICUS CURIAE** |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF THE FEDERAL TRADE COMMISSION........................................1

INTRODUCTION ......................................................................................3

ARGUMENT ............................................................................................5

I. Defendants' Treatment of the Prior Administrative Hearing Is Improper. .....5

A. The Dismissal of the Administrative Case Was Unrelated to the Merits of the Antitrust Issues. ...............................................6

B. Plaintiffs Are Not Limited to the Proposed Market Definition in the FTC Complaint ...........................................................8

II. The Elimination of Perceived Potential Competitors Can Harm Competition in Violation of the Sherman Act. ...............................10

A. Elimination of Perceived Potential Competition is Anticompetitive Harm Under Sherman Act Section 1 ......................................12

B. Elimination of Perceived Potential Competition is a Valid Basis for a Section 2 Monopolization Claim. ........................................14

CONCLUSION ........................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) ....................7

*Axon Enterprise, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021)....................7

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007)....................15

*Brown Shoe v. United States*, 370 U.S. 294 (1962)....................9, 10

*Cmty. Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146 (W.D. Ark. 1995), *aff'd sub nom. Cmty. Publishers, Inc. v. DR Partners*, 139 F.3d 1180 (8th Cir. 1998) ....................14

*Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 470 (1992)....................9

*Fraser v. Major League Soccer*, 284 F.3d 47 (1st Cir. 2002) ....................17

*FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34 (D.D.C. 2022)....................16

*FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160 (3rd Cir. 2022) ....................1

*Geneva Pharms. Tech Corp. v. Barr Labs., Inc.*, 386 F.3d 485 (2d Cir. 2004)...9

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961 (11th Cir. 2006)....................17

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010)....................15

*Marine Bancorp., Inc.*, 418 U.S. 602 (1974).................... 11, 15

*Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021) ....................12

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85 (1984)....................12

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986)....................13

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690 (4th Cir. 2021) ....................1

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124 (10th Cir. 2002)....9

*Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-cv-04312-BLF, 2024 WL 2261946 (N.D. Cal. May 16, 2024)...........................................................1

*United States v. Anthem, Inc.*, 855 F.3d 345 (D.C. Cir. 2017) .............................1

*United States v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973)................... 11, 15

*United States v. First Nat'l Bank & Tr. Co. of Lexington*, 376 U.S. 665 (1964).................................................................................................13

*United States v. Grinnell Corp*., 384 U.S. 563 (1966) .......................................15

*United States v. Penn-Olin Chem. Co.*, 378 U.S. 158 (1964) ............................16

*United States v. Rockford Memorial Corp.* 898 F.2d 1278 (7th Cir. 1990) 13, 14

*United States v. Sargent Elec. Co.*, 785 F.2d 1123 (3d Cir. 1986)....................13

**Statutes**

15 U.S.C. § 1 ..........................................................................................3, 12

15 U.S.C. § 1681s ..........................................................................................1

15 U.S.C. § 18..................................................................................................3

15 U.S.C. § 2..........................................................................................3, 14

15 U.S.C. § 21..................................................................................................2

15 U.S.C. § 41, et seq. ....................................................................................1

15 U.S.C. § 45..................................................................................................2

15 U.S.C. § 6502..............................................................................................1

**Other Authorities**

*In re Axon Enterprises, Inc,* FTC Docket No. 9389, Decision and Order (June 11, 2020) ....................3

*In re Axon Enterprises, Inc.*, FTC Docket No. 9389, Complaint (Jan. 3, 2020) ....................3

*In re Axon Enterprises, Inc.*, FTC Docket No. 9389, Order Returning Matter to Adjudication and Dismissing Complaint (Oct. 6, 2023) ....................4, 8

*In re Axon Enterprises, Inc.*, FTC Docket No. 9389, Order Staying Commencement of Evidentiary Hearing (Oct. 8, 2020) ....................7

U.S. Dept. of Justice and Fed. Trade Comm'n, Merger Guidelines (Dec. 18, 2023) .................... passim

