# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| *IN RE AXON VIEVU ANTITRUST LITIGATION* | Case No. 3:23-CV-7182-RK-RLS<br><br>**[PROPOSED] INITIAL DISCOVERY PLAN** |

# [PROPOSED] INITIAL DISCOVERY PLAN

Plaintiffs the Township of Holmdel, Monmouth County, New Jersey; the Mayor and City Council of Baltimore; and LaSalle County, Illinois (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, and Defendants Axon Enterprise, Inc. and Safariland, LLC (individually, "Axon" and "Safariland," respectively, and together, "Defendants"), present the following Initial Discovery Plan.

This Initial Discovery Plan is intended to conserve judicial and party resources, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation.

**1. Brief description of the case, including the causes of action and defenses asserted.**

    **a. Plaintiffs' description**

Plaintiffs' Second Consolidated Amended Complaint ("Complaint") (ECF No. 120) describes how, in 2018, Defendant Axon—already dominant in the market for body-worn camera systems ("BWC Systems")[1]—brazenly cemented and increased its dominance in this market by

---

[1] Per the Complaint, BWC Systems are defined to include "[body-worn cameras ("BWCs")], digital evidence management systems ("DEMS"), docks, and related services such as transcription, redaction, and warranties." Complaint ¶ 1.

buying its largest and most significant BWC Systems competitor, Vievu LLC ("Vievu"), from Defendant Safariland (the "Acquisition"). Concurrently with this acquisition, Axon and Safariland entered into several related non-competition agreements (the "Non-Competes") that prohibited Safariland from competing in the BWC Systems market for more than 10 years.[2] Plaintiffs allege that the Acquisition and Non-Competes unlawfully reduced competition in the BWC Systems market, resulting in higher prices, lower output, and reduced quality and innovation. Indeed, the Complaint presents striking evidence of the harms that have resulted to competition and to customers in particular, citing price and profit data taken straight from Axon's own SEC filings to show how, for example, the Acquisition and the Non-Competes put an end to an admitted "price war" that had been raging between Axon and Vievu, and allowed Axon to nearly *triple* its BWC Systems prices and *quadruple* its BWC System profit margins in the years following the Acquisition, as illustrated by the following charts:

---

[2] Although Defendants assert that the Non-Competes were "short-lived," the agreements were only rescinded after the FTC challenged those agreements and the acquisition as unlawful. *See* Decision and Order, *Axon Enters., Inc.*, FTC Docket No. 9389 (June 16, 2020).





Plaintiffs' claims and causes of action are:

Count I against Axon pursuant to Section 7 of Clayton Act, 15 U.S.C. § 18;

3

Count II against Axon and Safariland for a conspiracy in restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

Count III against Axon for unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

Count IV against Axon for attempted unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

Count V against Axon and Safariland for conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.[3]

Pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek to represent a class of all persons or entities, except federal and state government entities,[4] who have directly purchased BWC Systems or their components from Axon since the Acquisition until the effects of Defendants' unlawful conduct cease (the "Class Period"). Plaintiffs seek damages for harms suffered as a result of Defendants' violations, including overcharges on BWC Systems and their components, as well as injunctive relief.[5]

---

[3] Plaintiffs' First Consolidated Amended Complaint contained additional claims that were dismissed by the Court's January 31, 2025 opinion and order (ECF Nos. 101, 102).

[4] The proposed class excludes "Defendants; the officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir, or assign of Defendants. Also excluded from the Class are: federal and state government entities; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; any juror assigned to this action; and any co-conspirator identified in this action." Compl. ¶ 139.

[5] The Court dismissed Plaintiffs' claims for injunctive relief without prejudice, *see* Order dated Jan. 31, 2025 at 2, and Plaintiffs' operative Complaint repleaded those claims with additional factual allegations.

