**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE AXON VIEVU ANTITRUST LITIGATION | Civil Action No. 23-7182 (RK) (RLS)<br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiffs' Objections to the Honorable Rukhsanah L. Singh's, U.S.M.J., January 23, 2026 Discovery Order and Oral Opinion and May 8, 2026 Memorandum Opinion, ("Pls. Objs.," ECF No. 210). Defendant Axon Enterprise, Inc. ("Axon") responded to Plaintiffs' objections, ("Axon Opp.," ECF No. 215), and Plaintiffs replied, (ECF No. 216). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Objections are **OVERRULED** and Judge Singh's January 23, 2026 Discovery Order and Oral Opinion and May 8, 2026 Memorandum Opinion are **AFFIRMED**.

## I. BACKGROUND

The Court set forth a comprehensive summary of this case's factual background in its Motion to Dismiss Opinion. ("Mot. to Dismiss Op.," ECF No. 101.) The factual allegations detailed in that Opinion, which are based on the First Amended Complaint, are largely the same as those set forth in the Second Amended Complaint ("SAC"), which is the operative pleading for purposes of this appeal. (ECF No. 121 (comparing the First Amended Complaint and the SAC).) Accordingly, the Court recites a brief factual overview of the case and the procedural history relevant to this appeal.

This putative antitrust class action, initiated in August 2023, arises from the sale of VieVu, LLC ("VieVu"), owned by Safariland LLC ("Safariland"), to Defendant Axon in May 2018. At the time, Axon was the dominant manufacturer and supplier of body-worn camera ("BWC") systems ("BWC Systems") and long-range conducted energy weapons ("CEW") in the United States. (SAC ¶ 6.) Safariland, a manufacturer of protective equipment in the law enforcement and sporting markets, with its origins in holsters, sold BWCs through its subsidiary, VieVu, which was Axon's "#2" competitor in that market. (*Id.* ¶ 83.) As part of VieVu's acquisition, Axon and Safariland agreed to various non-compete and non-solicitation provisions relating to the BWC and CEW markets. (*Id.* ¶¶ 94–102.) Plaintiffs are three local government entities that allegedly bought BWC Systems from Axon after May 2018. (*Id.* ¶¶ 22–27.) They allege that Axon's acquisition of VieVu and the non-compete provisions related to it were "anticompetitive," resulting in reduced competition that allowed Axon to substantially increase prices in the BWC Systems market and "suppressed output and innovation." (*Id.* ¶¶ 7–21.)

On January 31, 2025, the Court granted in part and denied in part Defendants' Motion to Dismiss. (ECF No. 101.) Plaintiffs Township of Holmdel, New Jersey, the Mayor and City of Baltimore, and LaSalle County, Illinois (collectively, "Plaintiffs") subsequently filed the SAC, (ECF No. 120), and the parties proceeded to discovery before Judge Singh.

During discovery, Plaintiffs sought to compel Axon to produce responsive discovery relating to the sale of BWC Systems to non-law enforcement agencies ("non-LEAs"). ("Judge Singh Mem. Op.," ECF No. 205 at 3.) Axon opposed this request, arguing that only law enforcement agencies ("LEAs"), not non-LEAs, are relevant purchasers of BWC Systems as pled in the SAC. (*Id.*) Plaintiffs responded that their proposed class definition includes "all persons or

entities" who directly purchased BWC Systems within the United States, which necessarily includes non-LEAs. (*Id.*)

Plaintiffs also sought to compel the custodial file of Axon's former employee, Andrea James,[1] for the period February 28, 2020, to December 31, 2023. (*Id.* at 3−4.) Plaintiffs contend that Axon's production of James's custodial file during the action before the Federal Trade Commission ("FTC") demonstrates that she may possess additional unique and responsive documents generated after the FTC discovery period. (*Id.*) Axon opposed the request to add James as a custodian for the post-FTC period, arguing that additional discovery from James's custodial files is disproportionate to the needs of the case, unduly burdensome, and unreasonable cumulative or duplicative. (*Id.*)