**Treatises**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2015) ....................17

**INTEREST OF THE FEDERAL TRADE COMMISSION**

The Federal Trade Commission is an independent agency charged by Congress with preventing unfair methods of competition and enforcing the federal antitrust laws. 15 U.S.C. §§ 41–58. The Commission uses its law enforcement authority to challenge unlawful conduct administratively and in federal district courts. It has developed over 100 years of expertise investigating and litigating cases against illegal mergers and conduct. Its enforcement responsibilities cover a wide range of industries and encompass all violations of the Sherman Act, the Clayton Act, and other unfair methods of competition and unfair or deceptive practices covered by the FTC Act and various other federal statutes.[1] Courts have recognized and defer to the Commission's expertise in antitrust matters, including by giving weight to the public guidance issued by the Commission.[2] For example, together with the United States Department of Justice, the Commission has developed a set of Merger Guidelines, based on the agencies' expertise and case

---

[1] *E.g.* 15 U.S.C. § 6502(b)–(c) (tasking the Commission with enforcing the Children's Online Privacy Protection Act); 15 U.S.C. § 1681s (tasking the Commission with enforcing the Fair Credit Reporting Act).

[2] *E.g.*, *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-cv-04312-BLF, 2024 WL 2261946, at *4 (N.D. Cal. May 16, 2024); *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 167 n.3 (3rd Cir. 2022); *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 704 (4th Cir. 2021) (quoting *United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017).

law, that "identify the procedures and enforcement practices . . . most often use[d] to investigate whether mergers violate the antitrust laws."[3]

The Commission has a strong interest in ensuring the proper application of the antitrust laws, so it regularly submits amicus briefs in private antitrust cases. Additionally, the Commission has experience with the particular transaction at issue in this case: the acquisition of VieVu LLC ("VieVu") by defendant Axon Enterprise, Inc. ("Axon") from defendant Safariland LLC ("Safariland"). The Commission previously voted on a bipartisan, unanimous basis to file an administrative complaint challenging the transaction based on an initial determination that there was reason to believe the VieVu acquisition violated the Clayton Act. *See* 15 U.S.C. §§ 21(b), 45(b).

The Commission takes no position here on the merits of any party's claims or factual allegations. It submits this brief for two limited purposes: first, to respond to various statements by Axon and Safariland about the Commission's prior administrative case, and second, to address a legal error in Axon's arguments about the antitrust doctrine of "perceived potential competition."

---

[3] U.S. Dept. of Justice and Fed. Trade Comm'n, Merger Guidelines, at 1 (Dec. 18, 2023), *available at* https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf.

**INTRODUCTION**

In this case, Plaintiffs allege that Axon maintains a monopoly in two different product markets: body-worn camera systems ("BWC Systems") and long-range conducted energy weapons systems ("CEW Systems"), both of which Axon markets to police departments in the United States. Axon acquired VieVu, a rival manufacturer of BWC systems, from Safariland. As part of that transaction, Safariland agreed (1) not to compete with Axon for a period of ten years or more, anywhere in the world, on any of Axon's products and services, and (2) to forgo soliciting any of Axon's customers and employees. Plaintiffs contend that the transaction (including both the sale of VieVu and the noncompete agreement) violated Section 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18.

In 2020, the Commission voted 5-0 to issue an administrative complaint against Axon and Safariland, alleging that Axon's acquisition of VieVu violated the Clayton Act.[4] That case was solely concerned with the transaction's impact on the market for the sale of BWC Systems to large metropolitan police departments in the United States. The Commission reached a settlement with Safariland whereby the noncompete agreements were rescinded.[5] But as discussed below, the

---

[4] *In re Axon Enterprises, Inc.*, FTC Docket No. 9389, Complaint (Jan. 3, 2020).
[5] *Id.*, Decision and Order (June 11, 2020).

Commission ultimately discontinued its challenge to Axon's acquisition of VieVu for reasons unrelated to the antitrust merits.[6]

Plaintiffs' claims in this case are related to the claims in the Commission's administrative proceeding, but they are not identical. In particular, Plaintiffs have defined the BWC Systems market slightly differently than the proposed market in the Commission's complaint, and they have also raised claims regarding CEW Systems. Plaintiffs contend that the VieVu acquisition eliminated both actual competition to Axon in the BWC Systems market and potential competition to Axon in the CEW Systems market. As to the latter, Plaintiffs argue that, even though Safariland did not actually compete in the CEW Systems market, it was perceived by Axon as a potential competitor in that market, which was enough to discipline Axon's prices and conduct. Pl. Opp. to Axon MTD (ECF 80) at 27.[7]

The Commission files this amicus brief to address two distinct sets of arguments made by the parties. *First*, in their respective motions to dismiss, Axon and Safariland refer extensively to the Commission's administrative proceeding, suggesting that the discontinuance of that case somehow impacts the claims in this case. In Part I below, we show that the dismissal of the administrative complaint

[6] *Id.*, Order Returning Matter to Adjudication and Dismissing Complaint (Oct. 6, 2023).