### b. Defendants' description

Plaintiffs' action is premised on the misguided belief that Axon's reputation as a leader in the sale of BWCs and DEMS evidences anticompetitive conduct. That is wrong. Rather, Axon's position evidences its superior products, its commitment to innovation, its unparalleled customer service, and responsiveness to customer needs. That is the very essence of pro-competitive conduct.[6]

In the seven-years since Axon acquired Vievu from Safariland, customers have benefitted from increased innovation and competition in both BWCs and DEMS. Today, leading technology companies including Motorola, Panasonic, Utility, and Getac compete alongside Axon in highly competitive bidding processes to serve, primarily, law enforcement customers. Vievu's exit from the market in 2018 was the product of its dire financial situation—not an anticompetitive transaction. At the time of the acquisition, Vievu suffered from steep and unsustainable financial losses, had only days' worth of operating capital, and grossly under-funded critical research-and-development efforts for these high-tech products. The assertion that "but for" the transaction Vievu would be a competitive constraint on Axon or other competitors today—much less in 2018 or 2019—is pure myth-making.

Nor were there any "market allocation" or conspiracy agreements between Axon and Safariland that restrained trade. Safariland sold its failing BWC/DEMS business unit (Vievu) after sustaining millions of dollars in losses and had no intention of ever reentering this software-dominated market. Similarly, Safariland did not and never intended to compete with Axon in the

---

[6] Plaintiffs' claims, as laid out in the charts above, about Axon's post-acquisition pricing of and gross margins on BWCs and DEMS misunderstand Axon's financial reports, conflate products, fail to account for product developments and improvements, and are devoid of essential context necessary to understand changes in Axon's financial performance over time.

5

conducted energy weapon ("CEW") space. The parties' short-lived non-compete provisions—rescinded in January 2020 *before* the FTC resolved its claims against Safariland—were instead intended to protect Axon's proprietary information during Safariland's development of holsters for next generation TASER® energy weapons. And despite the Court's dismissal of all CEW-based claims, Plaintiffs' Complaint continues to make much ado about Defendants' irrelevant ancillary holster supply agreement.

In addition to failing on the merits, Plaintiffs' action cannot proceed on a class wide basis because, among other reasons, their claims lack commonality under Rule 23(a)(2) and individual issues predominate over common ones in contravention Rule 23(b)(3). Axon's customer contracts are individually negotiated and discounted; involve vastly different combinations of products and licenses based on agency needs, size and budget; utilize a wide variety of geographic and department-specific procurement processes, including RFP competitive bidding, cooperative agreements, and purchase orders; and are subject to approval processes under a multitude of local ordinances.

2. **Description of all discovery conducted by the parties to date.**

On March 5, 2025, Magistrate Judge Singh ordered the parties to have a Rule 26(f) conference on or before April 29, 2025. (ECF No. 119.) The parties met on April 17, 2025 and April 29, 2025. Magistrate Judge Singh further ordered that a Rule 16 conference will be held on May 20, 2025. (*Id.*) Given the Court's Order staying discovery pending the motions to dismiss, (ECF No. 73), the parties have not substantially engaged in discovery efforts to date.

3. **Description of all discovery problems encountered to date, efforts undertaken to remedy these problems, and suggested resolution.**

None.

4. **Description of further discovery needs.**

### a. Discovery is needed on the following subjects:

<u>Plaintiffs' Position</u>:

Plaintiffs anticipate requiring fact and/or expert discovery on all remaining issues raised by the Complaint and any Answer and/or Counterclaim raised by Defendants, including but not limited to:

- Discovery produced or conducted in the FTC action. Production of the discovery from the FTC action is appropriate and proportional to the needs of the case, would impose only minimal burden on Defendants, and would facilitate the expeditious resolution of this case. As the Court noted in its Opinion on Defendants' motions to dismiss, "there is significant overlap between the BWC System products included in both actions." (ECF No. 101 at 47.) Indeed, Plaintiffs' claims are nearly identical to and wholly encompass the FTC's claims. Accordingly, the Court found that "there is substantial identity between the FTC action and this case even with the inclusion of a few additional, ancillary BWC-related products." (*Id.*) Defendants argue the FTC action involved "a different relevant market of customers as well as a different product market." As a threshold matter, neither Sections 1 nor 2 of the Sherman Act require a showing of a relevant market of customers. Moreover, the FTC's proposed market was *narrower* than Plaintiffs' (as Defendants conceded in their motions to dismiss[7]), meaning the entirety of the FTC action is relevant here. Thus, the discovery sought from the FTC action is wholly within the scope of and relevant to this case. Further, courts routinely order the production of discovery previously produced during government investigations. *See, e.g.*, *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1420 (3d Cir. 1991); *Univ. of Mass. v. L'Oreal United States, Inc.*, No. 17-CV-868, 2020 WL 3048156 (D. Del. June 8, 2020) (affirming order requiring production of documents produced to FTC in prior investigation); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 633–34 (E.D. Pa. 2010) (finding "plaintiffs are entitled to discovery," including "the documents defendants have already turned over to the Federal Trade Commission and the Department of Justice").