Judge Singh heard oral argument regarding these discovery disputes on January 20, 2026. (ECF No. 183.) On January 23, 2026, the Court denied both of Plaintiffs' requests through an oral opinion, reserving the right to issue a written decision in the event a party sought appeal. (ECF Nos. 184−186.) Plaintiffs appealed Judge Singh's determination. (ECF No. 189.) On May 8, 2026, Judge Singh memorialized her oral opinion in a 21-page written Memorandum Opinion, reasoning that the non-LEA discovery sought by Plaintiffs is "not relevant to the claims and defenses at issue here and the James discovery is not proportional to the needs of the case." (Judge Singh Mem. Op. at 6.) [2] Judge Singh allowed Plaintiffs to supplement their appeal submission after the issuance of

---

[1] James began working for Axon in 2017 as Vice President of Investor Relations. (Judge Singh's Mem. Op. at 3 (citing ECF No. 175 at 13).) In May 2019, she began the role of Vice President of Corporate Strategy and Investor Relations, which she held until September 2022, when she became Axon's Chief Communications Officer and Investor Relations Head. (*Id.*). James ceased her employment with Axon in December 2023. (*Id.*).

[2] The parties do not dispute that Judge Singh's reasoning in her Oral Opinion on these discovery issues is substantially the same as the reasoning provided in her Memorandum Opinion. Thus, for purposes of this appeal, the Court focuses its assessment of Judge Singh's findings on what is set forth in the Memorandum Opinion.

her Memorandum Opinion, and Plaintiffs filed an amended version of that appeal on May 22, 2026. (ECF No. 210.) Axon opposed the appeal, (ECF No. 215), and Plaintiffs replied to Axon's opposition brief, (ECF No. 216).

## II. LEGAL STANDARD

Under Local Civil Rule 72.1(c)(1), "[a]ny party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order[.]" The time to appeal may be relaxed under Local Civil Rule 83.2(b) in the Court's discretion. *See, e.g.*, *See, e.g.*, *Doe v. Princeton Univ.*, No. 20-4352, 2024 WL 1375948, at *4 n.9 (D.N.J. Apr. 1, 2024).

The Federal Magistrates Act of 1968 provides that a District Court reviewing a Magistrate Judge's decision on a non-dispositive motion may reverse a Magistrate Judge's determination if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1). Under this standard, a finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *S. Seas Catamaran, Inc. v. M/V Leeway*, 120 F.R.D. 17, 21 (D.N.J. 1988). However, a "district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000). Moreover, the district court may not consider any evidence that was not presented to the magistrate judge. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 93 (3d Cir. 1992).

Alternatively, a district court will conduct a *de novo* review of a magistrate judge's legal conclusions. *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (citing *Haines*, 975 F.2d at 91). "A ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Romero v. Ahsan*, No. 13-7695, 2015 WL

5455838, at *3 (D.N.J. Sept. 16, 2015) (citing *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000)).

"Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, No. 15-3271, 2018 WL 3993449, at *3 (D.N.J. Aug. 21, 2018); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, No. 08-1331, 2010 WL 234923, at *1 (D.N.J. Jan. 13, 2010); *Kresefsky v. Panasonic Communications and Systems Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."); *see also Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999) (noting the standard when reviewing a magistrate judge's decision denying discovery is for abuse of discretion).

Abuse of discretion arises "when the judicial action is arbitrary, fanciful[,] or unreasonable," meaning "no reasonable [person] would take the view adopted by the [factfinder]." *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976). If reasonable people "could differ as to the propriety of the action," that action is not an abuse of discretion. *Id.*; *see also Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 240 (3d Cir. 2007) ("An abuse of discretion is a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case." (quoting *SEC v. Infinity Group Co.*, 212 F.3d 180, 195 (3d Cir. 2000))). Further, an abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Sabinsa Corp. v. HerbaKraft, Inc.*, No. 14-4738, 2020 WL 1503061, at *5 (D.N.J.

Mar. 30, 2020) (quoting *V. Mane Fils S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304, 2008 WL 4606313, at *3 (D.N.J. Oct. 16, 2008)).

## III. DISCUSSION

### A. NON-LEA DISCOVERY

Plaintiffs argue that Judge Singh erred in denying discovery regarding all BWC purchasers, including non-LEAs, because such information is relevant and discoverable. Plaintiffs raise several arguments in support of this contention: (1) the definition of their putative class includes non-LEAs; (2) the noncompete agreements between Axon and Safariland applied to all BWC System customers; (3) discovery regarding non-LEAs is relevant to Plaintiffs' claims regarding "market definition, monopoly power, anticompetitive effects, and damages"; (4) this Court already endorsed Plaintiffs' class definition in its Motion to Dismiss Opinion; and (5) Axon has argued before this Court and the FTC that the relevant market definition included non-LEAs. (Pls. Objs. at 11−25.) For the following reasons, the Court finds that Judge Singh did not abuse her discretion in excluding discovery regarding non-LEAs.