[7] Citations to the motions to dismiss and oppositions thereto refer to internal page numbers, not ECF page numbers.

was not based on the antitrust merits and should have no bearing on this case. We further explain that Plaintiffs in this case are not constrained by the proposed market definition in the Commission's administrative complaint. *Second*, while Axon concedes that the perceived potential competition doctrine is relevant to Plaintiffs' Clayton Act claims, it argues that that the doctrine does not apply to claims under the Sherman Act. Axon Reply (ECF 83) at 3. We show in Part II that this is legally incorrect; a loss of perceived potential competition is relevant to both restraint of trade claims under Section 1 of the Sherman Act and monopoly maintenance, attempted monopolization, and conspiracy to monopolize claims under Section 2 of the Sherman Act.

## ARGUMENT

### I. Defendants' Treatment of the Prior Administrative Hearing Is Improper.

In their motions to dismiss, both Axon and Safariland incorrectly suggest that the Commission's dismissal of its administrative complaint implies that Plaintiffs' claims lack merit. Axon, for example, describes this case as an attempt "to co-opt a dismissed administrative complaint filed by the [FTC]" and observes that the Commission "dismissed its complaint against Axon without consent decree or other condition." Axon MTD (ECF 76-1) at 1, 7. Axon further notes that Plaintiffs "seek to substantially expand both the product and geographic markets" beyond what the Commission alleged. *Id.* at 2. Safariland likewise asserts that

Plaintiffs' claims are "based on little more than the allegations made by the [FTC] in its now-abandoned challenge" and that Plaintiffs' claims here are "far broader than those the FTC once pursued." Safariland MTD (ECF 78-2) at 1.

The Commission's decision to discontinue its administrative proceeding had nothing to do with the merits of the antitrust claims, and Plaintiffs here are not bound by the market definition the Commission proposed. The prior Commission proceeding has no bearing on the issues in this case.

### A. The Dismissal of the Administrative Case Was Unrelated to the Merits of the Antitrust Issues.

The Commission's dismissal of its administrative complaint against Axon should not be interpreted to be an assessment of the antitrust merits of the complaint and does not reflect any determination as to whether the transaction was lawful or not. As the Commission stated at the time, the Commission decided not to pursue the matter further because of protracted and ongoing delays caused by collateral litigation brought by Axon against the Commission.

The Commission's administrative proceeding challenging the Axon-Safariland transaction was derailed for three years by parallel constitutional litigation initiated by Axon. The same day the administrative complaint was filed, Axon filed suit in federal court challenging the constitutionality of the Commission proceedings. The district court dismissed for lack of jurisdiction, but shortly before the trial was due to commence against Axon before an administrative law judge,

the Ninth Circuit stayed the Commission's administrative case pending the resolution of the appeal.[8] The Ninth Circuit later affirmed the dismissal on jurisdictional grounds, *Axon Enterprise, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021), but the stay remained in place while Axon sought Supreme Court review. In 2023, the Supreme Court ruled that the district court did have jurisdiction, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), which meant that the stay of the administrative proceeding would continue while Axon's constitutional challenges proceeded through the district and appellate courts.

Given the significant delays that had transpired and the prospect of further lengthy delays, the Commission unanimously voted to dismiss the administrative matter in October 2023. As the Commission explained:

> Every anticompetitive merger harms markets and adversely affects the American people, and the allegations in the complaint suggest this one is no different. The complaint states that this merger eliminated competition between two rivals, effectively creating a monopoly and harming both police departments and communities who fund them. As it does with any enforcement action, however, the Commission must constantly evaluate the deployment of its limited agency resources to ensure maximal efficacy and utility. Here, there are a variety of factors we must consider in pursuit of those priorities, including the increasingly unlikely possibility of reaching a timely resolution of the antitrust merits that led to the filing of our complaint in the first place.

---

[8] *In re Axon Enterprises, Inc.*, FTC Docket No. 9389, Order Staying Commencement of Evidentiary Hearing (Oct. 8, 2020).

> Based on the totality of the circumstances, we have come to the difficult conclusion that the public interest requires that this litigation no longer be continued.[9]

In short, the Commission made clear that the dismissal was not a reflection on the merits of the administrative enforcement matter or the legality of the transaction. The dismissal thus has no bearing on the allegations in this case.