- Documents related to Axon's acquisition of Vievu from Safariland;

---

[7] See ECF 76-1 (Axon MTD) at 23-24 (explaining that Plaintiffs' proposed "BWC System Market is defined distinctly from, and more broadly than, the FTC's market. While the FTC action related solely to BWCs themselves and DEMS . . . plaintiffs here have lumped together a variety of ancillary products and services well beyond BWCs and DEMS . . . Moreover, the FTC action specifically limited the 'relevant market' to 'large, metropolitan police departments.' . . . Plaintiffs, on the other hand, significantly expand the relevant market to any sales of BWC Systems to anyone in the United States . . ."); ECF 78-2 at 24 (Safariland MTD) (adopting and incorporating the quoted portion of Axon's brief, by reference).

- Data and documents related to Axon's pricing of BWC Systems and competition in the BWC Systems market;

- Documents regarding Defendants' analyses of market conditions, including actual and potential competition, market concentration, and Axon's degree of market power or monopoly power in those markets;

- Records and structured data reflecting Axon's sales of BWC Systems, including pricing, discounts, rebates, exclusivity, and other terms and conditions.

The foregoing list is not exhaustive and is without prejudice to Plaintiffs' right to designate additional topics for discovery, which is expressly reserved.

Defendants' Position:

Defendants anticipate fact and/or expert discovery will include:

- Discovery on named plaintiffs' and certain putative class members' purchase of the relevant products, including the development of their product specifications, their respective bidding, procurement and contracting processes.

- Documents regarding named plaintiffs' and certain putative class members' testing and evaluation of Defendants' and competing products.

- Discovery from other manufacturers and seller of BWCs and DEMS regarding competition for sales, product development and innovation, and other market dynamics that prevent Defendants from obtaining or exercising "market power."

- As set forth in the Parties' letter practice of March 13, 2024, Defendants do not agree that discovery of the full FTC record is either appropriate or proportional to the needs of the case. That case involved a different relevant market of customers as well as a different product market. Further, it is particularly inappropriate, where, as here, Plaintiffs indicate they intend to take discovery of "[d]ocuments related to Axon's acquisition of Vievu from Safariland" beyond the discovery taken in the FTC matter. *See U.S. v. Anthem, Inc.*, 2024 WL 1116276 (permitting limited re-production of discovery in prior matter where it fully satisfied several RFPs and where court imposed additional limits on scope of re-production including reduced custodians, revised date limits, and removal of irrelevant materials). Nonetheless, the Parties will meet and confer about any request for clone discovery when served.

The foregoing list is not exhaustive and is without prejudice to Defendants' right to designate additional topics for discovery, which is expressly reserved.

**5. Estimate of time needed to complete fact discovery and proposed discovery schedule.**

The parties' competing discovery proposals are outlined below.

### a. Proposed Schedule

Plaintiffs' Proposed Schedule:

Plaintiffs' proposed schedule is set forth in the table below. Plaintiffs oppose Defendants' proposal to "sequenc[e]" class certification and summary judgment—setting only a case management schedule through class certification. Where, as here, the issues to be addressed at class certification and summary judgment are inextricably intertwined, there are no efficiencies to be gained by delaying setting a schedule for summary judgment briefing. *See, e.g.*, *In re Copaxone Antitrust Litig.*, 2024 WL 5203037(D.N.J. Nov. 25, 2024) (setting case management schedule through class certification and summary judgment); *In re Metformin Mktg. Litig.*, 2023 WL 2324769(D.N.J. Mar. 2, 2023) (ordering parties to propose a case management schedule through summary judgment). Defendants' argument that since "this action is premised on Axon's acquisition of Vievu, matters that may require expert testimony, like Failing Firm or Division, have absolutely no bearing on class certification" misstates the law. The legality of that acquisition is one of many common issues among the class members that support predominance and certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." (internal quotation marks omitted)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) (observing that "affirmative defenses which were common to all class members . . . independently would satisfy the predominance requirement"); *see also In re Axon Vievu Antitrust Litig.*, 2025 WL 336751, at *18 (D.N.J. Jan. 31, 2025) (Kirsch, J.) ("[The] Sherman Act and Clayton Act claims and their elements are most relevant to the question of predominance.").