Under Federal Rule of Civil Procedure ("Rule") 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "[T]he question of relevancy is to be more loosely construed at the discovery stage than at the trial." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). Yet, the scope of discovery is "not limitless; rather, it is 'circumscribe[d]' by '[t]he complaint and its claims[,]' and '[i]t is against these claims that discoverability is determined as to each discovery request[.]'" *Ross-Tiggett v. Reed Smith, LLP*, No. 15-8083, 2019 WL 13249702, at *2 (D.N.J. Mar. 26, 2019) (quoting *Toth v. Cal. Univ. of Pa.*, No. 09-1692, 2011 WL 2436138, at *2 (W.D. Pa. June 15, 2011)). A court has "broad discretion in deciding discovery issues as well as in determining the appropriate scope of discovery in a matter." *Ramirez v. World Mission Soc'y*

*Church of God*, No. 14-1708, 2019 WL 1569819, at *5 (D.N.J. Apr. 10, 2019). "In evaluating discovery in putative class actions, the Court looks to the proposed class definition along with other pertinent allegations in the operative complaint." *Hoffman v. Life Ins. Co. of the Sw.*, No. 23-04068, 2025 WL 1065171, at *2 (N.D. Cal. Apr. 9, 2025).

Plaintiffs define their proposed class[3] as "all persons or entities who have directly purchased" BWCs and long range CEWs, arguing that based on this definition, Plaintiffs intended to include non-LEAs in their class. (SAC ¶ 138.) The substantive allegations of the SAC belie this argument. Essentially all references to relevant purchasers in the substantive allegations of the SAC are only to LEAs. In other words, in looking to the SAC's allegations to define the direct purchasers of interest to Plaintiffs, LEAs are clearly the focus of that interest. As Judge Singh carefully identifies, the SAC is replete with allegations focusing Plaintiffs' antitrust claims on LEAs. (*See id.* ¶¶ 2, 38, 40, 43, 44, 46, 48, 52−54, 57, 60−62, 65, 69−73, 75−77, 85−87, 92, 116−117, 121, 123, 125−126, 129.)

There are only two paragraphs in the 206-paragraph SAC that mention non-LEAs. The first concerns long range CEWs, not BWCs: "[f]or the same reasons that police officers prefer to use long-range CEWs over other types of less-lethal and lethal weapons, civilians interested in self-defense also prefer to use long range CEWs . . . ." (*Id.* ¶ 63.) As this Court made clear in its Motion to Dismiss Opinion, all claims regarding CEWs have been dismissed. (Mot. to Dismiss Op. at

[3] While class certification is not yet before the Court, it notes that ultimately a district court has broad discretion in defining the class and is not bound by the class definition proposed in the complaint. *Battle v. Com. of Pa.*, 629 F.2d 269, 271 (3d Cir. 1980) ("The definition of the class is a matter within the broad discretion of the district court."); *Walden v. Bank of New York Mellon Corp.*, No. 20-01972, 2025 WL 2696463, at *4 (W.D. Pa. Sept. 22, 2025) ("Courts in this circuit are not bound by the class definition proposed in a complaint and enjoy significant discretion to amend a class definition *sua sponte* to assure proper certification and administration of the class."); *see also In re DiDi Glob. Inc. Sec. Litig.*, No. 21-5807, 2025 WL 1909295, at *6 (S.D.N.Y. July 7, 2025), *R&R adopted*, No. 21-5807, 2025 WL 2345696 (S.D.N.Y. Aug. 13, 2025) ("The Court is not bound by the class definition proposed in the complaint and may modify the class definition.").