### B. Plaintiffs Are Not Limited to the Proposed Market Definition in the FTC Complaint

As Axon and Safariland note, the market definitions proposed by Plaintiffs here are broader than the product market alleged in the FTC's administrative complaint, which was limited to the sale of BWC Systems marketed to large metropolitan police departments and did not address CEW Systems at all. But there is no legal reason why Plaintiffs here should be bound by the proposed market definitions set forth in the administrative complaint. Plaintiffs' proposed market definitions must stand or fall on their own merits, which do not turn on the particular market definition proposed in the Commission's complaint.

Market definition is not a goal in itself, but rather a tool to assess the effect of conduct or a transaction on competition. The purpose is to "identify the market participants and competitive pressures that restrain an individual firm's ability to

---

[9] *Id.*, Order Returning Matter to Adjudication and Dismissing Complaint (Oct. 6, 2023).

raise prices or restrict output." *Geneva Pharms. Tech Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 496 (2d Cir. 2004); *see also Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 470, n.15 (1992) ("Whether considered in the conceptual category of 'market definition' or 'market power,' the ultimate inquiry is the same—whether competition in the equipment market will significantly restrain power."). Antitrust law speaks of a "relevant" market because the task before a court is "the determination of the relevant market, that is, a market relevant to the legal issue before the court." *Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1130 (10th Cir. 2002).

Depending on the circumstances of the case, there may be more than one relevant market. *See*, *e.g.*, *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962) (noting that within a "broad market," "well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes"). The Merger Guidelines explain that a merger "may lessen competition in any one or more relevant markets," and that "[r]elevant markets need not have precises metes and bounds." Merger Guidelines § 4.3. "Defining a relevant market sometimes requires a line-drawing exercise around product features, such as size, quality, distances, customer segment, or prices. There can be many places to draw that line and properly define a relevant market." *Id.*

In this case, Axon notes that the BWC Systems market as defined by Plaintiffs is broader than the market alleged in the Commission's complaint because it is not limited to sales to large metropolitan police departments and includes various BWC Systems components. Axon MTD at 2. But those differences do not mean that Plaintiffs' proposed BWC Systems market is an invalid relevant market for antitrust purposes. And the Commission's complaint did not allege a CEW Systems market at all, but that also has no bearing on whether CEW Systems constitute a valid relevant market. Plaintiffs' proposed markets must be evaluated on their own terms.[10]

## II. The Elimination of Perceived Potential Competitors Can Harm Competition in Violation of the Sherman Act.

Axon's brief also misstates the law regarding the doctrine of perceived potential competition, which is the theory of antitrust harm underlying Plaintiffs' CEW Systems claims.[11] That doctrine recognizes that a firm that is not actively competing in a given market may nonetheless discipline monopolistic or oligopolistic behavior in the market (*e.g.*, by restraining the ability to increase

[10] The Merger Guidelines describe several ways in which relevant product markets can be defined, including by direct evidence of substantial competition or the exercise of market power, the "practical indicia" discussed in *Brown Shoe*, 370 U.S. at 325, and the "hypothetical monopolist" test, Merger Guidelines § 4.3.

[11] The parties appear to be in agreement that there was no actual competition between Axon and Safariland in the CEW Systems market at the time of the VieVue acquisition.

prices) if that firm is "perceived" by market participants as a "potential *de novo* entrant." *United States v. Marine Bancorp., Inc.*, 418 U.S. 602, 624–25 (1974). Elimination of such a firm thus may have anticompetitive effects. The Supreme Court has firmly endorsed the perceived potential competition doctrine in the context of Clayton Act merger cases. *Id.* at 623–24; *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 531–32 (1973); *see also* Merger Guidelines § 2.4.B (describing antitrust agencies' application of perceived potential competition doctrine).[12] While Axon does not appear to dispute that elimination of perceived potential competition in the CEW Systems market is a valid basis for Plaintiffs' Clayton Act claims, it argues that the doctrine does not apply to Plaintiffs' claims under the Sherman Act. Axon Reply (ECF 83) at 3.