Plaintiffs also propose that the parties combine class and merits expert reports and discovery rather than having two separate rounds of expert reports and discovery, one for class

9

issues and another for merits issues, as Defendants propose. "[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation omitted). Because of this overlap, "class" reports and "merits" reports are likely to overlap substantially. Thus, as courts increasingly recognize, bifurcation of expert reports and depositions into two phases would be inefficient and redundant, adding substantial expense and more work for the Court. Attached as exhibits are examples of scheduling orders in which courts have required the parties to conclude expert discovery before class certification. *See e.g.*, Ex. 1 Order, *Uriel Pharm. Health & Welfare Plan v. Advocate Aurora Health, Inc.*, No. 22-cv-610 (E.D. Wisc. Aug. 16, 2023), ECF No. 41; Ex. 2 Pretrial Order No. 5, *In re: Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y. Nov. 21, 2022), ECF No. 394; Ex. 3, Case Mgmt. Order #1, *Carbone v. Brown Univ.*, No. 22-cv-00125 (N.D. Ill. Aug. 26, 2022), ECF No. 195; Ex. 4 Stipulated Order Regarding Am. Case Schedule As Modified, *Simon and Simon, PC. v. Align Tech., Inc.*, No. 20-cv-03754 (N.D. Cal. May 18, 2021), ECF No. 106; Ex. 5 Scheduling Order, *Fusion Elite All Stars, et al. v. Varsity Brands, LLC, et al.* No. 20-cv-2600 (W.D. Tenn. Oct. 15, 2020), ECF No. 61; Ex. 6, Case Mgmt. Order No. 1, *In re Broiler Chicken Grower Antitrust Litig.*, No. 17-cv-00033 (E.D. Okla. Apr. 13, 2020), ECF No. 312; Ex. 7, Scheduling Order, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y. Apr. 10, 2017), ECF No. 177.

Defendants' Proposed Schedule:

Defendants believe that, far from being "inextricably intertwined," the class certification issues here are distinct from the antitrust merits. As this action is premised on Axon's acquisition of Vievu, matters that may require expert testimony, like Failing Firm or Division, have absolutely no bearing on class certifications. And, as discussed in Section 1 above, named Plaintiffs—and

putative class members—purchased varying combinations of products and licenses based on their respective agency's needs, size and budget. They each utilize different procurement processes, including RFP competitive bidding, cooperative agreements, and purchase orders. Whether resolution of the named Plaintiffs' claims can resolve claims of all putative class members is a significant question that ought to be decided before moving on to expert work on the merits of Plaintiffs' claims. *See* Ex. 8, *In re Cattle and Beef Antitrust Litig.*, No. 22-md-3031, Second Order Amending Case Schedule (D. Minn. March 5, 2024) (ECF 575) (continuing to set class certification experts and briefing before merits experts and summary judgment); *see also* Ex. 9, I*n re Insulin Pricing Litigation*, No. 17-cv-699, Case Mgmt. Order No. 1 (D.N.J. Apr. 30, 2020) (ECF No. 334) (Ordering completion of class expert discovery and class certification briefing before opening merits expert discovery and summary judgment).

| Event | Plaintiffs' Proposed Deadline/Date | Defendants' Proposed Deadline/Date |
|---|---|---|
| Rule 26(f) conference | April 29, 2025 | April 29, 2025 |
| Rule 26(a) initial disclosures | May 13, 2025 | May 13, 2025 |
| Parties to serve first set of requests for production | May 30, 2025 | May 30, 2025 |
| Parties file proposed confidentiality order, expert stipulation, and ESI protocol, or joint letter to Court outlining dispute and requesting a briefing schedule | June 5, 2025 | June 5, 2025 |
| Defendants' production of any agreed discovery from FTC case[8] | July 29, 2025 | July 29, 2025 |