40–49.) Similarly, in Paragraph 96, Plaintiffs state that in "the Holster Agreement," Safariland agreed not to compete in "the CEW industry, BWC industry, fleet or vehicle camera industry, surveillance room camera industry, and digital evidence management system and storage industry, with regard to law enforcement, military, security or consumers, anywhere in the world for 12 years." (SAC ¶ 96 (internal quotation marks omitted).) There are multiple product industries identified in this allegation, and it is unclear whether the reference to "military, security or consumers" applies to some of those industries or all of them. (*Id.*)

Throughout the SAC, Plaintiffs link multiple core antitrust issues solely to LEAs. In terms of product market, Plaintiffs make clear that BWCs are "specifically designed" for "police usage" in capturing "police actions." (*Id.* ¶¶ 2, 38.) Plaintiffs also allege that DEMS, another product in the BWC System, enable "police departments" to store BWC data in a central location and share it with prosecutors. (*Id.* ¶ 40.) Additionally, Plaintiffs claim that there is no reasonably interchangeable substitute for these BWC System products because "[p]olice departments could not realistically switch to other products in the face of a [a small but significant and non-transitory increase in price]"; "[o]ther recording systems, such as in-car camera systems, cannot record interactions outside of the view of the car, or when officers patrol on foot or bicycle"; "seven states now require law enforcement to use body cameras while on duty"; and "Records Management Systems . . . collect and centralize in one source, in digital format, the many types of written reports generated by police agencies, including arrest, probation, and crime scene reports[.]" (*Id.* ¶¶ 44–45.) Regarding geographic market, Plaintiffs rely again on LEA-specific facts. (*Id.* ¶ 48 ("Many police departments also are required to comply with the FBI's Criminal Justice Information Service ('CJIS') standards. CJIS compliance requires storing BWC-generated data in the United States. Additionally, U.S.-based police departments look mostly to other U.S. based

police departments to vet potential BWC Systems vendors.”).) Plaintiffs demonstrate the same LEA-specific focus regarding market power,[4] barriers to entry,[5] and anticompetitive harm.[6]

Apart from oblique references in Paragraphs 63 and 96, Plaintiffs do not specifically identify in the SAC any non-LEA purchasers of BWC Systems products, and generic references to “all” purchasers do not suffice to overcome the SAC’s overwhelming focus on LEAs. *See Mey v. Enter. Fin. Grp., Inc.*, No. 15-463, 2016 WL 9110357, at *4 (M.D. Fla. July 27, 2016) (finding that “[e]ven though the class definitions are broader,” because there are no allegations in the complaint concerning telemarketers other than one specific telemarketing company, the court limited discovery to that single telemarketing company); *Ossola v. Am. Express Co.*, No. 13-4836, 2015 WL 5158712, at *2, *6−7 (N.D. Ill. Sept. 3, 2015) (reasoning that since all three of the current plaintiffs did not allege that they received calls from American Express, the court deemed any discovery related to American Express to be irrelevant, even though the plaintiffs’ class definition included “[a]ll persons within the United States who . . . received a non-emergency telephone call from American Express and/or its third-party debt collectors”); *see also Ettedgui v. WB Studio*

[4] (SAC ¶ 92 n.77 (referencing the underlying FTC’s action and stating that even though the FTC’s analysis “seems to be based on an alleged market limited to ‘large, metropolitan police departments,’ there is no reason to think that Axon’s market share is any lower for the broader relevant market alleged herein, especially given the disproportionate size of larger police departments among the *overall U.S. police department population*.”) (emphasis added).)

[5] (SAC ¶ 70 (“Contract length remains another barrier to entry. BWC Systems and long-range CEW supply contracts can last ten years or longer, limiting the number of *police departments* with which BWC Systems and long-range CEW suppliers can attempt to contract in any given year. . . . Given the significant capital investment needed to develop and maintain BWC Systems, as well as the significant time needed to develop a long-range CEW, the inability to compete for most *police departments* at any one time due to contract length further renders market entry unprofitable for would-be competitors.”); SAC ¶ 71 (“[B]because Axon includes both BWC Systems and long-range CEWs in its general supply contracts, companies must provide both long-range CEWs and BWC Systems to compete for those *police departments* that prefer to integrate their long-range CEW and BWC Systems supply.”) (emphasis added).)

[6] (SAC ¶ 86 (“Axon and VieVu vigorously and consistently competed on the price of BWC Systems in an effort to win police department contracts.”); SAC ¶ 87 (“Competition between Axon and VieVu resulted in substantially lower BWC System prices for police departments.”).)

*Enters. Inc.*, No. 20-08053, 2021 WL 4464202, at *4 (C.D. Cal. May 24, 2021) (excluding class discovery regarding "employees in other positions or departments" absent evidence that those employees were "subject to the same meal and rest period violations" alleged by the plaintiffs).