Axon's argument is incorrect. No court has held that a perceived potential competition case is limited to claims brought under the Clayton Act, and such a claim is not foreclosed if the facts satisfy the elements. Rather, when a perceived potential competitor is eliminated through a contractual restraint of trade, the

---

[12] Perceived potential competition is distinct from "actual potential competition," under which a merger may be deemed anticompetitive if it eliminates the possibility that a potential entrant would have entered the market on its own. Several courts have adopted loss of actual potential competition as a theory of anticompetitive harm, and the theory is also recognized in the Merger Guidelines, but the Supreme Court has reserved judgment. *See Marine Bancorp.*, 418 U.S. at 639; *Falstaff*, 410 U.S. at 537.

conduct can violate Section 1 of the Sherman Act. And when the elimination of a perceived potential competitor facilitates monopolization or attempted monopolization, the conduct can violate Section 2 of the Sherman Act. Therefore, a claim that the elimination of a perceived potential competitor violates Section 1 or Section 2 of the Sherman Act is legally cognizable.

### A. Elimination of Perceived Potential Competition is Anticompetitive Harm Under Sherman Act Section 1.

Section 1 of the Sherman Act bars every "contract, combination …, or conspiracy, in restraint of trade or commerce. 15 U.S.C. § 1. Section 1 is not limited to agreements that unreasonably restrain actual competition. The chief concern—for restraints that are horizontal, ancillary, or non-horizontal—is whether they are anticompetitive. *See Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 100 (1984) ("Horizontal price fixing and output limitation are ordinarily condemned as a matter of law under an 'illegal per se' approach because the probability that these practices are anticompetitive is so high."); *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 81 (2021) (question for ancillary and non-horizontal restraints is whether the agreement has "'anticompetitive effect[s] that are harmful to the consumers . . . .'"). Anticompetitive effects can result from the elimination of not only actual competition, but also perceived potential competition. Indeed, the very case on which Axon principally relies (Axon MTD at 9) recognizes that an agreement may

be unlawful if it restrains "actual *or potential* competition" in a relevant market. *United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (emphasis added).[13]

It is also well settled, given Section 1's concern with the anticompetitive effects of agreements, that mergers may be challenged as unreasonable restraints of trade under Section 1 as well as under Section 7 of the Clayton Act. The Supreme Court has made clear, more than once, that "the elimination of significant competition between [merging parties] constitutes an unreasonable restraint of trade in violation of [Section] 1 of the Sherman Act." *United States v. First Nat'l Bank & Tr. Co. of Lexington*, 376 U.S. 665, 669–70 (1964); *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 354 (1963) *See also United States v. Rockford Mem'l Corp.* 898 F.2d 1278, 1283, 1286 (7th Cir. 1990) (affirming injunction against hospital merger under Section 1). Put more succinctly, "anticompetitive acquisitions can violate [Section 1] . . . as a combination in restraint of trade." *Cmty. Publishers, Inc. v. Donrey Corp.*, 892 F. Supp. 1146, 1172 (W.D. Ark. 1995), *aff'd sub nom. Cmty. Publishers, Inc. v. DR Partners*, 139

---

[13] *See also Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) ("All horizontal restraints . . . eliminate some degree of rivalry between persons or firms who are actual or *potential* competitors.") (emphasis added).

F.3d 1180 (8th Cir. 1998). None of these limit Section 1 challenges to mergers affecting actual competition.

In this case, Plaintiffs' Sherman Act Section 1 claim (Count II of the operative complaint) challenges the same conduct that is at issue in their Clayton Act Section 7 claim (Count I). Those counts allege that the transaction between Axon and Safariland had anticompetitive effects in both the BWC Systems and the CEW Systems market, including through the noncompete agreements' elimination of Safariland as a perceived potential competitor. Indeed, "[b]oth statutes as currently understood prevent transactions likely to reduce competition substantially," *Rockford Mem'l*, 898 F.2d at 1283, so the elimination of perceived potential competition can give rise to claims under both, whether through the sale of a line of business or some other restraint of trade.

### B. Elimination of Perceived Potential Competition is a Valid Basis for a Section 2 Monopolization Claim.

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize" trade or commerce. 15 U.S.C. § 2. Plaintiffs here assert claims for monopolization, attempted monopolization, and conspiracy to monopolize the CEW Systems market (Counts VI, VII, and VIII of the complaint). Contrary to Axon's assertion, elimination of perceived potential competition can give rise to these claims as well.

The elements of Plaintiffs' Section 2 claims are closely related. A monopolization claim requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). Attempted monopolization requires "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007). And conspiracy to monopolize requires "(1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 253 (3d Cir. 2010).