---

[8] Defendants' reserve their rights to object to the scope of Plaintiffs' request for re-production of discovery matter produced in the FTC case. The Parties will meet and confer in good faith on those requests and objections.

| | | |
|---|---|---|
| Deadline to begin rolling production of other documents in response to first set of requests for production | August 26, 2025 | August 26, 2025 |
| Deadline to produce structured data in response to first set of requests for production | October 16, 2025 | October 16, 2025 |
| Deadline for substantial completion of document production | March 27, 2026 | March 27, 2026 |
| Close of fact discovery | October 29, 2026 | October 29, 2026 |
| Plaintiffs' deadline to serve expert reports on class certification[9] | December 22, 2026 | December 22, 2026 |
| Parties' deadline to serve expert reports on merits issues on which they have the burden of proof. | December 22, 2026 | To be determined |
| Defendants' deadline to serve rebuttal expert reports on class certification | March 3, 2027 | March 3, 2027 |
| Defendants' deadline to serve rebuttal expert report on merits issues | March 3, 2027 | To be determined |
| Plaintiffs' deadline to serve reply expert reports on class certification | April 14, 2027 | April 14, 2027 |
| Defendants' deadline to serve reply expert reports on merits issues | April 14, 2027 | To be determined |
| Deadline to complete expert discovery on class certification | May 21, 2027 | May 21, 2027 |
| Deadline to complete expert discovery on merits issues | May 21, 2027 | To be determined |
| Plaintiffs' deadline to file motion for class certification | June 23, 2027 | June 23, 2027 |
| Parties' deadline to file *Daubert* motions on class certification experts. | June 30, 2027 | June 30, 2027 |
| Defendants' deadline to file briefs in opposition to class certification | July 30, 2027 | July 30, 2027 |

---

[9] Plaintiffs propose that class and merits expert discovery proceed in parallel. Defendants propose that class expert discovery proceed first, and merits expert discovery proceed, if and as necessary, following a decision on class certification.

| | | |
|---|---|---|
| Parties' deadline to file oppositions to *Daubert* motions on class certification experts. | August 6, 2027 | August 6, 2027 |
| Plaintiffs' deadline to file reply in support of class certification | August 27, 2027 | August 27, 2027 |
| Parties' deadline to file replies in support of *Daubert* motions on class certification experts. | September 2, 2027 | September 2, 2027 |
| Motion(s) for summary judgment and *Daubert* of merits experts | November 5, 2027 | To be determined |
| Opposition to motion(s) for summary judgment and *Daubert* of merits experts | December 17, 2027 | To be determined |
| Reply memorandum/a in support of motion(s) for summary judgment and *Daubert* of merits experts | January 14, 2028 | To be determined |
| Summary judgment hearing | To be set by Court | To be determined |
| Pre-trial conference | To be set by Court | To be determined |
| Trial | 1 month after Pre-Trial Conference, or as convenient for the Court | To be determined |

6. **Statement regarding whether expert testimony will be necessary and the anticipated schedule for retention of experts and submission of their reports.**

The parties anticipate presenting expert testimony and adhering to the above-proposed schedule for submission of expert reports and will retain experts in accordance with the same.

7. **Statement regarding whether there should be any limitations placed upon use of any discovery device and, if so, the reasons the limitation is sought.**

The Parties agree to the following limitations:
1. Privilege Logs must be provided within 50 days of each production from which documents are withheld.
2. All requests for production must be served at least 75 days before the end of fact discovery. All Interrogatories and Requests for Admission must be served at least 45 days before the end of fact discovery.
3. All depositions must be noticed at least 45 days before the end of fact discovery.

4. Absent agreement of the Parties, or a Court order, each expert is subject to a maximum of one deposition lasting no more than seven hours.