The Court is also not persuaded by Plaintiffs other arguments to overturn Judge Singh's reasonable exclusion of non-LEA discovery. First, Plaintiffs misconstrue this Court's holding in its Motion to Dismiss Opinion. Plaintiffs argue that the Court sustained its class definition outside of excluded state and federal entities. Not so. The only issue before this Court at the Motion to Dismiss stage in terms of scope of the proposed class was whether sovereign immunity principles barred the inclusion of state and federal entities. In addition, Plaintiffs' argument that Axon's prior statements in this litigation and in the underlying FTC action acknowledged the relevance of non-LEA purchasers is inapposite. The scope of discovery is not dictated by Axon's argument in its briefing but rather by what is pled by Plaintiffs in the SAC. *See Hoffman*, 2025 WL 1065171, at *2. Finally, this Court will not consider documents that Plaintiffs admit were not before Judge Singh at the time of her decision, (Pls. Objs. at 25 n.12). Indeed, this Court *cannot* consider such evidence. *See Haines*, 975 F.2d at 92; *Palomino Master Ltd. v. Credit Suisse Grp. AG*, No. 24-05539, 2025 WL 2621865, at *5 n.7 (D.N.J. Sept. 10, 2025) ("Accordingly, [i]n reviewing a magistrate judge's factual determinations, a district judge may not consider evidence not before the magistrate judge. (internal quotation marks omitted)); *World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126, 2018 WL 4616069, at *3 n.2 (D.N.J. Sept. 26, 2018).[7]

---

[7] Judge Singh's decision is clearly limited to the scope of discovery and based on the requisite standards governing the scope of discovery. (Judge Singh Mem. Op. at 6 ("[T]he Court has found that the sought-after non-LEA discovery is not relevant to the claims and defenses at issue here and the James discovery is not proportional to the needs of the case.") Thus, the Court rejects Plaintiffs' argument that Judge Singh is improperly ruling on issues of class certification. The undersigned will address all issues related to class certification at the appropriate time. Judge Singh's findings on the two discovery matters at issue will have no bearing on this Court's assessment of class certification.

For the foregoing reasons, the Court finds that Judge Singh did not abuse her discretion such that no reasonable person would take the view that Judge Singh adopted in excluding non-LEA discovery.[8]

**B. ANDREA JAMES DISCOVERY**

In addition to non-LEA discovery, Plaintiffs also argue that Judge Singh improperly excluded Axon's former employee Andrea James as a custodian of relevant information. The Court disagrees. "[T]o justify an order compelling a responding party to search the records of additional custodians, the requesting party must demonstrate that the additional requested custodians would provide unique relevant information not already obtained." *LifeScan, Inc. v. Smith*, No. 17-5552, 2023 WL 7089662, at *3 (D.N.J. Oct. 11, 2023); *Enslin v. Coca-Cola Co.*, No. 14-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016). The party requesting additional custodians "must be able to articulate a basis for a court to find that [the electronically stored information] in the possession of these additional or newly designated custodians would be different from and not simply duplicative of, information that the responding party has already produced." *Id.* at *8 (citing *Enslin*, 2016 WL 7013508 at *1). Furthermore, courts are directed to limit discovery otherwise allowed under the Federal Rules of Civil Procedure if they determine that such discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

---

[8] In the context of discovery, which this District has deemed to be within the exclusive authority of the Magistrate Judge, the Court applies an abuse of discretion standard to appeals from Magistrate Judge decisions. *See, e.g.*, *Experian Info. Sols., Inc.*, 2018 WL 3993449, at *3. However, even if this Court applied a clearly erroneous standard, Plaintiffs would not prevail. In reviewing Plaintiffs' objections and the SAC in its entirety, this Court comes to the same conclusion as Judge Singh—non-LEA discovery is not relevant to Plaintiffs' antitrust claims. Even recognizing, as Judge Singh did, Plaintiffs' proposed class definition and the two paragraphs identifying non-LEAs, this Court is not "left with the definite and firm conviction that a mistake has been committed." *See S. Seas Catamaran, Inc.*, 120 F.R.D. at 21. On the contrary, this Court independently concludes, based on the overwhelming evidence in the SAC, that Plaintiffs focus their antitrust claims on LEA purchasers of BWC Systems.