For any of these claims, one way of showing that a defendant attained or sought to attain monopoly power is by demonstrating that it engaged in conduct that eliminated perceived potential competition. As the Supreme Court's cases make clear, the perceived potential competition doctrine recognizes that a firm's "presence on the fringe of the target market" may "in fact temper[] oligopolistic behavior on the part of existing participants in that market." *Marine Bancorp.*, 418 U.S. at 625; *see also Falstaff*, 410 U.S. at 534 (a "potential competitor on the

fringe of the market" may have "influence on existing competition"); *United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 174 (1964) ("The existence of an aggressive, well equipped and well financed corporation engaged in the same or related lines of commerce waiting anxiously to enter an oligopolistic market would be a substantial incentive to competition which cannot be underestimated."). And as the Merger Guidelines explain, pressure from a perceived potential competitor "can prompt current market participants to make investments, expand output, raise wages, increase product quality, lower product prices, or take other procompetitive actions." Merger Guidelines § 2.4.B.

Accordingly, courts and commentators alike have recognized that elimination of potential competition may cause anticompetitive effects and may constitute anticompetitive conduct for purposes of Section 2. For example, in *FTC v. Facebook, Inc.*, the court denied a motion to dismiss a Section 2 claim, explaining that "a monopolist's acquisition of 'an actual or *likely potential* competitor is properly classified as anticompetitive, for it tends to augment or reinforce the monopoly by means other than competition on the merits.'" 581 F. Supp. 3d 34 (D.D.C. 2022) (emphasis added) (quoting Phillip E. Areeda &

Herbert Hovenkamp, *Antitrust Law* ¶ 701a (4th ed. 2015)).[14] *See also Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 967 (11th Cir. 2006) (finding that a Section 2 monopolization claim based on the exclusion of a potential competitor from the relevant market adequately alleged harm to competition); *id*. at 969 (Cudahy, J. concurring) (describing the "suppression of potential competition by a monopolist" as "the very essence of anti-competitive conduct"); *LePage's Inc. v. 3M*, 324 F.3d 141, 159 (3d Cir. 2003) ("When a monopolist's actions are designed to prevent one or more new or potential competitors from gaining a foothold in the market by exclusionary, i.e., predatory, conduct, its success in that goal is not only injurious to the potential competitor but also to competition in general."); *Fraser v. Major League Soccer*, 284 F.3d 47, 61 (1st Cir. 2002) ("It is not difficult to see how an agreement" among "potential competitors" not to compete for players "might create a monopsony and eliminate competition among them."); *Sun Newspapers, Inc. v. Omaha World-Herald Co.*, No. CV 82-L-627, 1983 WL 1853, at *18 (D. Neb.), *modified on other grounds*

---

[14] While the district court in *Facebook* only mentions "likely potential competitor[s]," there is nothing in that opinion or any other decision the Commission is aware of suggesting that effects on perceived potential competition are any less relevant to a Section 2 claim, as demonstrated by the broader language of the opinions in *LePage's Inc. v. 3M*, *Gulf States Reorganization Group v. Nucor Corp.*, *Fraser v. Major League Soccer*, and *Sun Newspapers, Inc. v. Omaha World-Herald Co.* cited below.

*and aff'd per curiam*, 713 F.2d 428 (8th Cir. 1983) ("the acquisition of potential competitors . . . could be termed exclusionary, because it removes one source of competition and helps erect a greater barrier to entry by further cementing the monopolist's market position . . ."). Accordingly, to the extent that Plaintiffs have adequately alleged that Axon maintained its monopoly in CEW Systems or attempted or conspired with Safariland to do so by eliminating a perceived potential competitor, the Section 2 claims should not be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should evaluate Plaintiffs' claims on their own merits, without reference to the dismissal of the Commission's administrative proceedings or the Commission's proposed market definition, and it should reject Axon's argument that the perceived potential competition doctrine does not apply to Sherman Act claims.

Dated: June 17, 2024

Respectfully submitted,

FEDERAL TRADE COMMISSION

Henry Liu
*Director, Bureau of Competition*

Anisha Dasgupta
*General Counsel, Federal Trade Commission*

Hannah Garden-Monheit
*Director, Office of Policy Planning*

*s/ Katherine Van Dyck*
Katherine Van Dyck
Ian Barlow
Peggy Bayer Femenella
Mark Hoffman
Nathan Soderstrom
600 Pennsylvania Avenue, NW
Washington, DC 20580

*Counsel for Amicus Federal Trade Commission*