8. **Description of any special discovery needs of the parties (e.g., videotape, telephone depositions, or problems with out-of-state witnesses or documents, or discovery of digital information.**

The parties are unaware of any special discovery needs at this time. The parties intend to negotiate a deposition protocol that would address any special discovery needs, including the number of depositions and other issues to be determined to ensure a smooth and efficient discovery process. The protocol will also address any agreements on the use of remote depositions and related procedures.

9. **Statement regarding whether entry of a Confidentiality Order will be requested.**

The parties anticipate negotiating and filing a stipulated Confidentiality Order.

10. **Identify any other issues to address at the Rule 16 Scheduling Conference.**

The Parties respectfully request bi-monthly status conferences to discuss any discovery or case scheduling issues as they arise.

Dated: May 6, 2025

*/s/ Liza M. Walsh*
Liza M. Walsh (NJ #013621985)
Eric S. Padilla (NJ #274142018)
Katelyn O'Reilly (NJ #031792010)
**WALSH PIZZI O'REILLY FALANGA LLP**
Three Gateway Center
100 Mulberry Street
15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
epadilla@walsh.law
koreilly@thewalshfirm.com

*/s/ Michael D. Fitzgerald*
Michael D. Fitzgerald (NJ #004391985)
**LAW OFFICES OF MICHAEL D. FITZGERALD**
1 Industrial Way West, Unit B
Eatontown, NJ 07724
(202) 349-1482
mdfitz@briellelaw.com

*Interim Liaison Counsel for Plaintiffs and the Proposed Class*

14

Julie E. McEvoy (*pro hac vice*)
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Tel: (202) 879-3939
jmcevoy@jonesday.com

Aaron M. Healey
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
ahealey@jonesday.com

Pamela B. Petersen (*pro hac vice*)
Gayathiri Shanmuganatha (*pro hac vice*)
**AXON ENTERPRISE, INC.**
17800 N. 85th Street
Scottsdale, Arizona 85255
Tel: (623) 326-6016

*Counsel for Defendant Axon Enterprise, Inc.*

*/s/ Steven A. Haber*
Steven A. Haber
**OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP**
1120 Route 73, Suite 420
Mt. Laurel, NJ 08054
(856) 795-3300
steven.haber@obermayer.com

James G. Kress (pro hac vice)
Paul C. Cuomo (pro hac vice)
**BAKER BOTTS L.L.P.**
700 K Street, NW
Washington, DC 20001
(202) 639-7700
james.kress@bakerbotts.com
paul.cuomo@bakerbotts.com

*Counsel for Defendant Safariland, LLC*

Kellie Lerner (NJ #018532003)
Tyler Ross (NY #6051866) (*pro hac vice*)
**SHINDER CANTOR LERNER**
14 Pennsylvania Plaza 19th Floor
New York, NY 10122
(646) 960-8606
kellie@scl-llp.com
tross@scl-llp.com

Heidi M. Silton (MN #025759X) (*pro hac vice*)
Jessica N. Servais (MN #0326744) (*pro hac vice*)
Joseph C. Bourne (MN #0389922) (*pro hac vice*)
Antonia Konkoly (MN #0504377) (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jnservais@locklaw.com
jcbourne@locklaw.com
amkonkoly@locklaw.com

Sharon K. Robertson (NJ #030642006)
Christopher J. Bateman (NY #5323837) (*pro hac vice*)
Jared A. Dummitt (NY #5723036) (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 838-7797
srobertson@cohenmilstein.com
cbateman@cohenmilstein.com
jdummitt@cohenmilstein.com

Daniel H. Silverman (MA #704387) (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street | Suite 207

15

Boston, MA 02130
(617) 858-1990
dsilverman@cohenmilstein.com

Laura K. Follansbee (DC #1782046) (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 800
Washington, DC 20005
(202) 408-4600
lfollansbee@cohenmilstein.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Steven A. Kanner (*pro hac vice* forthcoming)
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International Dr., Ste. 128
Lincolnshire, IL 60069
(224) 632-4500
skanner@fklmlaw.com

Michael L. Silverman (*pro hac vice* forthcoming)
**THE BRUNO FIRM, LLC**
205 N. Michigan Ave. Ste. 810
Chicago, IL
(312) 321-6481
msilverman@brunolawus.com

*Counsel for Plaintiff LaSalle County, Illinois*