The party requesting additional custodians must also demonstrate that the discovery sought is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Nupson v. Schnader Harrison Segal & Lewis LLP*, No. 18-2505, 2021 WL 1293557, at *3 (E.D. Pa. Apr. 7, 2021). When assessing proportionality, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The parties do not dispute that Axon has already produced discovery from James in connection with the underlying FTC action. Plaintiffs argue, instead, that they are entitled to more discovery from James beyond the FTC discovery period (after February 2020) because of her senior roles in strategy and investor relations at Axon. Plaintiffs further argue that relevant documents that they have already received from James's custodial files justify additional discovery from her. (Pls. Objs. at 27 (emphasis in original).) Axon responds that it has already produced over three million pages from 25 custodians, including James, covering the period January 1, 2015, through February 27, 2020, and the custodial files from an additional 10 custodians for the years after the challenged merger. (Axon Opp. at 33–34.) Axon also asserts that it originally designated James as a custodian during the FTC action solely because she handled media inquiries about the acquisition. (*Id*. at 6.) Axon further argues that it has produced documents from other custodians—the former President of Axon and the President and former Chief Revenue Officer of Axon—that included reports and internal discussions like those identified by Plaintiffs in the already-produced James files. (*Id*.)

The Court agrees with Judge Singh's reasonable assessment that any additional discovery from former employee James would likely contain cumulative or duplicative information and that

Plaintiffs failed to demonstrate that such discovery is proportional to the needs of the case. It is important to note that Plaintiffs have already received discovery from James's custodial files. What they speculate is that based on already-produced documents in James's custodial files pre-February 2020, James may possess similar documents in her custodial file post-February 2020. Plaintiffs also argue that several of these already-produced documents were unique to James's custodial file. Judge Singh did not abuse her discretion in concluding that Plaintiffs' speculative argument fails to establish that what is present in James's custodial file post-FTC action is unique. Judge Singh's finding is reasonable especially in light of Axon's representations that the former President of Axon and the President and former Chief Revenue Officer of Axon—both designated custodians post-February 2020—interfaced with investors and were also involved with "'market power and competitive effects' or third-party assessments bearing on those issues." (Axon Opp. at 35.) Thus, it was not arbitrary or unreasonable for Judge Singh to conclude that discovery from James post-February 2020 would likely be duplicative or cumulative of what was produced from these and other custodians. *See Enslin*, 2016 WL 7042206, at *2 (finding that the plaintiff failed to demonstrate that the defendants' original search "failed to capture relevant, non-cumulative information" in the possession of additional custodians and that the plaintiff's argument that these additional custodians each had "some relation to the events in question" was unavailing).

Indeed, James's information was most relevant to issues before Axon's acquisition of VieVu, which is why she was designated as a custodian in the FTC action. As Judge Singh reasonably concluded, "information relating to how third-party investors perceived the acquisition can weigh on issues such as market reaction or the like," but "there are many other types of discovery that are more significant to resolving this matter." (Judge Singh Mem. Op. at 20.) Moreover, Axon has already produced to Plaintiffs information from James relevant to the

acquisition in the FTC discovery. What Plaintiffs have failed to articulate is the unique relevance of James's post-acquisition documents. Considering that Plaintiffs have already received and will continue to receive substantial discovery from Axon, it was not arbitrary or unreasonable for Judge Singh to limit discovery from James post-February 2020 as likely "not critical" and, therefore, disproportionate to the needs of the case. (Judge Singh Mem. Op. at 21.) Thus, this Court concludes that Judge Singh did not abuse her discretion in denying Plaintiffs' request to compel discovery from James post-February 2020.[9]

[9] Plaintiffs' arguments would also fail for reasons similar to those set forth *supra* if this Court applied a clearly erroneous standard to the question of additional discovery from James. Upon review of the parties' submissions and the Court's independent assessment of the issues, this Court is not "left with the *definite and firm conviction* that a mistake has been committed." *See S. Seas Catamaran, Inc.*, 120 F.R.D. at 21 (emphasis added). Indeed, even if the Court disagreed with Judge Singh's reasoning regarding the James discovery, which it does not, that would be insufficient to find her decision clearly erroneous. *See Andrews*, 191 F.R.D. at 68. Accordingly, Judge Singh's determination as to additional discovery from James is affirmed.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Objections, (ECF No. 210), are **OVERRULED**, and Judge Singh's January 23, 2026 Discovery Order and Oral Opinion and May 8, 2026 Memorandum Opinion are **AFFIRMED**.

An appropriate Order will accompany this Opinion.

Dated: October 15, 2026

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**